## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 1:23-cv-11294-FDS**

JOHN DOE, JANE DOE and JAMES DOE,

      Plaintiffs,

v.

CITY OF BOSTON, PAUL EVANS, individually,
ROBERT DUNFORD, individually, MELBERT
AHERN, individually, ANNE MARIE DOHERTY,
individually, LADONNA HATTON, individually,
EILEEN VANDERWOOD, individually, JOHN
MCLEAN, individually, MARIE DONOHUE,
individually, DEFENDANTS DOES 1-5,
individually, MASSACHUSETTS DEPARTMENT
OF CHILDREN AND FAMILIES, DEFENDANT
DOES 6-10, individually, BOSTON POLICE
PATROLMAN'S ASSOCIATION, THOMAS
NEE, individually, DEFENDANT DOES 11-15,
individually, PATRICK ROSE, SR., and
FRANCES ROSE,

      Defendants.

## CITY OF BOSTON'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO DISMISS THE COMPLAINT

      The City of Boston (the "City") submits this memorandum of law in support of its motion

to dismiss all counts of the Complaint of plaintiffs John Doe, Jane Doe and James Doe (together,

"Plaintiffs") asserted against it.[1]  Plaintiffs assert constitutional, statutory and tort claims arising

---

[1] Plaintiffs bring forty-three (43) counts, of which twelve (12) are asserted against the City: (1) **Count 1** for violations of 42 U.S.C. § 1983 (*Monell* – custom and policies); (2) **Count 2** for violations of 42 U.S.C. § 1983 (*Monell* – failure to train/screen/supervise); (3) **Count 4** for violations of 42 U.S.C. § 1983 (*Monell* – state-created danger); (4) **Count 11** for conspiracy to interfere with Civil Rights Act in violation of 42 U.S.C. § 1985; (5) **Count 16** – violations of the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H & 11I; (6) **Count 23** – negligence; (7) **Count 26** – negligent hiring, training, supervision and retention; (8) **Count 28** – gross negligence; (9) **Count 31** – intentional infliction of emotional distress; (10) **Count 36** – negligent infliction of emotional distress; (11) **Count 41** – violation of M.G.L. c. 119 § 51A; (12) **Count 43** – loss of consortium.

from events that occurred in the 1990s involving allegations of sexual assault by defendant Patrick Rose, Sr. ("Rose") two children, identified in the Complaint by the fictitious names John and Jane Doe. These claims are untimely and barred by a number of defenses as a matter of law. Moreover, Plaintiffs' claims rely on a theory that the City is liable for the criminal acts of Patrick Rose, Sr. simply because the Boston Police Department ("BPD") employed him at the time and investigated his crimes. Plaintiffs are wrong. There is no doubt that what happened to John Doe and Jane Doe as children was horrible, and that they have suffered terribly at the hands of Rose. Their Complaint, however, does not state a viable claim for relief against the City.[2]

### Relevant Factual Allegations[3]

Rose is a former BPD officer employed by BPD from 1994 until his retirement in 2018.[4] Rose was married to Frances Rose, the mother of John Doe and Jane Doe.[5] Rose sexually abused John Doe from 1990 through 1997, when he was between eight and fourteen years old.[6] Rose sexually abused Jane Doe from 1990 through 1999, when she was between five and fourteen years old.[7] James Doe is Jane Doe's spouse.[8] John and Jane Doe are now adults, with approximate ages of forty (40) and thirty-eight (38) at the time of the filing of this lawsuit, having turned eighteen years old in 2001 and 2003, respectively.[9] While Plaintiffs' Complaint identifies four other child family member victims of Rose who are alleged to have been abused through 2020, the last year alleged for Rose's abuse of John and Jane Doe is 1999.[10]

---

[2] Plaintiffs identify BPD as a "municipal entity," but did not name it as a defendant or list it in the caption. BPD is a City department and not a distinct legal entity. *See Stratton v. City of Boston*, 731 F. Supp. 42, 46 (D. Mass. 1989).
[3] All facts cited herein are taken from Plaintiffs' Complaint. The City makes no admission with respect to these factual allegations, but rather simply contends that these facts fail to give rise to an actionable claim against it.
[4] Plaintiffs' Complaint at ¶ 58.
[5] Plaintiffs' Complaint at ¶ 61.
[6] Plaintiffs' Complaint at ¶ 76.
[7] Plaintiffs' Complaint at ¶ 76.
[8] Plaintiffs' Complaint at ¶ 14
[9] Plaintiffs' Complaint at ¶¶ 12, 13, 76, 77.
[10] Plaintiffs' Complaint at ¶¶ 76, 77, 78.

