UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:23-cv-11294-FDS

JOHN DOE, JANE DOE and JAMES DOE,

      Plaintiffs,

v.

CITY OF BOSTON, PAUL EVANS, individually,
ROBERT DUNFORD, individually, MELBERT
AHERN, individually, ANNE MARIE DOHERTY,
individually, LADONNA HATTON, individually,
EILEEN VANDERWOOD, individually, JOHN
MCLEAN, individually, MARIE DONOHUE,
individually, DEFENDANTS DOES 1-5,
individually, MASSACHUSETTS DEPARTMENT
OF CHILDREN AND FAMILIES, DEFENDANT
DOES 6-10, individually, BOSTON POLICE
PATROLMAN'S ASSOCIATION, THOMAS
NEE, individually, DEFENDANT DOES 11-15,
individually, PATRICK ROSE, SR., and
FRANCES ROSE,

      Defendants.

**BPD DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT**

    Defendants Paul Evans, Robert Dunford, Melbert Ahern, Anne Marie Doherty, Ladonna

Hatton, Eileen Vanderwood, and Marie Donohue (collectively the "BPD Defendants") submit this

memorandum of law in support of their motion to dismiss all counts of the Complaint by plaintiffs

John Doe, Jane Doe and James Doe ("Plaintiffs") asserted against them.[1]   The Plaintiffs have

---

[1] The Plaintiffs bring forty-three (43) counts, of which thirteen (13) are asserted against the BPD Defendants: (1)
**Count 1** for violations of 42 U.S.C. § 1983 (custom and policies); (2) **Count 2** for violations of 42 U.S.C. § 1983
(failure to train/screen/supervise); (3) **Count 3** for violations of 42 U.S.C. § 1983 (supervisory liability) (4) **Count 4**
for violations of 42 U.S.C. § 1983 (state-created danger); (5) **Count 11** for conspiracy to interfere with Civil Rights
Act in violation of 42 U.S.C. § 1985; (6) **Count 16** – violations of the Massachusetts Civil Rights Act, M.G.L. c. 12,

alleged a number of constitutional, statutory, and tort claims against them arising from allegations

of sexual assault by defendant Patrick Rose, Sr.. These claims are barred by a number of defenses

as a matter of law, including statutes of limitations.  What happened to Plaintiffs John and Jane

Doe as children was horrible, and no child should suffer such mistreatment.  However, their claims

against the employees and officers of the Boston Police Department who investigated the crimes,

brought charges, and transferred the case to the District Attorney for prosecution are misplaced.

### Relevant Factual Allegations [2]

Rose is a former BPD Officer employed by BPD from 1994 until his retirement in 2018.[3]

Rose was married to Frances Rose, the mother of John Doe and Jane Doe.[4]  Rose sexually abused

John Doe from 1990 through 1997, when he was between eight and fourteen years old.[5]  Rose

sexually abused Jane Doe from 1990 through 1999, when she was between five and fourteen years

old.[6]  James Doe is Jane Doe's spouse.[7]  John and Jane Doe are now adults, with approximate ages

of forty (40) and thirty-eight (38) at the time of the filing of this lawsuit, having turned eighteen

years old in 2001 and 2003, respectively.[8]  While Plaintiffs' Complaint identifies four other child

family member victims of Rose who are alleged to have been abused through 2020, the last year

alleged for Rose's abuse of John and Jane Doe is 1999.[9]

---

§§ 11H & 11I; (7) **Count 23** – negligence; (8) **Count 26** – negligent hiring, training, supervision and retention; (9) **Count 28** – gross negligence; (10) **Count 31** – intentional infliction of emotional distress; (11) **Count 36** – negligent infliction of emotional distress; (12) **Count 41** – violation of M.G.L. c. 119 § 51A; (13) **Count 43** – loss of consortium.
[2] Except where otherwise noted, all facts cited in this memorandum of law are taken from Plaintiffs' Complaint.  The Defendants  make no admission with respect to these factual allegations, but rather simply contends that these facts fail to give rise to an actionable claim against it.
[3] Plaintiffs' Complaint at ¶ 58.
[4] Plaintiffs' Complaint at ¶ 61.
[5] Plaintiffs' Complaint at ¶ 76.
[6] Plaintiffs' Complaint at ¶ 76.
[7] Plaintiffs' Complaint at ¶ 14
[8] Plaintiffs' Complaint at ¶¶ 12, 13, 76, 77.
[9] Plaintiffs' Complaint at ¶¶ 76, 77, 78.

