UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No.: 1:23-CV-11294-FDS

JOHN DOE; JANE DOE; and JAMES DOE,

      Plaintiffs,

      v.

CITY OF BOSTON; PAUL EVNA, individually;
ROBERT DUNFORD, individually; MELBERT
AHEARN, individually; ANNE MARIE
DOHERTY, individually; LADONNA
HATTON, individually; EILEEN
VANDERWOOD, individually; JOHN
MCLEAN, individually; MARIE DONOHUE,
individually; DEFENDANT DOES 1-5,
individually; MASSACHUSETTS
DEPARTMENT OF CHILDREN AND
FAMILIES; DEFENDANT DOES 6-10,
individually; BOSTON POLICE
PATROLMAN'S ASSOCIATION; THOMAS
NEE, individually, DEFENDANT DOES 11-15,
individually; PATRICK ROSE, SR.; and
FRANCES ROSE,

      Defendants

## DEFENDANT BOSTON POLICE PATROLMAN'S ASSOCAITION AND THOMAS NEE'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFFS' COMPLAINT

This case involves tragic allegations of sexual assault against Plaintiffs by Defendant Patrick Rose, Sr. However, none of the allegations in the Complaint support claims against the Boston Police Patrolman's Association or its former president, Thomas Nee. In addition to numerous other Defendants, Plaintiffs are attempting to sue a union and its former president for the alleged sexual assaults of one of its former members. But Plaintiffs' claims fail against the union Defendants because of the three-year statute of limitations and because Plaintiffs do not allege facts to support the elements of their claims. They have not plead facts to support an inference that the Boston Police Patrolman's Association (BPPA) and its former President, Thomas Nee (BPPA Defendants), owed a legal duty or proximately caused any of their harms, acted outrageously, or acted with discriminatory animus to deprive them of their constitutional rights. This is especially so where Plaintiffs allege that the proper authorities were aware of the allegations against Rose, including the Boston Police Department, DCF and the District Attorney's Office. Based on Plaintiffs' allegations, the BPPA Defendants did not have a legal duty to Plaintiffs and did not cause their tragic sexual assaults.

Therefore, the Complaint should be dismissed because it fails to state claim upon which relief can be granted against the BPPA Defendants.

I.      **FACTUAL ALLEGATIONS IN THE COMPLAINT[1]**

        A.      **Identity of Non-BPPA Parties**

Defendant Patrick Rose was the perpetrator. He was a Boston police officer from 1994 until his retirement in 2018. Cmpl. ¶58. Rose was the President of the Boston Police Patrolman's Union from 2014 to 2018. Cmpl. ¶ 221. Defendant Frances Rose is the wife of Rose[2] and the mother of John Doe and Jane Doe. Cmpl. ¶ 61. John Doe was sexually abused by Rose between 1990 and

---

[1] BPPA denies all allegations of wrongdoing in the complaint and only assumes them as true for purposes of their motion to dismiss and this supporting memorandum.

[2] "Rose" refers to Patrick Rose although Frances Rose is also a Defendant.

1997, from when he was eight to fourteen years old. Cmpl. ¶ 76. Jane Doe was sexually abused by Rose between 1990 and 1999, from when she was five to fourteen years old. Cmpl. ¶ 77. Plaintiffs allege that Rose abused at least four other children through 2020. Cmpl. ¶ 78. James Doe is the spouse of Jane Doe. Cmpl. ¶ 14.

Plaintiffs also sue the City of Boston, the Boston Police Department (BPD), and a number of former officers. Cmpl. ¶¶ 15-16, 23, 28, 33, 42. 47, 51. In sum, Defendant Paul Evans was the Commissioner. Cmpl. ¶¶ 17-18. Defendant Robert Dunford was District Commander. Cmpl. ¶ 23. Defendant Melbert Ahearn was the Commander of the Internal Affairs Division (IAD). Cmpl. ¶ 28. Defendant Anne Marie Doherty was Superintendent-in-Chief of the Office of Internal Investigation. ¶ 33. Defendant Eileen Vanderwood was a Sergeant Detective of IAD. Cmpl. ¶ 42. Defendant LaDonna Hatton was a legal advisor for BPD and the City. Cmpl. ¶ 38. Defendants John McLean and Ann Marie Donahue were police officers at BPD. Cmpl. ¶¶ 46-53.

Plaintiffs have additionally sued the Massachusetts Department of Children and Families (DCF). Cmpl. ¶ 62. Cmpl. ¶ 62-63.