Rose was employed by the City at BPD as a Probationary Officer as of June 22, 1994 and as a Police Officer from June 23, 1995 through January 5, 2018.[11]  Thus, Rose was a BPD officer during a portion of the time that he sexually abused John Doe and Jane Doe.[12]  At the time he was hired by BPD, there had been a complaint filed with the Department of Children and Families ("DCF") against Rose by one of the other victims in 1992, though there is no allegation that BPD was aware of this 1992 DCF complaint prior to November 10, 1995.[13]

On November 8, 1995, DCF received a report of sexual abuse against John Doe.[14]  BPD assigned Lt. Donohue and Sgt. Det. McLean of the BPD Sexual Assault Unit ("SAU") to investigate the allegation on November 10, 1995.[15]  That same day, John Doe reported to the SAU investigators that Rose sexually abused him, and the SAU investigators arrested Rose.[16]  Sgt. Det. McLean prepared an Incident Report naming Rose as the perpetrator.[17]  Concerned that Rose had a gun and might become angry with family members, Lt. Donahue instructed DCF not return to the home or interview Rose.[18]  A restraining order issued ordering Rose not to contact John and Jane Doe and two other victims, with which BPD allegedly did not ensure compliance.[19]

On November 10, 1995, BPD placed Rose on administrative leave, and on November 11, 1995, BPD confiscated Rose's weapons and license to carry.[20]  In the following days, BPD investigated the claims, interviewing (in addition to John Doe) Frances Rose, Child Victim 3, and

---

[11] Plaintiffs' Complaint at ¶¶ 79, 80.
[12] Plaintiffs' Complaint at ¶ 81.
[13] Plaintiffs' Complaint at ¶ 85, 87, 88.
[14] Plaintiffs' Complaint at ¶ 92.
[15] Plaintiffs' Complaint at ¶ 99.
[16] Plaintiffs' Complaint at ¶ 103.
[17] Plaintiffs' Complaint at ¶ 106.
[18] Plaintiffs' Complaint at ¶¶ 107, 108.
[19] Plaintiffs' Complaint at ¶ 105.
[20] Plaintiffs' Complaint at ¶¶ 112, 113.

two minor friends of John Doe.[21]  Jane Doe was not interviewed.[22]  On November 20, 1995, Sgt. McLean applied for and received a Complaint for Indecent Assault and Battery on a Child Under 14 against Rose, and BPD sent the case to the Suffolk County District Attorney's Office (the "DA").[23]  At the December 1, 1995 arraignment, Rose was sentenced to pre-trial probation, and the Commonwealth dismissed the Complaint on May 7, 1996 because the terms were met and the victims were unwilling to cooperate.[24]  The restraining order against Rose was withdrawn on January 29, 1996, which BPD officials were alleged to have "approved" after the fact.[25]

Within weeks of the arraignment, BPD initiated a complaint against Rose at the Internal Affairs Department ("IAD") regarding potential rules violations in the criminal case.[26]  On June 4, 1996, IAD interviewed Rose at which time he asserted his Fifth Amendment privilege and refused to provide information.[27]  Two days later, IAD sustained the violation of Rule 102, Section 35, Conformance to Laws, which deals with BPD employees who commit criminal acts.[28]  The sustained finding made its way up the chain of command to Police Commissioner Evans, including Superintendent Doherty and Attorney Hatton of the Legal Advisor's Office.[29]

Rose remained on administrative leave until May 6, 1997, when counsel for Rose and the Boston Police Patrolman's Association ("BPPA") sent a letter to IAD attaching affidavits from John Doe and Frances Rose denying any allegations of sexual misconduct by Rose.[30]  The letter requested that Rose be returned to full duty and expressed an intent to challenge the administrative

---

[21] Plaintiffs' Complaint at ¶¶ 87, 88, 100, 117.
[22] Plaintiffs' Complaint at ¶ 149.
[23] Plaintiffs' Complaint at ¶¶ 132, 133.
[24] Plaintiffs' Complaint at ¶¶ 136, 147.
[25] Plaintiffs' Complaint at ¶¶ 145, 146.  It is unclear from the face of the Complaint who the applicant was for the restraining order that was "withdrawn."
[26] Plaintiffs' Complaint at ¶ 153.
[27] Plaintiffs' Complaint at ¶¶ 157, 159.
[28] Plaintiffs' Complaint at ¶¶ 163, 164.
[29] Plaintiffs' Complaint at ¶¶ 169, 176, 183, 190.
[30] Plaintiffs' Complaint at ¶¶ 206, 212.

leave and that any attempt to impose discipline on Rose would be unsuccessful.[31]  A second letter from counsel for Rose dated October 20, 1997 informed Commissioner Evans of the union's intent to file a grievance related to the restriction to administrative leave, which it later filed on October 31, 1997.[32]  The City's Office of Labor Relations denied the grievance.[33]  Sometime thereafter, Rose was ultimately returned to full duty.[34]

In 2020, after Rose retired, John Doe reported to BPD that Rose sexually abused him and two of the Child Victims, as they are referred to in the Complaint.[35] Rose was arrested and charged with various crimes related to the sexual assault of John and Jane Doe, as well as the Child Victims, and on November 20, 2020, a grand jury returned a thirty-three-count indictment against Rose.[36] On April 25, 2022, Rose pleaded guilty to twenty-one counts and was sentenced to prison.[37]

In 1991, Boston Mayor Raymond Flynn commissioned an independent investigation of the management and supervision systems and practices of the BPD.[38]  The subsequent St. Clair Commission Report issued on January 4, 1992 highlighted problems with BPD's handling of citizen complaints regarding police misconduct that led to a small number of sustained findings and a lack of community confidence in BPD's ability or willingness to police itself.[39]

Argument

## I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "While a complaint attacked

---

[31] Plaintiffs' Complaint at ¶ 212.
[32] Plaintiffs' Complaint at ¶¶213, 214.
[33] Plaintiffs' Complaint at ¶¶ 216, 218.
[34] Plaintiffs' Complaint at ¶ 218.
[35] Plaintiffs' Complaint at ¶¶225, 226.
[36] Plaintiffs' Complaint at ¶¶227, 228.
[37] Plaintiffs' Complaint at ¶ 230.
[38] Plaintiffs' Complaint at ¶ 238.
[39] Plaintiffs' Complaint at ¶¶ 239, 240

by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombley*, 550 U.S. at 557).   Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" and "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678-679.   While the First Circuit recognizes the importance of § 1983, it is also "aware of the impact of its misuse" and thus requires a § 1983 claimant to "at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why."   *Dewey v. University of New Hampshire,* 694 F.2d 1, 3 (1st. Cir. 1982).   Thus, in order to survive this motion to dismiss, the facts contained in the Plaintiffs' Complaint must have "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 569.   Plaintiffs' Complaint fails to accomplish that goal.