Rose was employed by the City at BPD as a Probationary Officer as of June 22, 1994 and as a Police Officer from June 23, 1995 through January 5, 2018.[10]  Thus, Rose was a BPD Officer during a portion of the time that he sexually abused John Doe and Jane Doe.[11]  At the time he was hired by BPD, there had been a complaint filed with the Department of Children and Families ("DCF") against Rose by one of the other victims in 1992, though there is no allegation that BPD was aware of this 1992 DCF complaint prior to November 10, 1995.[12]

On November 8, 1995, the DCF received a report of sexual abuse against John Doe.[13]  BPD assigned Lt. Anne Marie Donohue and Sgt. Det. John McLean of the BPD Sexual Assault Unit ("SAU") to investigate the allegation on November 10, 1995.[14]  That same day, John Doe reported to the SAU investigators that Rose sexually abused him, and the SAU investigators arrested Rose.[15]  Sgt. Det. McLean prepared an Incident Report naming Rose as the perpetrator.[16]  Concerned that Rose had a gun and might become angry with family members, Lt. Donahue instructed DCF to not return to the home or interview Rose.[17]  A restraining order was issued ordering Rose not to contact John and Jane Doe and two other victims.[18]

On November 10, 1995, BPD Command Staff placed Rose on administrative leave, and on November 11, 1995, BPD confiscated Rose's weapons and license to carry.[19]  In the following days, BPD officers investigated the claims, interviewing (in addition to John Doe) Frances Rose,

---

[10] Plaintiffs' Complaint at ¶¶ 79, 80.
[11] Plaintiffs' Complaint at ¶ 81.
[12] Plaintiffs' Complaint at ¶ 85, 87, 88.
[13] Plaintiffs' Complaint at ¶ 92.
[14] Plaintiffs' Complaint at ¶ 99.
[15] Plaintiffs' Complaint at ¶ 103.
[16] Plaintiffs' Complaint at ¶ 106.
[17] Plaintiffs' Complaint at ¶¶ 107, 108.
[18] Plaintiffs' Complaint at ¶ 105.
[19] Plaintiffs' Complaint at ¶¶ 112, 113.

Child Victim 3, and two minor friends of John Doe.[20]   Jane Doe was not interviewed.[21]   On November 20, 1995, Sgt. McLean applied for and received a Complaint for Indecent Assault and Battery on a Child Under 14 against Rose, and BPD sent the case to the Suffolk County District Attorney's Office for prosecution.[22] At the arraignment on December 1, 1995, Rose was sentenced to pre-trial probation of one year.  The Commonwealth dismissed the Complaint on May 7, 1996 because the terms of the pre-trial probation were met and the victims were unwilling to cooperate.[23]

Within weeks of the arraignment, BPD initiated an internal complaint against Rose at the Internal Affairs Department ("IAD") regarding potential rules violations in connection with the criminal case.[24]   On June 4, 1996, IAD interviewed Rose at which time he asserted his Fifth Amendment privilege and refused to provide information.[25]   Two days later, IAD sustained the violation of Rule 102, Section 35, Conformance to Laws, which deals with BPD employees who commit criminal acts.[26]   The sustained finding made its way up the chain of command to Police Commissioner Evans, including, among others, Superintendent Doherty and Attorney Hatton of the Legal Advisor's Office.[27]

Rose remained on administrative leave until May 6, 1997, when counsel for Rose and the Boston Police Patrolman's Association ("BPPA") sent a letter to IAD attaching affidavits from John Doe and Frances Rose denying any allegations of sexual misconduct by Rose.[28]   The letter requested that Rose be returned to full duty and expressed an intent to challenge the administrative

---

[20] Plaintiffs' Complaint at ¶¶ 87, 88, 100, 117.
[21] Plaintiffs' Complaint at ¶ 149.
[22] Plaintiffs' Complaint at ¶¶ 132, 133.
[23] Plaintiffs' Complaint at ¶¶ 136, 147.
[24] Plaintiffs' Complaint at ¶ 153.
[25] Plaintiffs' Complaint at ¶¶ 157, 159.
[26] Plaintiffs' Complaint at ¶¶ 163, 164.
[27] Plaintiffs' Complaint at ¶¶ 169, 176, 183, 190.
[28] Plaintiffs' Complaint at ¶¶ 206, 212.

leave and that any attempt to impose discipline on Rose would be unsuccessful.[29]  A second letter from counsel for Rose dated October 20, 1997 informed Commissioner Evans of the union's intent to file a grievance related to the restriction to administrative leave, which it filed on October 31, 1997.[30]  The City's Office of Labor Relations denied the grievance.[31]  Sometime thereafter, Rose was ultimately returned to full duty.[32]  There are no allegations that the Plaintiffs ever notified the Boston Police Department, the City of Boston, or the individual BPD Defendants of any further abuse by Patrick Rose, Sr. during his employment.