   **B.    Summary of the Allegations Against Non-BPPA Defendants**

Plaintiffs allege that DCF and BPD were first aware of sexual abuse perpetrated against an unnamed minor by Defendant Patrick Rose, Sr. in 1992. Cmpl. ¶ 85. Three years later, on November 8, 1995, twelve-year old John Doe reported to BPD that Rose had also sexually abused him. Cmpl. ¶ 2. This complaint caused an internal BPD investigation resulting in Rose being placed on administrative leave due to the discovery of corroborating evidence of John Doe's complaint. Cmpl. ¶ 99-120. Concurrent to BPD's investigation, DCF conducted witness interviews. Cmpl. ¶ 121. The DCF Investigation resulted in the Suffolk County District Attorney filing criminal charges against Rose. Cmpl. ¶¶ 104, 112, 123. The BPD Sexual Assault Unit arrested Rose for Indecent Assault and Battery on a Child under 14. Cmpl. ¶ 104. Rose was arraigned in

District Court on December 1, 1995. Cmpl. ¶¶ 133-134. The 1995 criminal complaint was ultimately dismissed. Cmpl. ¶ 147.

Around December 19, 1995, the Boston Police Department Bureau of Internal Investigations ("BII") filed an internal complaint against Rose ("IAD Complaint") based on the 1995 criminal complaint. Cmpl. ¶¶ 153-158. IAD sustained the allegation against Rose, however BPD, including its Bureau of Internal Investigations, did not sanction or discipline Rose.[3] Cmpl. ¶¶ 161, 162-205.

In 2020, after Rose retired, John Doe reported to BPD that Rose had sexually abused him and other child victims throughout the 1990s. Cmpl. ¶¶ 225-226. Rose was arrested and charged with 33 counts of sexual abuse of John Doe, Jane Doe, and four other child victims. Cmpl. ¶ 227. Rose pleaded guilty to twenty-one counts and was sentenced to prison. Cmpl. ¶ 230.

**C.    Allegations Against BPPA Defendants**

Plaintiffs allege that the police union, BPPA, is a municipal entity existing under the laws of the Commonwealth of Massachusetts.[4] Cmpl. ¶ 67. Defendant Nee was employed by the City of Boston as a police officer and served as President of the BPPA from 1997 to 2014. Cmpl. ¶¶ 68-70. Plaintiffs allege that BPPA and Nee were aware of child sex abuse allegations against Rose in 1995. Cmpl. ¶¶ 140-141. This is the only allegation against Nee.

BPPA attorney Thomas Drechsler represented Rose at his arraignment for the 1995 Criminal Complaint, and at the June 1996 hearing related to the IAD Complaint at which Rose asserted his 5th amendment privilege. Cmpl. ¶¶135, 158. Nearly a year after the resolution of the IAD process, BPPA Attorney Drechsler sent a letter to IAD on Rose's behalf. Cmpl. ¶ 206. This

---

[3] Plaintiffs contend that other parties, but notably not BPPA or its agents, failed to adequately respond to this sustained internal complaint. Cmpl. ¶¶161-205. Namely, that BPD and its departments, not BPPA or its agents, did not investigate or recommend any further disciplinary measures in light of this sustained complaint. Cmpl. ¶¶ 161-205.
[4] The BPPA is not a municipal entity but a police union.

letter, dated May 6, 1997, requested Rose be put back on full duty, stated BPPA's intention to grieve Rose's assignment to administrative duty, and stated BPPA's plan to similarly grieve any future discipline. Cmpl. ¶ 212. Attached to the letter BPPA included two affidavits: one from John Doe, and one from Frances Rose. Cmpl. ¶ 206. The affidavits denied any allegations of sexual misconduct by Rose. Cmpl. ¶ 206. Plaintiffs allege that BPPA never interviewed John Doe, Jane Doe, Frances Doe, or Rose, prior to the submission of these affidavits. Cmpl. ¶¶ 207-211.

Five months later, on October 20, 1997, BPPA attorney Alan Shapiro sent a letter to Commissioner Evans informing him that the BPPA was considering filing a grievance concerning Rose's continued restriction to administrative duty. Cmpl. ¶ 213. On October 31, 1997, BPPA filed a grievance contending that BPD had placed Rose on administrative duty without just cause. Cmpl. ¶ 214. On January 30, 1998, the City's Office of Labor Relations ("OLR") denied BPPA's grievance. Cmpl. ¶ 216. In or about March 1998, the OLR reported that Rose refused to authorize the release of his medical records, was ordered by the Court to attend counseling, had not provided documentation regarding fitness to return to duty, and was otherwise not cooperating. Cmpl. ¶ 217. On May 4, 1998, the OLR reported that it denied the grievance, and that BPD had appropriately placed Rose on administrative duties. Cmpl. ¶ 218. Despite the OLR's denial of BPPA's grievance, Commissioner Evans independently reinstated Rose to full duty on May 4, 1998. Cmpl. ¶ 219.