## II.   EACH OF PLAINTIFFS' CLAIMS ARE BARRED BY THE RELEVANT STATUTES OF LIMITATIONS

All of Plaintiffs' claims were filed long after the statutory limitations periods for those claims had expired.   The claims are barred as a matter of law.   In Massachusetts, the general tort limitations period is three years after the date the cause of action accrued.   *See* M.G.L. c. 260, § 2A.   The § 1983 and § 1985 claims are also governed by the state tort statute of limitations.   "Section 1983 does not contain a built-in statute of limitations." *Nieves v. McSweeney,* 241 F.3d 46, 51 (1st Cir. 2001).   "Thus, a federal court called upon to adjudicate a section 1983 claim ordinarily must borrow the forum state's limitation period governing personal injury causes of action."   *Id.*   (applying three-year limitations period of M.G.L. c. 260, § 2A); *see also Poy v.*

*Boutselis*, 352 F.3d 479, 483 (1st Cir. 2003) (looking to the language of §1988(a)).   Under M.G.L. c. 260, §5B, Plaintiffs were required to commence their MCRA within three years after it accrued.

"[T]he question of when a cause of action accrues in a civil rights case is a matter of federal law." *Nieves*, 241 F.3d at 52.  However, "[b]oth federal and Massachusetts law agree that a § 1983 claim accrues when a plaintiff knows or has reason to know of his injury." *Poy*, 352 F.3d at 483 (citing *Nieves*, 241 F.3d at 52 and *Riley v. Presnell*, 409 Mass. 239, 243 (1991)). However, "[t]he knowledge required is not notice of every fact which must eventually be proved in support of a claim, but rather knowledge that an injury has occurred." *Tedeschi v. Reardon*, 5 F.Supp.2d 40, 44 (D. Mass. 1998).  A "plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt."  *Morán Vega v. Cruz Burgos*, 537 F.3d 14, 20 (1st Cir. 2008)).   The accrual analysis is essentially the same for the MCRA claim under M.G.L. c. 260, §5B.  *See Arsenault v. Otto*, 628 F. Supp. 3d 377, 380 (D. Mass. 2022)

Plaintiffs' claims accrued in the 1990s.  Based on the allegations of the Complaint John and Jane Doe knew of the injury allegedly caused by the actions of BPD officials no later than the time when Rose returned to full duty in spite of the allegations of sexual abuse.  That John and Jane Doe continued to suffer some harm after BPD failed to fire him has no bearing on the outcome.  BPD's allegedly unconstitutional and tortious acts all occurred prior to 2000. John and Jane Doe pleaded that the abuse ended for them by 1997 and 1999, respectively.

The statute of limitations for Plaintiffs' claims did toll for a short period by operation of M.G.L. c. 260, § 7.  That statute provides that, if "the person entitled thereto is a minor, or is incapacitated by reason of mental illness when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed."  John Doe was fourteen years old in 1997, and thus reached the age of majority in 2001.  Jane Doe was

fourteen years old in 1999, and thus reached the age of majority in 2003. Tolled until the age of majority, the three-year limitations period still expired by 2004 and 2006. Nothing alleged in the Complaint would support additional equitable tolling.[40] In their Complaint, Plaintiffs acknowledge an awareness of the harm immediately after Rose was allowed to return to full duty – they pleaded that BPD's acts empowered Rose and that the abuse escalated thereafter.

Although the allegations of the Complaint involve claims of sexual abuse of minors, the statute of limitations in M.G.L. c. 260, § 4C does not apply to any of the claims against the City (or the BPD defendants). That statute provides an increased limitations period for "[a]ctions of tort alleging **the defendant** sexually abused a minor." M.G.L. c. 260, § 4C (emphasis added). For such claims, the limitations period is the longer of thirty-five years from the acts alleged to have caused injury or seven years from the time the victim discovered or should have discovered emotional or psychological injury caused by that act. *See id.* The statute also reaffirms that these periods toll until the minor reaches eighteen years of age. *See id.* However, the Supreme Judicial Court has held that M.G.L. c. 260, § 4C "applies to **claims against perpetrators** of assault and battery by sexual abuse on a minor." *Koe v. Mercer*, 450 Mass. 97, 101, n. 8 (2007) (emphasis added). "Here, the case involved a tort claim against the defendant, who was not a perpetrator of the abuse; therefore, the general tort statute of limitations, G.L. c. 260, § 2A, is the applicable standard." *Id.*[41] Plaintiffs' claims against the City are all barred by M.G.L. c. 260, §§ 2A and 5B.