In 2020, after Rose retired from BPD, John Doe reported to BPD that Rose sexually abused him and two of the Child Victims, as they are referred to in the Complaint.[33]  Rose was arrested and charged with various crimes related to the sexual assault of John and Jane Doe, as well as the four Child Victims, and on November 20, 2020, a grand jury returned a thirty-three-count indictment against Rose.  On April 25, 2022, Rose pleaded guilty to twenty-one counts and was sentenced to prison.[34]

## Argument

### I.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.*

---

[29] Plaintiffs' Complaint at ¶ 212.
[30] Plaintiffs' Complaint at ¶¶213, 214.
[31] Plaintiffs' Complaint at ¶¶ 216, 218.
[32] Plaintiffs' Complaint at ¶ 218.
[33] Plaintiffs' Complaint at ¶¶225, 226.
[34] Plaintiffs' Complaint at ¶ 230.

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombley*, 550 U.S. at 557).   Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" and "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678-679.

Courts considering motions to dismiss in civil rights actions "should continue to eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." *Id.* (internal quotation omitted).  While the First Circuit recognizes the importance of § 1983, it is also "aware of the impact of its misuse" and thus requires a § 1983 claimant to "at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why." *Dewey v. University of New Hampshire,* 694 F.2d 1, 3 (1st. Cir. 1982).  Thus, in order to survive this motion to dismiss, the facts contained in the Plaintiffs' Complaint must have "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 569.   For the reasons set forth herein, Plaintiffs' Complaint fails to accomplish this goal.

## II.     EACH OF PLAINTIFFS' CLAIMS ARE BARRED BY THE RELEVANT STATUTES OF LIMITATIONS

All of Plaintiffs' claims were filed long after the statutory limitations periods for those claims had expired, and the claims are barred as a matter of law.   In Massachusetts, the general tort limitations period is three years after the date the cause of action accrued.  *See* M.G.L. c. 260, § 2A.  The § 1983 and § 1985 claims are also governed by the state tort statute of limitations. "Section 1983 does not contain a built-in statute of limitations." *Nieves v. McSweeney,* 241 F.3d 46, 51 (1st Cir. 2001).  "Thus, a federal court called upon to adjudicate a section 1983 claim ordinarily must borrow the forum state's limitation period governing personal injury causes of

action." *Id.* (applying three-year limitations period of M.G.L. c. 260, § 2A); *see also Poy v. Boutselis*, 352 F.3d 479, 483 (1st Cir. 2003) (looking to the language of §1988(a)).   Under M.G.L. c. 260, §5B, Plaintiffs were required to commence their MCRA within three years after it accrued.

"[T]he question of when a cause of action accrues in a civil rights case is a matter of federal law." *Nieves,* 241 F.3d at 52.  However, "[b]oth federal and Massachusetts law agree that a § 1983 claim accrues when a plaintiff knows or has reason to know of his injury." *Poy*, 352 F.3d at 483 (citing *Nieves,* 241 F.3d at 52 and *Riley v. Presnell,* 409 Mass. 239, 243 (1991)). However, "[t]he knowledge required is not notice of every fact which must eventually be proved in support of a claim, but rather knowledge that an injury has occurred." *Tedeschi v. Reardon,* 5 F.Supp.2d 40, 44 (D. Mass. 1998).  A "plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt." *Morán Vega v. Cruz Burgos*, 537 F.3d 14, 20 (1st Cir. 2008)).   The accrual analysis is essentially the same for the MCRA claim under M.G.L. c. 260, §5B. *See Arsenault v. Otto*, 628 F. Supp. 3d 377, 380 (D. Mass. 2022)

Plaintiffs' claims accrued in the 1990s.  Based on the allegations of the Complaint John and Jane Doe knew of the injury allegedly caused by the actions of BPD officials no later than the time when Rose returned to full duty in spite of the allegations of sexual abuse.  That John and Jane Doe continued to suffer some harm after BPD failed to fire him has no bearing on the outcome.  BPD's allegedly unconstitutional and tortious acts all occurred prior to 2000. John and Jane Doe pleaded that the abuse ended for them by 1997 and 1999, respectively.