In 2014, sixteen years after his return to full duty, Rose was elected President of BPPA. Cmpl. ¶ 220. Rose held this position for four years, until his retirement in 2018. Cmpl. ¶¶ 221-222.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009), quoting *Twombly*, 550 U.S. at 556. To determine if a complaint meets that standard, a court must assume all well-pleaded facts as true and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008). Here, Plaintiffs' Complaint fails to meet the pleading requirements because it does not set forth facts sufficient to raise an inference of the material elements necessary to sustain recovery under their legal theories. *Id.* Moreover, as an independent ground for dismissal under Rule 12(b)(6), the applicable statutes of limitations have expired. See *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008). Dismissal is therefore warranted.

**III.    ARGUMENT**

> **A.    All Counts Brought Against BPPA and Nee are Barred by Statute of Limitations and Cannot be Tolled.**

Plaintiffs' claims fail because they were brought long after the three-year statute of limitations had expired. M.G.L c. 260, §§ 2A and 5B require actions in tort, and those brought under state civil rights statutes, to be brought within 3 years of their accrual. Plaintiffs' claims for violations of their civil rights are governed by the statute of limitations set forth in § 2A, for the § 1985 claim, and § 5B, for the MCRA and civil conspiracy claims. *See Nieves v. McSweeney*, 241 F. 3d 46, 51 (1st Cir. 2001) (finding that a federal civil rights cause of action's statute of limitations analysis must "borrow the forum state's limitation period governing personal injury," and applying § 2A). § 2A also governs their tort claims. Both § 2A and § 5B actions must be brought within three years of the date on which the cause of action accrued. While a statute of limitation is

governed by state law, determining when a cause of actions accrues for purposes of Plaintiffs' civil rights claim "is a matter of federal law." *Nieves*, 241 F. 3d  at 52. The accrual period for a federal civil rights case begins "when the plaintiff knows or has reason to know of the injury on which the action is based." *Govan v. Trustees of Boston University*, 66 F.Supp. 2d 74, 80 (D. Mass. 1999). The knowledge required is "knowledge that an injury has occurred." *Tedeschi v. Reardon*, 5 F.Supp. 2d 40, 44 (D. Mass. 1998). That knowledge is possessed by the plaintiff "at the time of the act itself and not at the point that the harmful consequences are felt." *Morán Vega v. Cruz Burgos*, 537 F.3d 14, 20 (1st. Cir. 2008). The MCRA accrual analysis is the same.  See *Arsenault v. Otto*, 628 F. Supp. 3d 377, 380 (D. Mass. 2022).

Here, Plaintiffs' claims have been brought twenty-eight years after they accrued, and they make no claim that any conduct against BPPA or Nee occurred within the statute of limitations. Instead, they merely allege that BPPA was aware of the allegations of sexual abuse in 1995, Cmpl. ¶ 141, and that BPPA attached signed affidavits to a reinstatement request letter to IAD in 1997. Cmpl. ¶¶ 206-212. Plaintiffs have not plead that they were unaware of this injury until a period within the statute of limitations, and, therefore, any alleged violations of Plaintiffs' civil rights by BPPA or Nee were known to Plaintiffs at their occurrence, either in 1995, or in 1997. As such, their claims were only cognizable through May of 2000, at the latest. As a result, Plaintiffs' claims fail against BPPA and Nee.

    **B.**    **Principles of Statutory Tolling Do Not Save Plaintiffs' Claims.**

Plaintiff's claims against BPPA and Nee cannot be saved by the tolling provisions of M.G.L. c. 260, § 7. The statute provides that if "the person entitled [to bring the cause of action] is a minor. . . when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed." John Doe and Jane Doe reached the age of majority in 2001 and 2003, respectively, triggering the three-year statutes of limitations. §§ 2A

and 5B. The previously-minor Plaintiffs were therefore required to bring all of these claims by 2004, for John Doe, or 2006, for Jane Doe. Because they did not, their claims are barred by the statute of limitations.

**C.**    **Statute of Limitations Cannot be Extended for Claims Against BPPA.**

No other statutory tolling mechanism permits Plaintiffs' suit against BPPA. Chapter 260, § 4C can extend the statute of limitations for actions in tort alleging sexual abuse of minors to the longer of thirty-five years from the facts alleged, or seven years from the time the victim discovered or reasonably should have discovered an emotional or psychological injury was caused by the act. If the conduct occurred when Plaintiffs were minors, the statute of limitations is automatically tolled until they turn eighteen. However, regardless of the age of the plaintiff, this section only applies to actions brought directly against the abuser. See *Koe v. Mercer*, 450 Mass. 97, 101 n. 8 (2007) ("General Laws c. 260, § 4C, applies to claims against perpetrators of assault and battery by sexual abuse on a minor. Here, the case involved a tort claim against the defendant, who was not a perpetrator of the abuse; therefore, the general tort statute of limitations, G.L. c. 260, 2A, is the applicable standard.)