---

[40] *See, e.g., Otto*, 628 F. Supp. 3d at 380. In *Otto*, the District Court held that the three-year statute of limitations of M.G.L. c. 260, § 5B applied to an MCRA claim alleging sexual abuse against the abuser. *Id.* In so doing, the District Court noted that the plaintiff reached the age of majority thirty-two years before he filed suit, and failed to assert that he did not have knowledge of the wrongful acts sufficient to toll the limitations period for any additional time. *See id.* "For example, he has not asserted that he had repressed memories and therefore, that the accrual of his claim was delayed until he regained his memory of the alleged abuses." *Id.* The same is true here.

[41] *Koe* was decided at a time when the statutes had the same three-year period. 450 Mass. at 101, n. 8. However, nothing about the increase in the limitations period impacts the holding that M.G.L. c. 260, § 4C applies only to claims against the perpetrators of abuse. *See Malouf v. Benson*, 2018 WL 10155427, at *3–4 (D. Mass. Aug. 23, 2018)

### III.   THE *MONELL* CLAIMS (COUNTS 1, 2, 4) FAIL AS A MATTER OF LAW

Plaintiffs' § 1983 claims against the City fail under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692 (1978).  Under § 1983, the City is "not responsible for the unauthorized and unlawful acts of its officers."  *Id*.  Courts analyzing § 1983 "have consistently refused to hold municipalities liable under a theory of respondeat superior."  *Board of County Commissioners v. Brown,* 520 U.S. 397, 403 (1997).  To plead municipal liability under §1983, the plaintiff must allege (1) an unconstitutional "policy or custom" of the City, ***and*** (2) that this policy or custom was "the moving force" behind the alleged injury.  *See Brown*, 520 U.S. at 403-05.  For Plaintiffs to succeed, BPD's failures "in a relevant respect must amount to deliberate indifference to the rights of persons with whom [Rose] came into contact."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quotation omitted).  In addition to a policy or custom and deliberate indifference, municipal liability requires evidence of causation.  *Young*, 404 F.3d at 26.[42]

#### A.  Rose Was Not Acting Under Color of Law Under § 1983

A municipality may be held liable under §1983 only where, "under color of some official policy, [it] 'causes' an employee to violate another's constitutional rights."  *Monell*, 436 U.S. at 692 (analyzing language of §1983).  "*Monell* can impose municipal liability only for underlying, identifiable constitutional violations …"  *Lachance v. Town of Charlton*, 990 F.3d 14, 31 (1st Cir. 2021).  Here, the underlying identifiable constitutional violation is Rose's deprivation of Plaintiffs'

---

(analysis of tort claims arising from sexual assault after increase of § 4C limitations period and concluding only claims asserted against perpetrator of sexual assault fell under § 4C, instead applying § 2A to torts against a school district).

[42] Causation is an element of each of the claims, and it is strikingly absent from the allegations.  BPD brought a criminal complaint against Rose for which the ***Commonwealth*** elected to give him pretrial probation and later dismiss the claims.  BPD initiated IAD proceedings, sustained the findings and sent those findings up the chain of command until the investigation was stymied by affidavits from Frances Rose and John Doe denying any allegations of sexual misconduct by Rose.  The failure to terminate Rose certainly didn't cause the ongoing sexual abuse in the home.  It is difficult to imagine how an unemployed Rose would have made things better for John and Jane Doe.  While causation is most often a question of fact for the jury, when all the facts are established and there can be no reasonable difference as to the effect of them, causation becomes a question of law.  *Stamas v. Fanning*, 345 Mass. 73, 76 (1962).

right to bodily integrity.  In Counts 1 and 2, Plaintiffs claim that the City's customs and policies and failure to screen, train or supervise led to Rose's sexual abuse.  In Count 4, Plaintiffs allege that the City created the danger to Plaintiffs of Rose's physical, sexual and emotional abuse.

However, Rose was not acting under color of law when he sexually abused John and Jane Doe.  In the First Circuit, "whether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Martinez v. Colon,* 54 F.3d 980, 986 (1st Cir.1995) (shooting by officer of another during a personal dispute not acting under color of law, despite use of police weapon, on-shift status and uniform).  "The key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law."  *Id*.  "[T]he challenged conduct [must be] related in some meaningful way either to the officer's governmental status or to the performance of his duties."  *Id*. at 987.

There are no allegations that the abuse occurred while Rose was working or performing his duties as a police officer, or that he somehow used his role as a BPD officer to facilitate the abuse. The allegations are that this abuse occurred in the home.  The abuse dates back to several years prior to Rose joining BPD.  This case falls in line with *Martinez*, where Rose's status as a police officer was incidental to the abuse of Plaintiffs.  The facts here can be contrasted with those in *Trinidad v. City of Boston*, where an undercover police officer was acting under color of law when he flashed his badge and threatened to arrest a prostitute if she did not perform sex acts on him. 2010 WL 2817186, at *11 (D. Mass. July 16, 2010).  Counts I, II and IV should be dismissed.

### B.  There are no Allegations Sufficient to Establish Deliberate Indifference on the Part of BPD Officials

Deliberate indifference is a crucial element of the *Monell* claims.  Plaintiffs must show a constitutional violation on the part of the BPD Officers and that City officials behaved in a manner

that "could be characterized as supervisory encouragement, condonation, or acquiescence, or gross negligence amounting to deliberate indifference." *Lipsett v. University of Puerto Rico*, 864 F. 2d 881, 902 (1st Cir. 1988).  "[P]roof of mere negligence, without more, is inadequate." *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994).   As a result, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor ***disregarded a known or obvious consequence of his action***." *Brown*, 520 U.S. at 410 (emphasis added). Deliberate indifference requires notice – an official cannot make a deliberate choice "unless confronted with a problem that requires the taking of affirmative steps." *Lipsett*, 864 F.2d at 902. "[I]solated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." *Maldonado-Denis*, 23 F.3d at 582.  Instead, it is "ordinarily necessary" for a plaintiff to prove a "pattern of similar constitutional violations" to demonstrate deliberate indifference. *Connick*, 563 U.S. at 62.