The statute of limitations for Plaintiffs' claims did toll for a short period by operation of M.G.L. c. 260, § 7.  That statute provides that, if "the person entitled thereto is a minor, or is incapacitated by reason of mental illness when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed."  John

Doe was fourteen years old in 1997, and thus reached the age of majority in 2001. Jane Doe was fourteen years old in 1999, and thus reached the age of majority in 2003. Tolled until the age of majority, the three-year limitations period still expired by 2004 and 2006. Nothing alleged in the Complaint would support additional equitable tolling.[35] In their Complaint, Plaintiffs acknowledge an awareness of the harm immediately after Rose was allowed to return to full duty – they pleaded that BPD's acts empowered Rose and that the abuse escalated thereafter.

Although the allegations of the Complaint involve claims of sexual abuse of minors, the statute of limitations in M.G.L. c. 260, § 4C does not apply to any of the claims against the BPD Defendants. That statute provides an increased limitations period for "[a]ctions of tort alleging *the defendant* sexually abused a minor." M.G.L. c. 260, § 4C [emphasis added]. For such claims, the limitations period is the longer of thirty-five years from the acts alleged to have caused injury or seven years from the time the victim discovered or should have discovered emotional or psychological injury caused by that act. *See id*. The statute also reaffirms that these periods toll until the minor reaches eighteen years of age. *See id*. However, the Supreme Judicial Court has held that M.G.L. c. 260, § 4C "applies to *claims against perpetrators* of assault and battery by sexual abuse on a minor." *Koe v. Mercer*, 450 Mass. 97, 101, n. 8 (2007) (emphasis added). "Here, the case involved a tort claim against the defendant, who was not a perpetrator of the abuse; therefore, the general tort statute of limitations, G.L. c. 260, § 2A, is the applicable standard." *Id*.[36] Plaintiffs' claims against the BPD Defendants are all barred by M.G.L. c. 260, §§ 2A and 5B.

---

[35] *See*, *e.g., Otto*, 628 F. Supp. 3d at 380. In *Otto*, the District Court held that the three-year statute of limitations of M.G.L. c. 260, § 5B applied to an MCRA claim alleging sexual abuse against the abuser. *Id*. In so doing, the District Court noted that the plaintiff reached the age of majority thirty-two years before he filed suit, and failed to assert that he did not have knowledge of the wrongful acts sufficient to toll the limitations period for any additional time. *See id*. "For example, he has not asserted that he had repressed memories and therefore, that the accrual of his claim was delayed until he regained his memory of the alleged abuses." *Id*. The same is true here.

[36] It should be noted that *Koe* was decided at a time when the two statutes had the same three-year period. 450 Mass. 97, 101, n. 8. However, nothing about the increase in the limitations period changes the holding that M.G.L. c. 260, § 4C applies only to claims against the perpetrators of abuse. *See Malouf v. Benson*, 2018 WL 10155427, at *3–4 (D.

As such, *all* of the Plaintiffs' claims against *every* BPD Defendant must be dismissed for failure to file suit within the applicable statutory timeframe.

### III.    COUNTS ONE (1) THROUGH THREE (3): VIOLATIONS OF 42 U.S.C. § 1983

**a.**   All Three Counts Can Be Classified as Forms of Supervisory Liability

Count 1 of the Plaintiffs' Complaint alleges a failure to adopt or properly implement policies.   Count 2 alleges a failure to screen, train, or supervise.   Count 3 alleges general supervisory liability.   While the Plaintiffs have divided these into three separate counts, all three fall under the umbrella of supervisory liability pursuant to §1983.   The standard for supervisory liability is similar to that under *Monell*.   "Supervisory liability may not be established by the doctrine of respondeat superior in § 1983 cases." *Mullen v. Dep't of Corr. of Massachusetts*, 2022 WL 17253761, at *7 (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).   "Instead, after plausibly alleging a primary violation, the plaintiff must then 'forge an affirmative link between the abridgement and some action or inaction on the supervisor's part.'" *Id.* (quoting *Parker v. Landry*, 935 F.3d 9, 14 (1st Cir. 2019)).   "To show the 'affirmative link,' the plaintiff must allege 'behavior that constitutes supervisory encouragement, condonation or acquiescence, or gross negligence ... amounting to *deliberate indifference*.'" *Id.* (quoting *Parker*, 935 F.3d at 14-15) (emphasis added.).   "Deliberate indifference requires '(1) that the officials had knowledge of facts, from which (2) the official[s] can draw the inference (3) that a substantial risk of serious harm exists.'" *Id.* (quoting *Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016)); *see also*

---

Mass. Aug. 23, 2018) (analysis of tort claims arising from sexual assault after amendment of § 4C to increase limitations period and concluding only the claims asserted against the perpetrator and specifically alleging sexual assault fell under § 4C, applying § 2A to torts against a school district).

*Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (deliberate indifference "describes a state of mind more blameworthy than negligence" … and is often equated with "recklessness").

Here, the Plaintiffs have not alleged sufficient facts to satisfy this requirement of deliberate indifference.  General allegations that the BPD Defendants failed to implement policies, or failed to properly supervise other officers, are not sufficient.

> b.   Causation is an Essential Element of § 1983 Liability

Furthermore, to succeed in a § 1983 supervisory liability claim, a plaintiff must prove causation, which remains an "essential element." *Pesquera*, 819 F.3d at 515.  "This causation requirement 'contemplates proof that the supervisor's conduct led inexorably to the constitutional violation.'" *Id*. (quoting *Hegarty v. Somerset County,* 53 F.3d 1367, 1380 (1st Cir.1995)). "[A] plaintiff sometimes can identify a causal nexus by juxtaposing the supervisor's omissions alongside a known history of widespread abuse sufficient to alert a supervisor to ongoing violation … [b]ut such omissions, if paired only with "isolated instances" of a subordinate's constitutional violations, will not clear the causation bar." *Parker*, 935 F. 3d at 15 (internal quotations omitted).  No such allegations of "widespread abuse" are made here – the only allegations in the Complaint revolve around the investigation of Patrick Rose. Relying on the facts of the case at hand alone is not sufficient to support a municipal liability claim. See *Aaron v. City of Lowell*, 2022 WL 2953033, at *2 (D. Mass. Jul. 26, 2022) (Burroughs, J).  The Plaintiffs have failed to allege sufficient facts to prove that "the supervisor's conduct led inexorably to the constitutional violation."  As such, the §1983 violations alleged in Counts 1-3 must be dismissed.

> c.   Notice is also an Essential Element of § 1983 Liability

"In addition to deliberate indifference and causation, the plaintiff must allege facts showing that the supervisor was on notice of the subordinate's misconduct." *Id*.  (no deliberate indifference

where no inference of notice of prior misconduct); *see also Saldivar v. Racine*, 818 F.3d 14, 18-20 (1st Cir. 2016) (supervisory liability claim against a police chief was too weak to cross the plausibility threshold where subordinate officer's lengthy record of disciplinary violations, did not indicate "any propensity for violence or for any other sufficiently related conduct").

### d. Patrick Rose, Sr. was Not Acting Under Color of Law

"To state a claim under section 1983, a plaintiff must allege … that the conduct complained of has been committed under color of state law." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999) (citing *Martinez v. Colon,* 54 F.3d 980, 984 (1st Cir.1995)).  Here, the underlying identifiable constitutional violation is Rose's deprivation of Plaintiffs' right to bodily integrity. In Counts 1 through 3, the Plaintiffs claim that the Defendants' failure to adopt or implement customs and policies, and their failure to screen, train or supervise led to Rose's sexual abuse. In Count 4, Plaintiffs allege that the Defendants created the danger of Rose's physical, sexual and emotional abuse.

However, Rose was not acting under color of law when he sexually abused John and Jane Doe.  "No single, easily determinable factor will control whether a police officer was acting under color of state law. While certain factors will clearly be relevant—for example, a police officer's garb, an officer's duty status, the officer's use of a service revolver, and the location of the incident—these factors must not be assessed mechanically. *Barreto-Rivera*, at 45; See also *Parrilla–Burgos v. Hernandez–Rivera,* 108 F.3d 445, 448 (1st Cir.1997).  "Whether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties." *Martinez v. Colon,* 54 F.3d 980, 986 (1st Cir.1995) (shooting by officer of another during a personal dispute not acting under color of law, despite use of police weapon, on-shift status and uniform). "The key

determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law." *Id*. "[T]he challenged conduct [must be] related in some meaningful way either to the officer's governmental status or to the performance of his duties." *Id*. at 987.