Here, Plaintiffs' allege that the perpetrator of their abuse was Rose. BPPA was merely the entity who represented Rose in his capacity as a police officer for the City of Boston. Thus, tolling does not apply to BPPA or Nee. See *Koe*, 450 Mass. at 101 n. 8.

In *Koe v. Mercer*, the Supreme Judicial Court acknowledged that tolling may be appropriate where a perpetrator of abuse seeks to "cloak" or disguise their abuse to impede the plaintiff's ability to recognize that they have been harmed. 450 Mass. at 104. But where, as here, the defendant is not the abuser, and there is no evidence that the defendant sought to conceal in any way the fact of their abuse, "cloaking" has not occurred, and the traditional statutes of limitations apply. *Id*. at 104-05. In *Koe*, a church elder, asked the family of the victim to "keep quiet until they

had meet with" the abuser." *Id*. at 105. But the SJC found that asking the family to remain quiet for a brief period did not operate to hinder the plaintiff's ability to connect the abuse with psychological symptoms and thus tolling was inapplicable. *Id*. Here, BPPA was only allegedly involved once BPD, DCF and the Suffolk County District Attorney were aware of the allegations of abuse. Thus, as in *Koe*, the three-year statute of limitations of § 2A applies because Plaintiffs do not allege that BPPA or Nee were perpetrators of abuse or concealed any abuse or harm. As a result, all claims against BPPA and Nee should be dismissed.

> **D.**   **The Complaint Fails to State a Claim Against Nee Because There are No Factual Allegations of Wrongdoing Against Him.**

Plaintiffs' Complaint does not contain any factual allegations against Nee suggesting how he could be liable to Plaintiffs. The only paragraphs which reference Nee are conclusory statements that his "actions and omissions" were "conducted under color of laws of the Commonwealth" and "in the course and scope of his employment with the City." Cmpl. ¶ 71. The factual allegations against Nee are that he was union president from 1997 to 2014, and that he was aware of child sex abuse allegations against Rose in 1995. Cmpl. ¶¶ 70, 141. These allegations do not create a legal duty by Nee or causation of any harm by him, especially where Plaintiffs allege that DCF, BPD and the District Attorney's Office were aware of allegations against Rose in 1995. Cmpl. ¶¶ 92-160. As a result, Plaintiffs' claims against Nee fail because they do not support any conceivable cause of action against him.

> **E.**   **Count 13 - Plaintiffs' Fail to Allege Facts to State a Claim Against BBPA Defendants Under 42 U.S.C. § 1985.**

Plaintiffs' claims under §1985 fail because they do not allege facts to support an inference that they were discriminated against as a result of class-, or race-based animus and, even if they were, they have not alleged facts to support that the BPPA Defendants had engaged in a conspiracy to deprive them of their rights.

> ### i. *Plaintiffs have not plead any class-based animus sufficient to support a claim under Subsection 2 or 3 of Section 1985.*

Plaintiffs' Section 1985 claim fails because both subsections 2 and 3 require race- or class-based animus. See *Kupperstein v. Baker*, 2021 WL 3079887, at *12 (D. Mass. 2021), citing *Kush v. Rutledge,* 460 U.S. 719, 725-26 (1983); *Perkins v. City of Attleboro*, 969 F. Supp. 2d 158, 178 (D. Mass. 2013), quoting *Aulson v. Blanchard*, 83 F. 3d 1, 3 (1st Cir. 1996). If alleging class-based animus, the "class . . . must be identifiable by reference to something more than. . . (the members') desire to engage in conduct that [the defendant] disfavors." *Perkins*, 969 F. Supp. 2d at 179. Here, Plaintiffs have not alleged that they were discriminated against because of membership in any protected class. *Id*. As a result, their claims cannot proceed because they fail to assert factual allegations sufficient to support a material element of their § 1985 claim. *See Gagliardi*, 513 F.3d at 305.

> ### ii. *Plaintiffs' claims fail because they cannot show that BPPA Defendants or agents engaged in a conspiracy to deprive them of their rights as required under subsection 2 and 3.*

Plaintiffs' Section 1985 claim also fails because they have not alleged facts that the BPPA Defendants engaged in a conspiracy. Conspiracy allegations under Section 1985 must "be supported by material facts, not merely conclusory statements." *Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir. 1980). Section 1985 (2) prohibits conspiracies to disrupt the course of justice in state courts. *Kush*, 460 U.S. at 725. The text of the law prohibits "two or more person from conspiring to deter, by force, intimidation or threat, any party or witness in any court from attending such court or from freely, fully, and truthfully testifying to any pending matter, or to injure such party in their person or property as a result of their having attended or testified, or to influence the verdict in any such court, or to injure a juror." Subsection 2 further prohibits two or more persons from conspiring for the purpose of "impeding … the due course of justice in any

State…. with intent to deny any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the rights of any person, or class or persons, to the equal protection of the laws." This subsection was intended to protect a party from direct violations of their right to attend or testify in federal court. See *Arroyo-Torres v Ponce Federal Bank, F.B.S.*, 918 F.2d 276, 279 (1st Cir. 1990).