There is no deliberate indifference here.  In an effort to establish that a custom or policy of BPD caused the sexual abuse by Rose, Plaintiffs look to the 1992 St. Clair Commission Report. Plaintiffs highlight the fact that the report found that BPD sustains less than six percent of complaints against officers while ignoring that the complaint against Rose fell in that six percent and not the other 94% the report found troubling.  There is no allegation in the Complaint that BPD ignored prior allegations of sexual abuse by police officers.  As pleaded, there is no allegation that BPD was aware of the 1992 DCF complaint against Rose prior to the 1995 criminal investigation.   And while the 1995 allegations, standing alone, are insufficient to establish deliberate indifference, there is no evidence that BPD was actually indifferent.  BPD initiated the criminal investigation and referred it to the DA.  BPD officers initiated the IAD investigation, sustained it and passed it up the chain of command.  No one was indifferent.   The IAD

investigation, the only action over which BPD had control of the outcome, ended only when Frances Rose and John Doe filed affidavits retracting the allegations upon which the investigation was based.  There is no deliberate indifference on the part of BPD as a matter of law.

### C.  There is no State-Created Danger

Count 4 asserts a claim under the "state-created danger" doctrine.  *See Rivera v. Rhode Island*, 402 F.3d 27, 35 (1st Cir. 2005).  The general rule is that a state actor's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *DeShaney v. Winnebago City Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).  There are two exceptions to this rule, neither of which is applicable: (1) where the government took custody of plaintiff; or (2) where the government affirmatively acted to increase the threat of third-party harm in a way that "shock[s] the conscience of the court."  *Rivera*, 402 F.3d at 35; *see also Thomas v. Springfield Sch. Comm.*, 59 F. Supp. 3d 294, 307 (D. Mass. 2014) (failure to act to "prevent the repetition or escalation of behavior" not a violation).  "[I]n a state creation of risk situation, where the ultimate harm is caused by a third party, 'courts must be careful to distinguish between conventional torts and constitutional violations, as well as between state inaction and action.'"  *Rivera*, 402 F.3d at 36 (quoting *Soto v. Flores,* 103 F.3d 1056, 1063–64 (1st Cir. 1997)).  "Merely alleging state actions which render the individual more vulnerable to harm, under a theory of state-created danger, cannot be used as an end run around *DeShaney's* core holding."  *Id.* at 38.

In *Rivera*, the plaintiff did not make out a viable state-created danger claim where a fifteen-year-old grand jury witness was shot and killed after defendant officers failed to put her in witness protection in the face of death threats.  There, the actions taken by the defendants were "essential to the investigation and performed appropriately."  In the recent decision in *Irish v. Fowler*, the First Circuit contrasted the facts to *Rivera*, and reached the opposite result, allowing the state-

created danger claim to go to the jury.  979 F.3d 65, 75 (1st Cir. 2020).  There, the claim that went

to the jury was that the manner in which detectives investigating a kidnapping and rape ***contacted***

***the suspect*** – despite having been warned of the suspect's multiple threats of violence and the

burning of victim's barn, failing to post an officer at the victim's home, and the officers' own

***acknowledgment that contacting him would increase the risks*** to the victim and her family – was

wrongful and a state-created danger.  *See id*. at 68-71.

Plaintiffs failed to plead facts sufficient to establish the elements of a state-created danger

claim.  What Plaintiffs claim enhanced the danger to them was not an affirmative act, but a failure

to act.  At its core, Plaintiffs' allegation is that the failure to terminate Rose from his employment

with BPD enhanced the danger to Plaintiffs.  The actions that BPD officials did take fall more in

line with *Rivera* than *Irish*.  BPD investigated the 1995 allegation, arrested Rose immediately,

filed for a criminal complaint, and sent the case to the DA.  BPD had no control over the outcome.

BPD officers also filed IAD charges against Rose, which were sustained as a result of his refusal

to cooperate, and the sustained finding was passed up the chain of command.  Count 4 is based not

on what BPD did to create a danger, but what it didn't do.  The claim fails as a matter of law.

### IV.    PLAINTIFFS' TORT CLAIMS (COUNTS 23, 26, 28, 31, 36) FAIL FOR LACK OF TIMELY PRESENTMENT UNDER M.G.L. c. 258, § 4 AND ARE EACH BARRED BY ONE OF THE EXCEPTIONS IN M.G.L. c. 258, § 10

The City is only liable for claims sounding in tort if those claims fall within the scope of

the Massachusetts Tort Claims Act (the "MTCA"), which is a legislative waiver of sovereign

immunity by the Commonwealth and its political subdivisions.  *See, e.g., Morrissey v. New*

*England Deaconess Association—Abundant Life Communities, Inc.*, 458 Mass. 580, 586-87

(2010).  Here, the tort claims fail for two discrete reasons: (1) no timely presentment under § 4 of

the MTCA; (2) and each of the claims is barred by one or more of the exceptions to tort liability

contained in §10 of the MTCA.[43]  The MTCA "is not a blanket waiver of protection" - section 10 "specifically exempts certain categories of conduct that continue to enjoy the protection of sovereign immunity."  *Shapiro v. City of Worcester*, 464 Mass. 261, 270 (2013).  "Although the Act has abrogated the Commonwealth's immunity in tort actions in most circumstances, the Legislature has, for reasons of public policy, chosen to preserve sovereign immunity for certain claims, irrespective of their legal sufficiency or merit, or the gravity of the injuries alleged."  *Morrisey,* 458 Mass. at 592 (internal quotation omitted) (discussing exemptions in § 10(a-j)).