The Plaintiffs do not allege that Rose abused them in the course of his duties as a police officer, or that his employment as a police officer enabled him to abuse them when he otherwise would have been unable to do so.  In fact, the Plaintiffs allege that the abuse pre-dates his employment with the Boston Police Department.  This case is analogous to *Martinez* – Rose's abuse of the Plaintiffs was unrelated to his position as a Boston Police Officer, and he was not acting under color of law while abusing his children.  Counts one through three should be dismissed against all BPD Defendants.

  e. Not Every "BPD Defendant" Was a Supervisor

As an additional matter, it should be noted that only two of the "BPD Defendants" are alleged to have been Patrick Rose's supervisor.  Further, some BPD Defendants are not alleged to have been a supervisor at all.  Specifically, Lt. Anne Marie Donohue and Sgt. Det. John McLean were members of the BPD Sexual Assault Unit, who investigated the allegations.[37]  Sgt. Det. Eileen Vanderwood was the Internal Affairs officer who conducted the initial investigation.[38]  Attorney LaDonna Hatton was an attorney working in the BPD Office of the Legal Advisor.[39]

To the extent that the Plaintiffs have failed to allege that the individual BPD Defendants were some form of supervisor of Rose, or failed to allege specific wrongful acts of any alleged supervisee, this presents another bar to the first three counts of the Complaint.  The claims against

---

[37] Plaintiffs' Complaint at ¶ 99.
[38] Plaintiffs'' Complaint at ¶153.
[39] Plaintiffs'' Complaint at ¶ 38.

St. Donohue, Det. Vanderwood, and Attorney Hatton must be dismissed for failure to allege sufficient facts to find that these defendants were supervisors for purposes of supervisory liability. The claims against the remaining BPD Defendants should be dismissed for those reasons noted above.

### COUNT FOUR (4): STATE CREATED DANGER UNDER 42 U.S.C. § 1983

In Count 4, the Plaintiffs assert a claim under the "state-created danger" doctrine. *See Rivera v. Rhode Island*, 402 F.3d 27, 35 (1st Cir. 2005). The general rule is that a state actor's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago City Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). There are two exceptions to this rule, neither of which is applicable here: (1) where the government took custody of the plaintiff; or (2) where the government affirmatively acted to increase the threat of third-party harm in a way that "shock[s] the conscious of the court." *Rivera*, 402 F.3d at 35; *see also Thomas v. Springfield Sch. Comm.*, 59 F. Supp. 3d 294, 307 (D. Mass. 2014) (failure to act to "prevent the repetition or escalation of behavior" not a violation). "[I]n a state creation of risk situation, where the ultimate harm is caused by a third party, 'courts must be careful to distinguish between conventional torts and constitutional violations, as well as between state inaction and action.'" *Rivera*, 402 F.3d at 36 (quoting *Soto v. Flores,* 103 F.3d 1056, 1063–64 (1st Cir. 1997)). "Merely alleging state actions which render the individual more vulnerable to harm, under a theory of state created danger, cannot be used as an end run around *DeShaney's* core holding." *Id.* at 38.

In *Rivera*, the plaintiff did not make out a viable state-created danger claim where a fifteen-year-old grand jury witness was shot and killed, after defendant officers failed to put her in witness

protection in the face of death threats.  There, the actions taken by the defendants were "essential to the investigation and performed appropriately."  In the more recent decision *Irish v. Fowler*, the First Circuit compared the facts to *Rivera*, and reached the opposite result, allowing the state-created danger claim to go to the jury.  979 F.3d 65, 75 (1st Cir. 2020).  In *Irish*, the claim that went to the jury was that the manner in which detectives investigating a kidnapping and rape **contacted the suspect** (despite having been warned of the suspect's multiple threats of violence), failing to post an officer at the victim's home, and the officers' own **acknowledgment that contacting the suspect would increase the risks** to the victim and her family.  The Court held that these affirmative actions were a state-created danger.  *See id*. at 68-71 (detailing underlying facts).

In the case at bar, Plaintiffs failed to plead facts to establish the elements of the state-created danger claim.  What Plaintiffs claim enhanced the danger to them was not an affirmative act, but a failure to act.  At its core, Plaintiffs' allegation is that the failure to terminate Rose from his employment with BPD enhanced the danger to Plaintiffs.  The actions that BPD officials did take, however, fall more in line with *Rivera* than *Irish*.  BPD officers investigated the 1995 allegations, arrested Rose almost immediately, filed for a criminal complaint against him, and sent the case to the DA. BPD had no control over the outcome.  BPD officers also filed IAD charges against Rose, which were sustained as a result of his refusal to cooperate, and the sustained finding was passed up the chain of command.  Count 4 is based not on what BPD did to create a danger, but what it didn't do.  This claim fails as a matter of law, and the claims against all of the named BPD Defendants must be dismissed.[40]

---

[40] The Defendants also refer to the arguments above regarding the fact that Lt. Donohue, Det. Vanderwood, and Attorney Hatton were not supervisors for purposes of the supervisory liability claims.