Subsection 3 of Section 1985 prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protections of the law or of equal privileges and immunities under the laws[.]" To state a claim under this subsection, plaintiffs must allege: "the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws . . . (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." *Perkins*, 969 F. Sup. 2d at 178, quoting *Aulson*, 83 F. 3d at 3.

Here, Plaintiffs do not allege facts sufficient to support an inference that BPPA Defendants engaged in a conspiracy or that any conspiracy even occurred. See *Iqbal*, 556 U.S. at 678. Indeed, even viewing the facts in the light most favorable to their claim, Plaintiffs have not identified material facts to establish a conspiracy, or how the BPPA Defendants acted in concert to deprive them of any rights. See *Slotnick,* 632 F.2d at 164; see also *Kupperstein*, 2021 WL 3079887, at *13 (dismissing complaint under 1985(2) for failure to state a claim where plaintiffs did not allege with specificity any facts that would support a finding of a conspiracy); *Powell v. Grady*, Civ. No. 18-30146-MGM, 2020 WL 7700118, at *5 (2020) (similar). Plainly, absent such allegations, the claim against BPPA Defendants cannot survive a motion to dismiss.

The factual allegations in the Complaint are merely that on May 6, 1997, Attorney Drechsler, counsel for Rose and BPPA, sent a letter to IAD attaching an affidavit from Plaintiff

John Doe and an affidavit from Defendant Frances Rose denying allegations of sexual misconduct by Rose. Cmpl. ¶ 206. Plaintiffs' also allege that the BPPA Defendants never interviewed John Doe, Jane Doe or Francis Rose. Cmpl. ¶¶ 207-211. But such factual allegations do not support Plaintiffs' conclusory allegations that BPPA Defendants "conspired to deter Plaintiffs by force, intimidation, or threat from testifying freely, fully, and truthfully about Rose's sexual abuse," as conclusory Cmpl. ¶ 465. Therefore, dismissal of Plaintiffs' Section 1985 claim is warranted. See *Iqbal*, 556 U.S. at 678 (allegations must support plausible claim to relief, not "merely consistency" with liability).

**F.      Count 18 - Plaintiffs' Massachusetts Civil Rights Act Claim under M. G. L. c. 12, § 11H, 11I Fails Because Plaintiffs Have Not Alleged Facts Sufficient to Support an Inference that BPPA Threatened, Intimidated, or Coerced them.**

Plaintiffs' state civil rights claim fails because they have not alleged facts that they were subject to a violation of their civil rights by threats, intimidation, or force. To plead a claim under the Massachusetts Civil Rights Act (MCRA), a plaintiff must allege facts establishing an interference, or attempted interference, with the exercise or enjoyment of rights secured by the Constitution or the laws of the United States, or of Massachusetts, by means of threats, intimidation or coercion. *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 594-95 (2001).[5]

Here, Plaintiffs do not allege facts to support their conclusory allegations that BPPA Defendants used threats, intimidation, and coercion to interfere with their fundamental rights. Cmpl. ¶¶ 487-488. Rather, they merely allege that a BPPA attorney mailed a letter and affidavits to BPD IAD, although the BPPA Defendants never interviewed the affiants. Cmpl. ¶¶ 206-211.

---

[5] Whether conduct amounts to "threats, intimidation, or coercion," is assessed under the "reasonable person" standard. *See Planned Parenthood League of Massachusetts, Inc. v. Blake*, 417 Mass. 467, 474-75 (1994). A "threat" is "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm;" "intimidation" means "putting in fear for the purpose of compelling or deterring conduct;" and "coercion" means "the application to another of such physical or moral force as to constrain" them to do something against their will. *Salmon v. Lang*, 57 F.4th 296, 316-17 n. 16 (1st Cir. 2022) (internal quotation omitted).

Accordingly, Plaintiffs' do not allege facts against BPPA Defendants sufficient to support an MCRA claim against them.