### A.  Plaintiffs Failed to Make Timely Presentment

Under M.G.L. c. 258, a plaintiff must give notice of a cause of action within **two years** of the date it arose.  "A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose."  M.G.L. c. 258, §4.  "This strict presentment requirement is a statutory prerequisite for recovery under the Act."  *Shapiro v. City of Worcester*, 464 Mass. 261, 267 (2013).  Failure to make timely presentment is grounds for dismissal.  "In cases in which the issue is not raised until the time has elapsed during which presentment properly could have been made, the plaintiff's complaint is subject to dismissal on a motion made … for failure to state a claim upon which relief can be granted."  *Vasys v. Metropolitan District Commission*, 387 Mass. 51, 56 (1982).

There is no tolling of the presentment period here.  "Exceptions to the strict application of the presentment requirement have been made only in those unusual cases in which, by conduct in

---

[43] James Doe's loss of consortium claim fails as a matter of law as it is predicated on acts that are immunized by the MTCA.  *See*, *e.g.*, *Doe v. D'Agostino*, 367 F. Supp. 2d 157, 178 (D. Mass. 2005).  The loss of consortium claim is tied to the fate of Jane Doe's tort claims.  *Wagner v. Devine*, 122 F.3d 53, 54 (1st Cir. 1997) ("Because this claim survives or fails with [the plaintiff's] state claims, we do not address it separately"); *Sena v. Commonwealth,* 417 Mass. 250, 264 (1994) ("we have not repudiated the implicit prerequisite that the injured spouse have a viable claim").

the course of litigation, a public employer, at a time when presentment could still have been made, lulled a plaintiff into believing that proper presentment would not be an issue in the case." *Krasnow v. Allen*, 29 Mass. App. Ct. 562, 567, n. 7 (1990).  Although the discovery rule may toll presentment in limited circumstances, they do not exist here. *Id.* at 570 (claim not "inherently unknowable" where plaintiff knew of harm and involvement of public employee).   While the language of M.G.L. c. 260, § 7 tolls the limitations period for minors, it does not "by analogy" apply to the presentment requirement.  *Compare George v. Town of Saugus*, 394 Mass. 40, 42-44 (1985) (no tolling of presentment requirement for minor) *with Hernandez v. City of Boston*, 394 Mass. 45, 48 (1985) (limitations period of tolled for minors).   Thus, the three-year statute of limitations is tolled by M.G.L. c. 260, § 7 "***if a minor plaintiff complies with the presentment requirement***, but fails to bring suit within three years of the date that the cause of action accrued." *George*, 394 Mass. at 42, n.3 (emphasis added).  In other words, "[a]ll actions – be they by minors or adults – are subject to the two-year notice provision."  *Hernandez*, 394 Mass. at 48.

Here, the tort claims against the City for the actions of BPD officials arose[44] more than twenty-five years ago.  There is no evidence that any of the Does presented claims within two years of the actions of BPD complained of in the Complaint.  John Doe, among others, arguably made presentment in a letter sent to the City in 2021, but his tort claims arose by 1998 at the latest. The last pleaded action by BPD prior to the arrest of Rose in 2020 was his reinstatement to BPD in the late 1990s.  At all times, John and Jane Doe knew that they were the victims of sexual abuse in the 1990s and were aware that Rose remained employed by BPD thereafter.  There was no

---

[44] The use of "arose" in § 4 of the MTCA is significant when compared to the use of "accrued" under the statute of limitations.  "The time at which a cause of action arises is fixed: an event occurred that concurrently or at a later date caused an injury. The discovery of that injury marks the time at which the cause of action *accrues.*"  *John Doe No. 4 v. Levine*, 77 Mass. App. Ct. 117, 119 (2010) (emphasis in original) (rejecting discovery rule in determining retroactivity of statute)

timely presentment for John Doe, and for Jane and James Doe, no allegation of presentment at all.

Counts 23, 26, 28, 31, 36 should be dismissed for lack of presentment.

### B.  The City was not the Original Cause of the Harm to Plaintiffs Under § 10(j)

The sum and substance of Plaintiffs' tort claims is that BPD failed to act to prevent the

harm that they suffered at the hands of Rose.  Under § 10(j), c. 258 liability:

> shall not apply to: … (j) any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

M.G.L. c. 258, §10(j).  In other words, §10(j) "eliminates government liability for a public

employer's act or failure to act to prevent harm from the wrongful conduct of a third

party <u>unless</u> the condition or situation was '<u>originally caused</u>' by the public employer." *Cormier*

*v. City of Lynn*, 479 Mass. 35, 40 (2018) (emphasis in original).  "[F]or the 'original cause'

language under § 10(j) to apply, the act must have materially contributed to creating the specific

condition or situation that resulted in the harm." *Id.* (internal quotation omitted)

The City and BPD were not the original cause of the condition or situation that led to the

abuse of John and Jane Doe.  On its face, the Complaint alleges that BPD failed to act to prevent

the harmful consequences of a condition or situation – the violent and tortious conduct of Rose.