IV.     **COUNT 11 – CONSPIRACY PURUSANT TO 42 U.S.C. § 1985 – REQUIRES CLASS-BASED DISCRIMINATION**

Plaintiffs' § 1985 claim falls under subsection (3), with the heading "depriving persons of rights or privileges."  Section 1985(3) provides a remedy for a conspiracy to violate civil rights if the plaintiff establishes: (1) a conspiracy; (2) a conspiratorial purpose to deprive him of the equal protection of the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to his person or property, or a deprivation of a constitutionally protected right."  *Pisano v. Ambrosino*, 2016 WL 3093372, at *3 (D. Mass., June 1, 2016) (Gorton, J.).  "The second requirement of conspiratorial purpose requires some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id*. at 4 (quoting *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008)); *see also United Brotherhood of Carpenters & Joiners of America, Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 834 (1983).

Here, there are no allegations of racial or other class-based conspiracy.  On the contrary, in Count 11 Plaintiffs allege that the defendants deprived them of their right to bodily integrity and to be free from deprivation of liberty.  There is no class-based animus alleged.  "Section 1985(3) 'is not to be construed as a general federal tort law.'" *David v. Local 801, Danbury Fire Fighters Ass'n*, 899 F. Supp. 78, 80 (D. Conn. 1995) (quoting *Gerritsen v. de la Madrid Hurtado,* 819 F.2d 1511, 1518–19 (9th Cir. 1987)).  Count 11 should be dismissed against every BPD Defendant.

V.     **COUNT 16 – THE MASSACHUSETTS CIVIL RIGHTS ACT**

Count 16 alleges a violation of the Massachusetts Civil Rights Act.[41]   However, the Complaint fails to allege any specific facts which could support a claim of deprivation of rights

---

[41] Plaintiffs' Complaint at ¶ 479.

by "threats, intimidation or coercion." *See Doe v. Sex Offender Registry Bd.*, 94 Mass. App. Ct. 52, 64–65 (2018). "Such threats, intimidation, or coercion comprises the essential element of an MCRA violation." *Arroyo v. City of Boston*, 2021 WL 2338879, at *8 (D. Mass. 2021)). Absent an allegation of threats, intimidation or coercion independent of the constitutional violations committed by Rose, the MCRA claim fails as a matter of law. "A direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act." *Longval v. Commissioner of Correction*, 404 Mass. 325, 333 (1989). "Conduct, even unlawful conduct, however, lacks these qualities when all it does is take someone's rights away directly." *Id.* at 333-34. Count 16 must be dismissed against every BPD Defendant.

### VI.   THE INDIVIDUALLY NAMED BPD DEFENDANTS ARE IMMUNE FROM LIABILITY FOR THE NEGLIGENCE CLAIMS ALLEGED IN COUNTS 23, 26, 28, 36, and 43

Counts 23, 26, 28, 36, and 43 each allege state-law tort claims against the BPD Defendants. "Generally, employees of public employers are immune from suit for negligence while acting within the scope of their employment." *Suarez v. Mass. Bay. Transp. Auth.*, 2015 WL 5783581, at *2 (Mass. App. Div., Sept. 2, 2015). M.G.L. c. 258, the Massachusetts Tort Claims Act, section 2 states that "no such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." On the face of the Complaint, Plaintiff concedes that the BPD Defendants were employees of the City, acting in the scope of their employment. As there can be no allegation that the BPD Defendants were acting outside of the scope of their employment, they cannot be held liable for the alleged negligence. Counts 23, 26, 28, 36, and 43 must be dismissed against the individually named BPD Defendants.

Furthermore, even if the BPD Defendants were not immune from liability, the Plaintiffs have failed to make a timely presentment.  The Massachusetts Tort Claims Act, M.G.L. c. 258, § 4 states as follows:

> A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose

The Plaintiffs submitted a purported Presentment Letter to the City of Boston on October 6, 2021 – well past the permitted two years claimants are granted by statute.  The claims are barred, and Counts 23, 26, 28, 36, and 43 must be dismissed against each BPD Defendant.

## VII.    COUNT 31 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Count 31alleges that the BPD Defendants Intentionally Inflicted Emotional Distress because they "had knowledge or a reasonable basis to know that Rose abused, or posed a threat to Plaintiffs, yet failed to take action to protect Plaintiffs and permitted Rose to engage in inappropriate behavior without consequences."[42]

The elements of an intentional infliction of emotional distress claim are:

(1) that [defendant] intended, knew, or should have known that his conduct would cause emotional distress;
(2) that the conduct was extreme and outrageous;
(3) that the conduct caused emotional distress; and
(4) that the emotional distress was severe.