**G.     Count 25 - Plaintiffs' Claim for Negligence Fails Because They Have Not Established That They Are Owed a Duty by BPPA Defendants.**

Plaintiffs' negligence claim fails because they have not alleged facts to establish that BPPA Defendants owed a legal duty or caused the assaults. In order to plead a negligence claim, a plaintiff must allege facts to show (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury. See *Jorgensen v. Massachusetts Port Authority*, 905 F.2d 515, 522 (1st Cir. 1990). As a matter of law, BPPA's duty was to Rose (as a union member) and not to Plaintiffs. Where there is no such duty to a plaintiff, the court may consider whether a common law duty of care exists between the parties under a special relationship theory. *Coughlin v. Titus & Bean Graphics, Inc*., 54 Mass. App. Ct. 633, 639 (2002). A special relationship can be found if "the defendant reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate the harm to the plaintiff from the failure to do so." *Id*.

Here, based on the allegations in the Complaint, BPPA Defendants did not have a legal duty or cause Plaintiffs' harm. Plaintiffs appear to ground this claim on allegations that BPPA Defendants had knowledge of allegations against Rose in 1995, but so did the legal authorities: DCF, BPD and the District Attorney's Office. Cmpl. ¶¶ 92-160. Moreover, Plaintiffs cannot establish a special relationship that would be sufficient to show that BPPA owe them a duty. It is not reasonable for BPPA to foresee that they "would be expected to take any affirmative action to protect" Plaintiffs, who are the family members of a union member whose off-duty actions caused harm. *See Coughlin,* 54 Mass. App. Ct. at 639.

The case of *Ledet v. Mills Van Lines, Co.* illustrates the error of that theory. The Appeals Court refused to find a duty under a special relationship theory in spite of violent conduct traceable to that defendant's failure to act. There, the defendant-employer was engaged in the business of providing residential moving services. 97 Mass. App. Ct. at 668. In 2011, the defendant hired the tortfeasor, without performing the company-mandated background check. *Id*. Had they performed this preliminary step they would have identified the tortfeasor's extensive criminal record, which included violent crimes, and motor vehicle related convictions. *Id*. at 669. Because they did not conduct this background check, the tortfeasor was hired. *Id*. Later that year, he was on an assignment and had to stay overnight in the town where the business's client lived. *Id*. at 670. After work, he drove off in one of the company vans, found a woman walking alone on the street, and violently assaulted her in the woods. *Id*. at 670-71. Despite the employer's knowing violation of their own policies in failing to conduct a background check, the Court did not find a duty to support the plaintiff's claim of negligence against the employer. *Id*. at 672. The Court reasoned that because the tortfeasor was off duty, not engaged in work for which he was employed, and harmed a person "with whom [defendants] held no commercial or other relationship," the injury was not a foreseeable result of hiring the tortfeasor. *Id*.

The same is true here. Even though Plaintiffs may contend that they were owed a duty by BPPA, there is no law to support any such duty under such attenuated circumstances as they allege - where Rose's harmful actions occurred separate and apart from his conduct as a police officer and his role as a BPPA member. Therefore, Plaintiffs do no allege facts to support a duty or causation and their negligence count fails to state a claim against BPPA Defendants under Rule 12(b)(6).

**H.**     **Count 33 - Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress Because They Have Not Alleged Facts Which Amount to Extreme or Outrageous Conduct.**

Plaintiffs' claims fail because they have not plead facts consistent with any affirmative act by BPPA which would be intolerable in a civilized society. Rather they have alleged that the BPPA supported a union member. "The standard for making a claim [for] intentional infliction of emotional distress is very high." *Doyle v. Hasbro, Inc*. 103 F.3d 186, 195 (1st Cir 1996), citing *Agis v. Howard Johnson Co*., 371 Mass. 140, 144-45 (1976). In order to succeed on their claim, a plaintiff must show: (1) the defendant either intended to inflict or knew or should have known that their actions would inflict, emotional distress; (2) that the defendant's conduct was extreme and outrageous to the extent that it was utterly intolerable in a civilized society; (3) that the defendant's conduct caused distress; and (4) that the plaintiff sustained severe emotional distress. *Mercurio v. Town of Sherborn*, 287 F. Supp. 3d 109, 125 (D. Mass. 2017). "Extreme and outrageous" conduct is that which "goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *Polay v. McMahon*, 468 Mass. 379, 385 (2014) (alterations omitted). Because of this high bar, liability requires more than "mere insults indignities, threats, annoyances, petty oppressions, or other trivialities." *Tetrault v. Mahoney, Hawkes & Goldings,* 425 Mass. 456, 466 (1997). Even conduct which is characterized by "malice" is generally insufficient to support liability. *Id*.

Here, Plaintiffs allege that BPPA Defendants had knowledge of allegations that Rose abused, or posed a threat to, Plaintiffs and still failed to act to protect Plaintiffs. Cmpl. ¶ 592. But this would not be extreme or outrageous where the BPPA Defendants are a union and union officials charged with representing its union member Rose, and the proper authorities – DCF, BPD and the District Attorney's Office, had knowledge of the allegations of abuse starting in 1995.