Rose, and not BPD officials, was the original cause of the harm to John and Jane Doe.  In

*Armstrong v. Lamy*, the District Court found that § 10(j) barred claims against a public employer

where a teacher sexually abused a student.  938 F. Supp. 1018, 1043–44 (D. Mass. 1996) (Keeton,

J.).  In *Canty v. Old Rochester Regional School District,* the District Court held that § 10(j) barred

negligence claims against the school district for failure to prevent or diminish the sexual

misconduct of a coach.  54 F.Supp.2d 66, 71 (D. Mass. 1999) (Young, J.).

As pleaded, Rose was not hired at BPS until four years after he had started sexually abusing John and Jane Doe. Moreover, this case is similar to the facts of *Kent*, where the Supreme Judicial Court concluded that § 10(j) required dismissal of a claim against the parole board for its negligence in releasing a convicted murderer who – eight years later – shot a police officer because the parole board's affirmative act did not materially contribute to the police officer's injuries. *Id*. at 313, 319–320. Likewise, BPD's failure to further investigate or discipline Rose did not materially contribute to the injuries of John and Jane Doe. The City retains sovereign immunity with respect to Counts 23, 26, 28, 31 and 36 under § 10(j), and those claims should be dismissed.[45]

### C. Plaintiffs' Claims are Premised on BPD's Alleged Failure to Protect Them from Harm and are Thus Barred by § 10(h)

The sum and substance of each of the five tort claims against the City is that BPD officials failed to act to protect Plaintiffs from the harm caused by Rose. That theory of liability is precluded by § 10(h). Section 10(h) bars any claim "for failure to provide adequate police protection, prevent the commission of crimes, investigate, detect or solve crimes, identify or apprehend criminals or suspects, arrest or detain any suspects, or enforce any law …." "Aside from its exceptions (inapplicable here), clause (h) seeks to immunize a municipality when the criminal acts of a third person are a cause of a plaintiff's harm, and the police were negligent in not preventing that criminal conduct." *Carleton v. Town of Framingham*, 418 Mass. 623, 629 (1994) (10(h) barred claim that police officer was negligent in allowing drunk driver to operate vehicle shortly before causing deadly crash).[46] Here, Rose's criminal acts were the cause of Plaintiffs' harm. To the

---

[45] Where a claim of negligent infliction of emotional distress "arises so directly out of the circumstances for which the Commonwealth has immunity" that claim is barred as well. *Jacome v. Commonwealth*, 56 Mass. App. Ct. 486, 493 (2002).

[46] The decisions regarding Rose are also discretionary functions under § 10(b). "Thus, we hold that the conduct of law enforcement officials in investigating potentially criminal conduct and in seeking warrants for the arrest of those whom they investigate, are discretionary functions and therefore fall within the exception in § 10(b)." *Sena v.*

extent that BPD officials were negligent in failing to prevent that criminal conduct, the City remains immune from liability under § 10(h).  Counts 23, 26, 28, 31 and 36 should be dismissed.

### D.  Count 31 is an Intentional Tort Barred by § 10(c)

Count 31 is an intentional tort – ***intentional*** infliction of emotional distress – and cannot be asserted against the City under § 10(c).  The exclusion in § 10(c) provides that c. 258 liability:

> shall not apply to: …  (c) any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations.

By the express terms of § 10(c), a municipality such as the City "cannot be sued for intentional torts such as intentional infliction of emotion distress." *Saltzman v. Town of Hanson*, 935 F. Supp. 2d 328, 347 (D. Mass. 2013); *see also Tilton v. Town of Franklin*, 24 Mass. App. Ct. 110, 112 (1987).  Count 31 should be dismissed as the City retains sovereign immunity under § 10(c).

### V.      THE § 1985 CLAIM FAILS BECAUSE THERE IS NO CLASS-BASED ANIMUS

Plaintiffs' § 1985 claim falls under subsection (3), with the heading "depriving persons of rights or privileges."  Section 1985(3) provides a remedy for a conspiracy to violate civil rights if the plaintiff establishes: (1) a conspiracy; (2) a conspiratorial purpose to deprive him of the equal protection of the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to his person or property, or a deprivation of a constitutionally protected right." *Pisano v. Ambrosino*, 2016 WL 3093372, at *3 (D. Mass., June 1, 2016) (Gorton, J.).  "The second requirement of conspiratorial purpose requires some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id*. at 4 (quoting *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008))

---

*Commonwealth*, 417 Mass. 250, 257 (1994).  The decision not to discipline Rose and to reinstate him after the submission of the affidavits from Frances Rose and John Doe was a discretionary one.