*Polay v. McMahon*, 468 Mass. 379, 385 (2014); *see also Johnson v. Town of Nantucket*, 550 F. Supp. 2d 179, 183 (D. Mass. 2008) (Gorton, J.).

---

[42] Plaintiffs' Complaint at ¶ 584.

"To show IIED, a plaintiff must assert that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community." *Keenan v. Wells Fargo Bank, N.A.*, 246 F. Supp. 3d 518, 527 (D. Mass. 2017) (Gorton, J.) (quoting *Payton v. Abbott Labs.*, 386 Mass. 540 (1982)). "The standard for what qualifies as such conduct has been set very high to 'avoid litigation in situations where only bad manners and mere hurt feelings are involved.'" *Diaz*, 229 F. Supp. 3d at 113 (quoting *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996)).

The Plaintiffs have not plead sufficient facts to prove that the BPD Defendants' conduct was extreme and outrageous.  The BPD Defendants investigated the allegations, arrested Patrick Rose, conducted an Internal Affairs investigation at which Rose's charges were sustained, suspended him, and transferred the case to the District Attorney for prosecution.

Even if they had not acted entirely appropriately – as they certainly did – it is settled law that where "police are merely carrying out their obligations as law enforcement officers, their conduct as a matter of law is not deemed extreme and outrageous." *Barbosa v. Conlon*, 962 F. Supp. 2d 316, 334 (D. Mass. 2013) (Dein, M.J.); s*ee also Sietins v. Joseph,* 238 F.Supp.2d 366, 379 (D. Mass. 2003) (Dein, M.J.) (citing *Sena v. Commonwealth,* 417 Mass. 250, 264 (1994)).  As such, the claims in Count 31 for Intentional Infliction of Emotional Distress should be dismissed against every BPD Defendant.

## VIII.   COUNT 41 - THERE IS NO PRIVATE RIGHT OF ACTION FOR M.G.L. 119 51A

Count 41 alleges violations of M.G.L. c. 119, § 51A, which requires reporting of sexual abuse by "mandated reporters" to the appropriate government authority – the DCF.  There are several issues with this argument.  First, "section 51A does not provide a private right of action against mandated reporters who fail to report an incident of child abuse." *Doe v. D'Agostino*, 367 F. Supp. 2d 157, 176 (D. Mass. 2005) (citing *Loffredo v. Ctr. for Addictive Behaviors,* 426 Mass.

541 (1998)).  Rather, § 51A(c) imposes criminal penalties for failure to report, including fines and penalties.  Moreover, while police officers are mandated reporters under the definition in M.G.L. c. 119, § 21, under § 51A(a), law enforcement is specifically articulated as an additional entity to whom mandated reporters may report.  M.G.L. c. 119, § 51A(s).  Plaintiff pleaded that the DCF and BPD carried on concurrent and overlapping investigations, and the 1995 DCF investigation was initiated two days prior to the investigations by BPD.  Count 41 should be dismissed against every BPD Defendant.

## Conclusion

For the reasons set forth herein, the BPD Defendants respectfully requests that this Honorable Court grant their motion, dismiss all counts of Plaintiffs' Complaint asserted against them (**Counts 1, 2, 3, 4, 11, 16, 23, 26, 28, 31, 36, 41, and 43**), and grant such other and further relief as it deems just and proper.

Dated:  August 18, 2023

Respectfully submitted,

**DEFENDANTS PAUL EVENS,**
**ROBERT DUNFORD,**
**MELBERT AHERN,**
**ANNE MARIE DOHERTY,**
**LADONNA HATTON,**
**EILEEN VANDERWOOD, and**
**MARIE DONOHUE,**

By their attorneys:
ADAM CEDERBAUM
Corporation Counsel

/s/ Adam D. Johnson
Adam D. Johnson (BBO#679142)
Senior Assistant Corporation Counsel
Edward F. Whitesell, Jr. (BBO#644331)
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA  02201
(617) 635-4097 (ADJ)
(617) 635-4045 (EFW)
adam.johnson@boston.gov
edward.whitesell@boston.gov

**Certificate of Service**

I, Adam Johnson, hereby certify that on August 18, 2023, a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and by first class mail to all non-registered participants.

/s/ Adam D. Johnson
Adam D. Johnson

**Certificate of Compliance with Local Rule 7.1(a)(2)**

I, Adam D. Johnson, hereby certify that, in accordance with Local Rule 7.1(a)(2), counsel for the BPD Defendants conferred with counsel for the Plaintiffs by telephone on August 18, 2023, and attempted in good faith to resolve or narrow the issues raised by this motion but was unable to do so.

/s/ Adam D. Johnson
Adam D. Johnson