This claim also fails because the only conduct to which they point is BPPA Defendants' "fail[ure] to take action to protect Plaintiffs." Cmpl. ¶ 592. However, absent a special relationship, there is no legal duty to protect. Moreover, accepting Plaintiffs' assertion that BPPA is a municipal entity, it is well-established that there can be no liability where plaintiffs allege a *failure* to act, rather than affirmative conduct that is objectively egregious. See *Cormier v. City of Lynn*, 479 Mass. 35, 40 (2018) (statutory law "eliminates government liability for a public employer's act or failure to act to prevent harm from the wrongful conduct of a third party unless the condition or situation was 'originally caused' by the public employer."). Rather, "this passive conduct alleged falls short of the high bar set for stating intentional infliction of emotional distress claims." *T.K.v. Town of Barnstable*, No. 17-cv-11781-DJC, 2018 WL 3748166, at *7 (D. Mass. 2018) (citing *Morgan v. Town of Lexington*, 138 F.Supp. 3d 82, 94 (D. Mass. 2015)) (internal quotation omitted). In *Doe v. Bradshaw*, the District of Massachusetts dismissed an action for intentional infliction of emotional distress based on a school's failure to investigate allegations of inappropriate sexual conduct with plaintiff because the failure to act cannot form the basis of an intentional tort. No. 11–11593–DPW, 2013 WL 5236110, at *13 (D. Mass. 2013). The instant case is similar to *Bradshaw* and fails for the same reason – inaction cannot be the basis for liability. For all these reasons, Plaintiffs' claims should be dismissed.

I. **Count 38 - Plaintiffs' Claim for Negligent Infliction of Emotional Distress Fails Because They Cannot Show Causation, Nor Have They Alleged Facts Sufficient to Support an Inference that They Have Suffered Physical Harm as a Result of BPPA Defendant's Negligent Acts.**

This claim fails because, as addressed above, Plaintiffs cannot establish that they were owed a legal duty sufficient to support their claim for negligence, and further because they have not alleged facts to support either the causation or physical harm requirements of negligent infliction of emotional distress. To prevail on a claim of negligent infliction of emotional distress, a plaintiff

must show (1) negligence, (2) emotional distress, (3) causation, (4) physical harm manifested by objective symptomatology, and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case. *Sullivan v. Boston Gas Company*, 414 Mass. 129, 132 (1993).

This claim fails for two reasons. The first, as stated in part g *supra*, Plaintiffs cannot establish that BPPA Defendants acted negligently where they cannot plausibly assert BPPA owed them a duty. Second, as explained below, Plaintiffs, fail to satisfy the causation prong of this tort's material elements. *Sullivan*, 414 Mass. at 132. That is, Plaintiffs do not allege facts to support an inference that BPPA Defendants caused the abuse.

Even assuming Plaintiffs could succeed in showing that BPPA owed them a duty which was breached (a proposition rejected above), their claim fails because they cannot establish causation necessary to support the claim. The factual allegations establish that BPPA Defendants did not cause Rose's abuse. Moreover, "[i]ntervening causes will insulate a tortfeasor from liability when they are not foreseeable consequences of a party's original negligence." *Taylor v. Swartout*, 445 F.Supp 2d 98, 105 (D, Mass. 2006). In determining whether an intervening cause is sufficient to negate causation, courts must "consider, *inter alia* whether an intervening cause" operated independently of any situation created by the actor's negligence; or was not a normal result of such a situation; or arose from an act of a third party. *Id*. at 105-06.

Here, Plaintiffs allege years of abuse negligently caused by BPPA failing to act to protect Plaintiffs. Cmpl. ¶ 618. However, the harm suffered by Plaintiffs was a consequence of the intentional acts of a third party, Rose. And those acts were effectuated completely separate and apart from any situation or circumstance caused by BPPA Defendants. *Id*. at 106. As a result, Plaintiffs' allegations do not support an inference that BPPA Defendants proximately caused the harms alleged, and they therefore cannot prove the required element of causation. *Gagliardi*, 513 F.3d at 305.  This claim therefore fails to state a claim and should be dismissed.

**J.**     **Count 42 - Plaintiffs' Claim for Civil Conspiracy Fails Because They Have Not Plead Facts Consistent with A Conspiracy.**

Plaintiffs' final catch-all cause of action against BPPA Defendants fails for nearly the same reasons their prior conspiracy claims fail – because they have not plead facts sufficient to support a conspiracy. Courts have delineated two types of civil conspiracy, neither of which is supported by Plaintiffs' factual allegations. The first variant is the "very limited cause of action" for coercive civil conspiracy. *See Aetna Casualty Surety Company v. P& B Autobody*, 43 F. 3d 1546, 1563-64 (1st Cir. 1994). For this cause of action, plaintiffs must assert that defendants had a "peculiar power of coercion" over them when working in concert, that they would not have had if they acted independently. *Fleming v. Dane*, 304 Mass. 46, 50 (1939)*; see Kurker v. Hill*, 44 Mass. App. Ct. 184, 188 (1998). This variant is typically found in situations where employers and employees engage in "concerted refusals to deal." *See Mass. Laborers' Health & Welfare Fund v. Phillip Morris*, 62 F. Supp. 2d 236, 244 (D. Mass 1999); *see also Tennaro v. Ryder System, Inc.*, 832 F. Supp 494, 499 (D. Mass. 1993).