Here, there are no allegations of racial or other class-based conspiracy.  On the contrary, in Count 11 Plaintiffs allege that the City deprived them of their right to bodily integrity and to be free from deprivation of liberty.  There is no class-based animus alleged.  "Section 1985(3) 'is not to be construed as a general federal tort law.'" *David v. Local 801, Danbury Fire Fighters Ass'n*, 899 F. Supp. 78, 80 (D. Conn. 1995) (quoting *Gerritsen v. de la Madrid Hurtado,* 819 F.2d 1511, 1518–19 (9th Cir. 1987)).[47]  Count 11 should be dismissed

## VI.   THE CITY IS NOT A PERSON UNDER THE MCRA AND THERE ARE NO ALLEGATIONS OF THREATS, INTIMIDATION OR COERCION

Plaintiffs assert a claim (Count 16) under the Massachusetts Civil Rights Act ("MCRA") that is similar to the *Monell* claim under § 1983.  Like *Monell*, "claims against employers under the MCRA cannot rest on the doctrine of respondeat superior."  *Lyons v. National Car Rental Sys.,* 30 F.3d 240, 247 (1st Cir.1994) (relying on fact that MCRA was enacted one year after *Monell* with no provision for respondeat superior).  However, unlike *Monell*, the MCRA does not apply to public employers under any circumstances.  Simply stated, "a municipality is not a 'person' covered by the [MCRA]."  *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 591 (2001); *see also Commonwealth v. ELM Medical Laboratories, Inc.*, 33 Mass. App. Ct. 71, 77 (1992) ("[T]here is no reason to believe that the Legislature intended, by the enactment of G.L. c. 12, §§ 11H and 11I, to waive sovereign immunity"); *Kelley v. LaForce*, 288 F.3d 1, 11, n.9 (1st Cir. 2002) ("under Massachusetts law a municipality cannot be sued under the MCRA").[48]

---

[47] Plaintiffs' Complaint alleges that each entity – BPD, DCF and BPPA – conspired to deprive Plaintiffs of rights, but there is no allegation that the agencies and their employees conspired with each other.  If Plaintiffs' allege a conspiracy among the City and the BPD Defendants, this claim fails under the intra-corporate conspiracy doctrine.  *See, e.g.*, *BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*, 2022 WL 138642, at *9 (D. Mass. Jan. 14, 2022) (Casper, J.).  "The doctrine generally forecloses the existence of a conspiracy among a single entity because that entity 'cannot conspire with itself.'" *Id.* (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 131 (1st Cir. 2006)).

[48] As the District Court has held, "while the Massachusetts legislature may have viewed liability toward corporations in one light, it likely did not intend, by expanding liability to private actors, to impose the theory of respondeat superior

Furthermore, to the extent the claims are based on the actions of BPD employees in failing to investigate or discipline Rose, the claims are also barred because they fail to allege a deprivation of rights by "threats, intimidation or coercion." *See Doe v. Sex Offender Registry Bd.*, 94 Mass. App. Ct. 52, 64–65 (2018). "Such threats, intimidation, or coercion comprises the essential element of an MCRA violation." *Arroyo v. City of Boston*, 2021 WL 2338879, at *8 (D. Mass. 2021)). Absent an allegation of threats, intimidation or coercion independent of the constitutional violations committed by Rose, the MCRA claim fails as a matter of law. "A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act." *Longval v. Commissioner of Correction*, 404 Mass. 325, 333 (1989). "Conduct, even unlawful conduct, however, lacks these qualities when all it does is take someone's rights away directly." *Id.* at 333-34. Count 16 must be dismissed.

## VII.    THERE IS NO PRIVATE RIGHT OF ACTION UNDER M.G.L. c. 119 § 51A

Count 41 alleges violations of M.G.L. c. 119, § 51A, which requires reporting of sexual abuse by "mandated reporters" to the appropriate government authority – the DCF. There are several issues with this argument. First, "section 51A does not provide a private right of action against mandated reporters who fail to report an incident of child abuse." *Doe v. D'Agostino*, 367 F. Supp. 2d 157, 176 (D. Mass. 2005). Rather, § 51A(c) imposes criminal penalties for failure to report, including fines and penalties. Moreover, while police officers are mandated reporters under M.G.L. c. 119, § 21, under § 51A(a), law enforcement is specifically articulated as an additional entity to whom mandated reporters may report. M.G.L. c. 119, § 51A(s). Plaintiff pleaded that the DCF and BPD carried on concurrent and overlapping investigations, and DCF initiated its 1995 investigation two days prior to the investigations by BPD. Count 41 should be dismissed.

---

on municipalities as well." *Chaabouni v. City of Boston*, 133 F. Supp. 93, 103 (D. Mass. 2001) (Young, J.) (discussing *Sarvis v. Bos. Safe Deposit & Tr. Co.*, 47 Mass. App. Ct. 86, 97 (1999)).

## Conclusion

For the reasons set forth herein, the City respectfully requests that this Honorable Court grant his motion, dismiss all counts of Plaintiffs' Complaint asserted against it (**Counts 1, 2, 4, 5, 16, 23, 26, 28, 31, 36, 41, 43**), and grant such other and further relief as it deems just and proper.

Dated:  June 26, 2023

Respectfully submitted,

**CITY OF BOSTON,**

By its attorneys:
ADAM CEDERBAUM
Corporation Counsel

/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr. (BBO#644331)
Senior Assistant Corporation Counsel
Adam D. Johnson (BBO#679142)
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA  02201
(617) 635-4045 (EFW)
(617) 635-4097 (ADJ)
edward.whitesell@boston.gov
adam.johnson@boston.gov

## Certificate of Service

I, Edward F. Whitesell, Jr., hereby certify that on June 26, 2023, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and by first class mail to all non-registered participants.

/s/ Edward F. Whitesell, Jr.
Edward F. Whitesell, Jr.