The second variant of civil conspiracy requires there to be some kind of "design or agreement," although not necessarily express, between two or more persons to do a wrongful act, and proof of some tortious act in furtherance of that agreement. Restatement (Second) of Torts § 876 Cmt. (b). This "concerted action" form of liability may be imposed on one individual for the tort of another, to which the defendant provided "'substantial assistance' with the knowledge that such assistance is contributing to the tortious plan." *Kurker,* 44 Mass. App. Ct at 188-89 (finding no liability where manufacturer had no knowledge of retailers' sale of tobacco to minors).

Here, Plaintiffs do not allege facts to support either theory. First, under the theory that Defendants are liable for some "coercive" conspiracy, Plaintiffs have not alleged any facts that BPPA Defendants had any "peculiar power of coercion" when acting in concert with anyone else,

that contributed to any of their harms. In *Aetna*, plaintiffs were able to survive a motion to dismiss because they alleged that defendants "were collectively able to negate the safeguards that would have prevented any one group of defendants, acting alone, from accomplishing" the fraud at issue in that case. 43 F. 3d at 1564. Plaintiffs here have alleged nothing akin to that level of collective action by BPPA Defendants, possible only through a conspiracy, that would support their claim.

And second, under the "concerted action" theory, Plaintiffs have not alleged facts supporting that BPPA Defendants or agents had an express or implied agreement to knowingly provide "substantial assistance" to another in executing their tortious plan which would support liability under the second theory. *Kurker,* 44 Mass. App. Ct at 188-89. Where the allegations against BPPA Defendants fails to demonstrate "substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan," there cannot be liability under this second type of civil conspiracy. See *Kurker*, 44 Mass. App. Ct. at 189. Therefore, Plaintiffs' claims fail and should be dismissed.

**K.**   **Count 43 - Plaintiff James Doe's Claim for Loss of Consortium Fails Because it is Derivative of Plaintiff Jane Doe's Other Claims, and Because Loss of Consortium Claims May Not be Based on Civil Rights Violations.**

Plaintiff James Doe's loss of consortium claim fails because it is both derivative and cannot be based on a violation of civil rights. Loss of consortium allows a spouse to recover based on the other spouse's personal injury caused by a third person's negligence of. *Diaz v. Eli Lilly, Co.*, 364 Mass. 153, 167-68 (1973). "[S]pousal consortium claims are fundamentally derivative of the first spouse's personal injury action." *Roy v. Jasper Corp.*, 666 F.2d 714, 718 (1st Cir. 1981). Therefore, where, as here, all of Jane Doe's tort claims are barred by the applicable statutes of limitations, James Doe's loss of consortium claim must also fail as a derivative claim. See *Short v. Town of Burlington*, 11 Mass. App. Ct. 909, 909 (1981) (spouse's loss of consortium claim failed because

"it is entirely derivative and has no existence apart from a viable claim of the other spouse founded on personal injury").

Furthermore, James Doe is unable to bring a loss consortium claim based on the state and federal civil rights violations alleged by Jane Doe. Controlling precedent provides that "neither federal or Massachusetts civil rights claims may serve as the basis for loss of consortium claims." *Columbus v. Biggio*, 76 F. Supp. 2d 43, 59 (D. Mass 1999), and cases cited. These holdings defeat Plaintiff James Doe's claims for loss of consortium based on the § 1985 and MCRA violations that Jane Doe puts forth in the complaint.

WHEREFORE, for all the reasons stated above as well as any stated orally in Court, the Defendants BPPA and Thomas Nee respectfully request that this Honorable Court dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,
The Defendants,
Boston Police Patrolman's Association and Thomas Nee,
By their attorneys,

/s/ Thomas R. Donohue
Leonard H. Kesten, BBO# 542042
Thomas R. Donohue, BBO# 643483
BRODY, HARDOON, PERKINS & KESTEN, LLP
265 Franklin Street, 12th Floor
Boston, MA 02110
(617) 880-7100
lkesten@bhpklaw.com
tdonohue@bhpklaw.com

DATED: September 8, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing(NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

*/s/ Thomas R. Donohue*
Thomas R. Donohue, BBO# 643483

DATED: September 9, 2023