IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE; JANE DOE; and JAMES DOE,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF BOSTON; PAUL EVANS, individually;<br>ROBERT DUNFORD, individually; MELBERT<br>AHEARN, individually; ANNE MARIE DOHERTY,<br>individually; LADONNA HATTON, individually;<br>EILEEN VANDERWOOD, individually; JOHN<br>MCLEAN, individually; MARIE DONAHUE,<br>individually; BPD DEFENDANT DOES 1-5,<br>individually; RUDOLPH ADAMS, individually;<br>RAYMOND SMITH, individually; SHERYL<br>HILLIARD, individually; GAIL SULLIVAN,<br>individually; DCF DEFENDANT DOES 1-5,<br>individually; BOSTON POLICE PATROLMAN'S<br>ASSOCIATION; THOMAS NEE, individually;<br>BPPA DEFENDANT DOES 1-5, individually;<br>PATRICK ROSE, SR.; and FRANCES ROSE,<br><br>    Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br><br>C.A. No. 1:23-CV-11294 |

## AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1.    In 2022, former Boston police officer Patrick Rose, Sr. pled guilty to 21 counts of child rape and sexual assault against John Doe and Jane Doe, among others.

2.    In 1995, twelve-year-old John Doe reported to the Boston Police Department ("BPD") that Rose had sexually abused him. Rose was arrested for Indecent Assault and Battery on a Child and placed on Administrative Leave. A Restraining Order was issued, and the Suffolk County District Attorney's Office filed a Criminal Complaint against Rose. The criminal case against Rose was later dismissed, purportedly because the victim was unwilling to testify.

3.    The BPD Internal Affairs Division ("IAD") made a Complaint against Rose concerning the sexual assault charges and concluded that evidence existed and sustained the IAD Complaint. After its investigation, the Department of Children and Families ("DCF") also concluded that Rose had sexually abused the minor.

4.      Despite the sustained IAD Complaint, Boston Police Commissioner Paul Evans and the BPD did not discipline or terminate Rose.  Instead, after receiving pressure from the police patrolman's union and union attorney, Thomas Drechsler, Commissioner Evans chose to reinstate Rose to full duty.

5.      For the next 23 years, Rose worked as a police officer rising through the ranks of the BPD and the union, all the while continuing to sexually abuse John Doe.  Due to the complete failure of the BPD and DCF Defendants and their employees, Rose was not terminated from the police department, and avoided criminal charges, incarceration, restraining orders, therapy, and child custody restrictions. Because the BPD and DCF Defendants did nothing, Rose was emboldened and escalated his abuse against John Doe and Jane Doe and extended the abuse to additional child victims.

6.      Recognizing the complete and inexplicable failure to remove Rose from the police force, Boston Mayor Wu said, "Patrick Rose should have been terminated immediately after the IAD investigation concluded…. The public call for [records]… has been driven by a need to understand how the Department and the City could possibly have allowed Rose to keep his badge and his gun, even after learning he had sexually assaulted a child."

7.      The alleged crimes by Rose should have been investigated, not covered up.  Even after the release of Rose's IAD file, no document explains why Commissioner Evans and the BPD took no action to further investigate or discipline Rose after IAD sustained the Complaint.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over the federal claims concerning violations of the Fourteenth Amendments and 42 U.S.C. §§ 1983 and 1985.

9.      This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over the related state claims arising under Massachusetts law.

10.     Venue is proper in this judicial district under 28 U.S.C. § 1391, because the events giving rise to this civil action occurred in this judicial district.

11.     This Court has personal jurisdiction over Defendants, City of Boston, a municipality within the Commonwealth of Massachusetts; the Boston Police Patrolman's Association, an organization within the Commonwealth of Massachusetts; the BPD Defendants because they reside and/or are employed in the Commonwealth of Massachusetts; the BPPA Defendants because they reside and/or are employed in the Commonwealth of Massachusetts; and the DCF Defendants because they reside and/or are employed in the Commonwealth of Massachusetts.

## PARTIES

### Plaintiffs

12.     Plaintiff, John Doe (fictitiously named) ("John Doe") is an adult male who was a minor at the time of the abuse alleged herein who resides in Suffolk County, Massachusetts.

13.     Plaintiff, Jane Doe (fictitiously named) ("Jane Doe") is an adult female who was a minor at the time of the abuse alleged herein who resides in Suffolk County, Massachusetts.

14.     Plaintiff, James Doe (fictitiously named) ("James Doe") is the spouse of Jane Doe who resides in Suffolk County, Massachusetts.

### BPD Defendants

15.     Defendant, City of Boston ("City"), is a municipal entity located in Suffolk County existing under the laws of the Commonwealth of Massachusetts.

16.     The City's police department, the Boston Police Department ("BPD"), is a municipal entity located in Suffolk County existing under the laws of the Commonwealth of Massachusetts.

17.     Defendant, Paul Evans ("Commissioner Evans"), was an agent, servant, and employee of the City, at all times mentioned herein.

18.     Commissioner Evans was a police officer and Commissioner of the BPD, at all times mentioned herein.

19.     As Commissioner, Evans executes the laws and regulations of the Commonwealth of Massachusetts pertaining to law enforcement and is responsible for the adequate training, supervision, discipline, and proper behavior of the employees and officers of the BPD and responsible for, makes and executes, by himself and through the BPD's officers and employees, policy decisions regarding training and law enforcement techniques to be employed by the BPD.

20.     Commissioner Evans' actions and omissions as set forth herein, were conducted under color of laws of the Commonwealth of Massachusetts and in the course and scope of his official duties and employment with the City, while he was clothed with the authority of the state and exercised power possessed by virtue of state law, and misused power possessed by virtue of state law and made possible only because he was clothed with the authority of state law.

21.     Commissioner Evans is sued herein in his individual capacity.

22.     Defendant, Robert Dunford ("Dunford"), was an agent, servant, and employee of the City, at all times mentioned herein.

23.     Dunford was a police officer and District Commander of the BPD, at all times mentioned herein.

24.     As Commander, Dunford executes the laws and regulations of the Commonwealth of Massachusetts pertaining to law enforcement and is responsible for the adequate training, supervision, discipline, and proper behavior of the employees and officers of the BPD and responsible for, makes and executes, by himself and through the BPD's officers and employees, policy decisions regarding training and law enforcement techniques to be employed by the BPD.

25.     Dunford's actions and omissions as set forth herein were conducted under color of laws of the Commonwealth of Massachusetts and in the course and scope of his official duties and employment with the City.

26.     Dunford is sued herein in his individual capacity.

27.     Defendant, Melbert Ahearn ("Ahearn"), was an agent, servant, and employee of the City, at all times mentioned herein.

28.     Ahearn was a police officer and Commander of BPD Internal Affairs Division ("IAD"), at all times mentioned herein.

29.     As Commander, Ahearn executes the laws and regulations of the Commonwealth of Massachusetts pertaining to law enforcement and is responsible for internal investigations of the BPD.

30.     Ahearn's actions and omissions as set forth herein were conducted under color of laws of the Commonwealth of Massachusetts and in the course and scope of his official duties and employment with the City.

31.     Ahearn is sued herein in his individual capacity.

32.     Defendant, Anne Marie Doherty ("Doherty"), was an agent, servant, and employee of the City, at all times mentioned herein.

33.     Doherty was a police officer and Superintendent-in-Chief of the Office of Internal Investigations of the BPD, at all times mentioned herein.

34.     As Superintendent-in-Chief, Doherty executes the laws and regulations of the Commonwealth of Massachusetts pertaining to law enforcement and is responsible for internal investigations of the BPD.

35.     Doherty's actions and omissions as set forth herein were conducted under color of laws of the Commonwealth of Massachusetts and in the course and scope of her official duties and employment with the City.

36.     Doherty is sued herein in her individual capacity.

37.     Defendant, LaDonna Hatton ("Hatton"), was an agent, servant, and employee of the City, at all times mentioned herein.

38.     Hatton was Legal Advisor to the BPD for the City, at all times mentioned herein.

39.     Hatton's actions and omissions as set forth herein were conducted under color of laws of the Commonwealth of Massachusetts and in the course and scope of her official duties and employment with the City.

40.     Hatton is sued herein in her individual capacity.

41.     Defendant, Eileen Vanderwood ("Vanderwood"), was an agent, servant, and employee of the City, at all times mentioned herein.

42.     Vanderwood was a police officer and Sergeant Detective of BPD IAD, at all times mentioned herein.

43.     As Sergeant Detective, Vanderwood executes the laws and regulations of the Commonwealth of Massachusetts pertaining to law enforcement and is responsible for internal investigations at BPD.

44.     Vanderwood's actions and omissions as set forth herein were conducted under color of laws of the Commonwealth of Massachusetts and in the course and scope of her official duties and employment with the City.

45.     Vanderwood is sued herein in her individual capacity.

46.     Defendant, John McLean, was an agent, servant, and employee of the City, at all times mentioned herein.

47.     McLean was a police officer of BPD, at all times mentioned herein.

48.     McLean's actions and omissions as set forth herein were conducted under color of laws of the Commonwealth of Massachusetts and in the course and scope of his official duties and employment with the City.

49.     McLean is sued herein in his individual capacity.

50.     Defendant, Anne Marie Donahue, was an agent, servant, and employee of the City, at all times mentioned herein.

51.     Donahue was a police officer of BPD, at all times mentioned herein.

52.     Donahue's actions and omissions as set forth herein were conducted under color of laws of the Commonwealth of Massachusetts and in the course and scope of her official duties and employment with the City.

53.     Donahue is sued herein in her individual capacity.

54.     BPD Defendant Does 1-5, upon information and belief, were agents, servants, and employees of the City whose true names and capacities are unknown to Plaintiffs at present, but who participated in, directed, and/or otherwise were parties to the conduct at issue in this Complaint and/or responsible for Plaintiffs' injuries or damages. Plaintiffs will amend the Complaint to state the true names and capacities of BPD Defendant Does 1-5, inclusive, when each such defendant's true name and capacity has been ascertained.

55.     BPD Defendants Does 1-5 are sued herein in their individual capacity.

56.     Defendants, Commissioner Evans, Dunford, Ahearn, Doherty, Hatton, Vanderwood, McLean, Donahue, and BPD Defendant Does 1-5 are collectively referred to herein as the "BPD Defendants."

57.     Defendant, Patrick Rose, Sr. ("Rose") is an individual formerly of 46 Potomac Street, West Roxbury, Suffolk County, Massachusetts, and currently incarcerated.

58.     Rose was employed by the City of Boston with the Boston Police Department as a police officer from 1994 until his retirement in 2018.

59.     Rose was the President of the Boston Police Patrolman's Union from 2014 to 2018.

60.     Defendant, Frances Rose ("Frances Rose") is an individual who, upon information and belief, resides at 46 Potomac Street, West Roxbury, Suffolk County, Massachusetts.

61.     Frances Rose is the wife of Rose and the mother of John Doe and Jane Doe.

### DCF Defendants

62.     The Massachusetts Department of Children and Families (formerly Massachusetts Department of Social Services) (collectively referred to as "DCF"), is a state agency existing under the laws of the Commonwealth of Massachusetts.

63.     DCF is organized under Mass. Gen. Laws ch. 18B which provides that it shall "provide and administer a comprehensive child welfare program for children and families." DCF's responsibilities include, among other things, receiving and investigating reports of suspected child abuse or neglect.

64.     Defendant, Rudolph Adams ("Adams"), was an agent, servant, and employee of the DCF, at all times mentioned herein.

65.     Adams was as an Area Director at DCF, at all times mentioned herein.

66.     As Area Director, Adams was responsible for providing and administering a comprehensive child welfare program for children and families in Massachusetts including, among other things, receiving and investigating reports of suspected child abuse or neglect. Adams managed and was responsible for her Area's cases.

67.     Adams' actions and omissions as set forth herein were conducted under color of laws of the Commonwealth of Massachusetts and in the course and scope of her employment with the state, while she was clothed with the authority of the state and exercised power possessed by virtue of state law, and misused power possessed by virtue of state law and made possible only because she was clothed with the authority of state law.

68.     Adams is sued herein in her individual capacity.

69.     Defendant, Raymond Smith ("Smith"), was an agent, servant, and employee of the DCF, at all times mentioned herein.

70.     Smith's actions and omissions as set forth herein were conducted under color of laws of the Commonwealth of Massachusetts and in the course and scope of his employment with the state.

71.     Smith is sued herein in his individual capacity.

72.     Defendant, Sheryl Hilliard ("Hilliard"), was an agent, servant, and employee of the DCF, at all times mentioned herein.

73.     Hilliard's actions and omissions as set forth herein were conducted under color of laws of the Commonwealth of Massachusetts and in the course and scope of her employment with the state.

74.     Hilliard is sued herein in her individual capacity.

75.     Defendant, Gail Sullivan ("Sullivan"), was an agent, servant, and employee of the DCF, at all times mentioned herein.

76.     Sullivan's actions and omissions as set forth herein were conducted under color of laws of the Commonwealth of Massachusetts and in the course and scope of her employment with the state.

77.     Sullivan is sued herein in her individual capacity.

78.     DCF Defendant Does 1-5, upon information and belief, were agents, servants, and employees of DCF whose true names and capacities are unknown to Plaintiffs at present, but who participated in, directed, and/or otherwise were parties to the conduct at issue in this Complaint and/or responsible for Plaintiffs' injuries or damages. Plaintiffs will amend the Complaint to state the true names and capacities of DCF Defendant Does 1-5, inclusive, when each such defendant's true name and capacity has been ascertained.

79.     DCF Defendants Does 1-5 are sued herein in their individual capacity.

80.     Adams, Smith, Hilliard, Sullivan, and DCF Defendant Does 1-5 are collectively referred to herein as the "DCF Defendants."

## BPPA Defendants

81.     Defendant, Boston Police Patrolman's Association ("BPPA"), is a municipal entity existing under the laws of the Commonwealth of Massachusetts.

82.     Defendant, Thomas Nee ("Nee"), was an agent, servant, and employee of the City, at all times mentioned herein.

83.     Nee was a police officer of BPD, at all times mentioned herein.

84.     Nee was the President of the BPPA from 1997 to 2014.

85.     Nee's actions and omissions as set forth herein, were conducted under color of laws of the Commonwealth of Massachusetts and in the course and scope of his employment with the City.

86.     Nee is sued herein in his individual capacity.

87.     BPPA Defendant Does 1-5, upon information and belief, were agents, servants, and employees of the BPPA whose true names and capacities are unknown to Plaintiffs at present, but who participated in, directed, and/or otherwise were parties to the conduct at issue in this Complaint and/or responsible for Plaintiffs' injuries or damages.  Plaintiffs will amend the Complaint to state the true names and capacities of BPPA Defendant Does 1-5, inclusive, when each such defendant's true name and capacity has been ascertained.

88.     BPPA Defendant Does 1-5 are sued herein in their individual capacity.

89.     Defendant Nee and BPPA Defendants Does 1-5 are collectively referred to herein as the "BPPA Defendants."

## FACTS

### History of Sexual Abuse

90.     Rose sexually abused John Doe from approximately 1990 through 1997, when John Doe was between eight and fourteen years old.

91.     Rose sexually abused Jane Doe from approximately 1990 through 1999, when Jane Doe was between five and fourteen years old.

92.     Rose sexually abused other family members, Child Victim 1, Child Victim 2, Child Victim 3, Child Victim 4 (collectively, "the Child Victims"), all of whom were minors at the time of the abuse, from at least 1990 through 2020.

93.     Rose was employed by the City as a Probationary Police Officer with the BPD effective June 22, 1994.

94.     Rose was employed by the City as a Police Officer with the BPD effective June 23, 1995 through January 5, 2018.

95.     When Rose sexually abused John Doe and Jane Doe, Rose was a Police Officer with the City.

96.     When Rose sexually abused the Child Victims, Rose was a Police Officer with the City.

97.     Rose was the President of the Boston Police Patrolman's Union from 2014 to 2018.

98.     When Rose sexually abused the Child Victims, Rose was the President of the Boston Police Patrolman's Union.

### Notice of 1992 Abuse

99.     In or about 1992, DCF Defendants were aware or should have been aware of a complaint that Rose sexually abused Child Victim 3 in the Rose family home.

100.    DCF Defendants noted or should have noted in their records that a complaint was made that Rose sexually abused Child Victim 3.

101.    On or about November 10, 1995, Frances Rose told Sgt. Donahue and Sgt. Det. McLean that a DCF investigation was conducted 3 or 4 years prior relating to Rose and Child Victim 3.

102.    On or about November 11, 1995, Sgt. Donahue and Sgt. Det. McLean met Child Victim 3 at a school to discuss the prior allegation that Rose sexually abused Child Victim 3.

103.    At all pertinent times during the IAD and DCF's "investigations" into the 1995 sex abuse of John Doe, the City, BPD Defendants, and DCF Defendants knew or should have known that Rose had two complaints against him for sex with minors.

104.    At the time of Rose's hiring as a police officer, the City and BPD Defendants knew or should have known that a prior complaint was made to DCF regarding Rose's abuse of Child Victim 3 in or about 1992.

105.    While Patrick Rose, Sr. was being investigated for sexually abusing a minor, he was hired by the City as police officer.

### Notice of 1995 Abuse

106.    On or about November 8, 1995, DCF Defendants including Hilliard and Sullivan received and reviewed a Child Abuse and Neglect Report that reported sexual abuse by Rose against John Doe.

107.    On or about November 8, 1995, DCF Defendants including Hilliard and Sullivan concluded that the allegations of sexual abuse contained within the Child Abuse and Neglect

Report should be accepted for investigation.

108.    On or about November 8, 1995, DCF Defendants including Hilliard and Sullivan "screened in" the Child Abuse and Neglect Report.

109.    On or about November 8, 1995, DCF Defendants including Hilliard assigned DCF Defendants including Smith to investigate the alleged misconduct.

110.    In November, 1995, DCF Defendants including Smith conducted an investigation.

111.    In November, 1995, Sgt. Donahue told DCF Defendants including Smith that Rose sexually abused John Doe.

112.    Adams oversaw the child welfare program for John Doe and Jane Doe.

113.    Adams received and investigated the reports of child abuse and neglect related to John Doe and Jane Doe.

114.    DCF Defendants knew or should have known that at the time of John Doe's report of abuse that a prior complaint of abuse by Rose had been made to DCF on behalf of Child Victim 3 in or about 1992.

115.    BPD and the BPD Defendants knew or should have known that at the time of John Doe's report of abuse that a prior complaint of abuse by Rose had been made to DCF on behalf of Child Victim 3 in or about 1992.

116.    On or about November 10, 1995, Lieutenant Anne Marie Donahue and Sergeant Detective John McLean of BPD Sexual Assault Unit were assigned to investigate the allegation.

117.    On or about November 10, 1995, Lt. Donahue and Sgt. Det. McLean interviewed John Doe.

118.    The November 10, 1995 interview of John Doe occurred in a police car in front of Rose's house.

119.    At the time of the November 10, 1995 BPD interview of John Doe, Rose and Frances Rose were standing outside in front of the house.

120.    On or about November 10, 1995, John Doe reported to Sgt. Donahue and Sgt. Det. McLean that Rose sexually abused him.

121.    On or about November 10, 1995, Sgt. Donahue and Sgt. Det. McLean arrested Rose for Indecent Assault and Battery on a Child Under 14.

122.    On or about November 10, 1995, a Restraining Order was issued and served against Rose ordering Rose not to contact John Doe, Jane Doe, Child Victim 3, and another minor.

123.     On or about November 10, 1995, Sgt. Det. McLean prepared a Boston Police Incident Report for Indecent Assault and Battery on a Child Under 14 naming Rose as the perpetrator.

124.     On or about November 10, 1995, Donahue instructed DCF Defendants not to go to the Rose home, as the allegation pertained to a Boston Police officer.  Donahue advised that she would go to the Rose home, to avoid any harm to the child or family members where Rose had a gun and may become angry with the family, including John Doe.

125.     Donahue stated to DCF Defendants that she was concerned that Rose may react in a hostile way. Donahue advised that John Doe should not be interviewed again, despite investigation protocols stating otherwise.

126.     On or about November 10, 1995, Commander Dunford and Sgt. Det. Vanderwood were notified about the Restraining Order issued against Rose.

127.     The City and BPD Defendants did not investigate or take any action to ensure Rose's compliance with the Court Restraining Order.

128.     Rose did not comply with the Court Restraining Order, which was known or reasonably should have been known by the BPD and DCF Defendants.

129.     On or about November 10, 1995, BPD placed Rose on administrative duty.

130.     On or about November 11, 1995, Sergeant Anthony Feudo reported to Commander Dunford and BPD Commanding Officer, Captain David Walsh that he responded to a request from the BPD Sexual Assault Unit pertaining to a sexual abuse investigation involving Rose and that Sgt. Feudo confiscated Rose's weapons and license to carry.

131.     On or about November 13, 1995, Sgt. Donahue told Nancy Lee of the Sexual Assault Intervention Network ("SAIN") that Rose sexually abused John Doe.

132.     On or about November 13, 1995, Lee informed DCF Defendants including Smith that BPD would conduct an internal investigation.

133.     In or about November 1995, DCF Defendants including Smith spoke with John Doe's school principal, who described Rose as "violent."

134.     On November 17, 1995, McLean interviewed two of John Doe's minor friends, who informed McLean and Donahue, in separate interviews, that John Doe confided in a group of boys at Heinz Field over the summer that Rose was forcing John Doe to touch him inappropriately and that it happened on more than one occasion.

135.     Notwithstanding BPD and DCF Defendants' knowledge of multiple victims and multiple incidents of Rose molesting John Doe, the BPD and DCF Defendants worked in concert to cover-up Rose's sexual crimes.

136.   The City conducted no further investigation.

137.   BPD Defendants conducted no further investigation.

**DCF Finds Evidence of Abuse and Refers To District Attorney**

138.   On or about November 13-16, 1995, DCF Defendants including Smith conducted incomplete and inappropriate witness interviews.

139.   On or about November 16, 1995, DCF Defendants including Smith concluded that the evidence supported the allegation that Rose sexually abused John Doe.

140.   On or about November 16, 1995, DCF Defendants including Smith referred the case to the Suffolk County District Attorney's Office.

141.   In November, 1995, Adams, as Area Director at DCF, managed and was responsible for her Area's cases, including John Doe's case.

142.   In November, 1995, Adams was involved in the referral of the John Doe sexual abuse case to the Suffolk County District Attorney's Office.

143.   DCF Defendants knew that Rose was sexually abusing John Doe, knew that Rose was violent and had a gun, and knew that John Doe and Jane Doe were in danger.

144.   DCF Defendants conducted no further investigation or follow up.

145.   DCF Defendants did not conduct an interview of John Doe relating to the sexual abuse.

146.   DCF Defendants including Smith interviewed Jane Doe only in the presence of Frances Rose.

147.   DCF Defendants did not conduct a welfare check on John Doe or Jane Doe.

148.   DCF Defendants failed to appropriately respond to the sexual abuse, including failing to properly investigate and respond to the sexual abuse of John Doe.

149.   DCF Defendants failed to remove John Doe and Jane Doe from the custody of Rose.

150.   DCF Defendants did not investigate or take any action to ensure Rose's compliance with the terms of the Restraining Order.

151.   Rose did not comply with the terms of the Restraining Order.

152.   On or about January 29, 1996, DCF Defendants consented to the withdrawal of the Restraining Order against Rose.

153.    Notwithstanding DCF Defendants' knowledge that Rose was a serial child molester, they worked in concert with each other, the City, and BPD Defendants to ensure that John Doe and Jane Doe were not removed from their home, Rose would remain at home without custody restrictions, and Rose would never face punishment.

### 1995 Criminal Complaint Against Rose

154.    On or about November 20, 1995, Sgt. Det. McLean of BPD Sexual Assault Unit applied for and received from the Massachusetts District Court a Complaint for Indecent Assault and Battery on a Child Under 14 against Rose ("1995 Criminal Complaint").

155.    On or about November 27, 1995, Suffolk County District Attorney's Office Child Abuse Unit received the case from BPD.

156.    On or about December 1, 1995, Rose was arraigned in District Court on the 1995 Criminal Complaint for sexually abusing a minor under the age of 14.

157.    BPPA attorney Thomas Drechsler represented Rose in the 1995 Criminal Complaint.

158.    At this arraignment, Rose was sentenced to Pre-Trial Probation for one year, ensuring that Rose would never have to face trial or be forced to make any admission of guilt.

159.    Pre-Trial Probation is typically reserved for small or petty crimes such as drinking under the age of 21, not for forcible rape of minors.

160.    The Pretrial Probation ordered Rose to DCF directed therapy.

161.    DCF Defendants failed to direct, oversee, participate in, or take any action to confirm compliance with the Court-ordered therapy.

162.    At the time of his arraignment and sentencing, the BPD Defendants knew that John Doe told others that Rose molested him multiple times before the summer of 1995 and that another complaint was made that Rose sexually molested a minor in or about 1992.

163.    Notwithstanding the BPD Defendants' knowledge that Rose was a serial child molester, they worked in concert to ensure that he would never face any criminal or employment repercussions.

164.    In 1995, BPPA was aware of the child sexual abuse allegations against Rose.

165.    In 1995, BPD officer and BPPA President Nee was aware of child sexual abuse allegations against Rose.

166.    The City and BPD Defendants did not investigate or take any action to ensure Rose's compliance with the Court-ordered therapy.

167.    Rose did not comply with the Court-ordered therapy.

168.    The City and BPD Defendants did not obtain records relating to the Court-ordered therapy.

169.    On or about January 29, 1996, the Restraining Order against Rose was withdrawn.

170.    On or about February 1 and 8, 1996, respectively, Superintendent-in-Chief of the Office of Internal Investigations of the BPD Doherty and Attorney Hatton approved of vacating the Restraining Order against Rose, creating danger to John Doe and Jane Doe.

171.    On or about May 7, 1996, the Commonwealth dismissed the 1995 Criminal Complaint against Rose claiming that Rose had met the requirements of his pretrial probation and the victim(s) were unwilling to cooperate.

172.    The City and BPD Defendants did not re-interview John Doe until after 2020 when it was disclosed for a second time that Rose raped him as a minor repeatedly.

173.    The City and BPD Defendants did not interview Jane Doe, Child Victim 3, or the Child Victims until after 2020.

174.    When Jane Doe was interviewed in 2020, she disclosed that Rose had raped her repeatedly as a minor.

175.    The gross indifference of the City, BPD Defendants, and DCF Defendants caused John Doe and Jane Doe to be placed in danger by allowing a serial child molester with multiple complaints against him for sexual abuse of minors to interact with them without constraint or supervision.

176.    The Plaintiffs' harm would not have occurred but for the fact that Rose was clothed with the authority of the state in his position as a police officer.  Rose's actions under the color of state law were condoned, coerced, or encouraged by the City, BPD Defendants, and DCF Defendants in that they all chose not to investigate, discipline, or otherwise take corrective action against Rose.

### IAD Complaint

177.    On or about December 19, 1995, Sgt. Det. Vanderwood of BPD Bureau of Internal Investigations ("BII") made a Complaint ("IAD Complaint") against Rose concerning the 1995 Criminal Complaint for Indecent Assault and Battery on a Child Under Fourteen.

178.    On or about April 16, 1996, five months after BPD learned of the sexual abuse, BPD ordered Rose to report to the IAD.

179.    On or about May 7, 1996, Sgt. Det. Vanderwood reported that she would initiate an IAD hearing.

180.    Sgt. Det. Vanderwood did not initiate an IAD hearing.

181.    On or about June 4, 1996, IAD interviewed Rose, more than six months after BPD learned that Rose sexually abused John Doe.

182.    On or about June 4, 1996, Attorney Drechsler of the BPPA represented Rose at the IAD interview.

183.    On or about June 4, 1996, at the IAD interview, Rose asserted his 5th Amendment privilege and refused to provide information relative to the allegations.

184.    The BPD Defendants knew or should have known that Rose asserted the 5th Amendment in response to the allegations of Indecent Assault and Battery on a Child.

**IAD Complaint Sustained**

185.    On or about June 6, 1996, IAD sustained the IAD Complaint against Rose.

186.    IAD sustained the allegations against Rose citing violation of Boston Police Department Rules and Procedures Rule 102, Section 35, Conformance to Laws.

187.    BPD's Rule 102, Section 35, Conformance to Laws reads in part, "[a]n employee of the Department who commits any criminal act shall be subject to disciplinary action up to and including discharge from the Department."

188.    Sgt. Det. Vanderwood conducted no further investigation after IAD sustained the IAD Complaint.

189.    Sgt. Det. Vanderwood did not terminate Rose or recommend that Rose be terminated after IAD sustained the IAD Complaint.

190.    Sgt. Det. Vanderwood did not order or recommend any disciplinary measures against Rose after IAD sustained the IAD Complaint.

191.    Sgt. Det. Vanderwood did not refer the case to the Legal Advisor's Office or Hearing Officer after IAD sustained the IAD Complaint.

192.    Sgt. Det. Vanderwood did not document a final disposition on her findings, the sustained IAD Complaint, or Rose's misconduct.

193.    On June 10, 1996, Sgt. Det. Vanderwood reported to Commander Ahearn that her finding and recommendation that the allegation of a Violation of Rule 102 Section 35, Non Conformance to Law, against Rose is sustained.

194.    Commander Ahearn conducted no further investigation after IAD sustained the IAD Complaint.

195.    Commander Ahearn did not terminate Rose or recommend that Rose be terminated after IAD sustained the IAD Complaint.

196.    Commander Ahearn did not order or recommend any disciplinary measures against Rose after IAD sustained the IAD Complaint.

197.    Commander Ahearn did not refer the case to the Legal Advisor's Office or Hearing Officer after IAD sustained the IAD Complaint.

198.    Commander Ahearn did not conduct a review of the Hearing Officer's findings.

199.    Commander Ahearn did not document a final disposition on the Hearing Officer's findings, the sustained IAD Complaint, or Rose's misconduct.

200.    On or about June 17, 1996, Commander Ahearn notified Commissioner Evans that IAD sustained the IAD Complaint.

201.    Commissioner Evans conducted no further investigation after IAD sustained the IAD Complaint.

202.    Commissioner Evans did not terminate Rose or recommend that Rose be terminated after IAD sustained the IAD Complaint.

203.    Commissioner Evans did not order or assign any disciplinary measures against Rose after IAD sustained the IAD Complaint.

204.    Commissioner Evans did not refer the case to the Legal Advisor's Office or Hearing Officer after IAD sustained the IAD Complaint.

205.    Commissioner Evans did not conduct a review of the Hearing Officer's findings.

206.    Commissioner Evans did not document a final disposition on the Hearing Officer's findings, the sustained IAD Complaint, or Rose's misconduct.

207.    On or about July 3, 1996, Superintendent Doherty reviewed the June 17, 1996 Internal Affairs Recommendations that sustained the IAD Complaint.

208.    Superintendent Doherty conducted no further investigation after IAD sustained the IAD Complaint.

209.    Superintendent Doherty did not terminate Rose or recommend that Rose be terminated after IAD sustained the IAD Complaint.

210.    Superintendent Doherty did not order or recommend any disciplinary measures against Rose after IAD sustained the IAD Complaint.

211.    Superintendent Doherty did not refer the case to the Legal Advisor's Office or Hearing Officer after IAD sustained the IAD Complaint.

212.    Superintendent Doherty did not conduct a review of the Hearing Officer's findings.

213.    Superintendent Doherty did not document a final disposition on the Hearing Officer's findings, the sustained IAD Complaint, or Rose's misconduct.

214.    On or about August 20, 1996, Attorney Hatton reviewed the June 17, 1996 IAD Recommendations that sustained the IAD Complaint.

215.    Attorney Hatton conducted no further investigation after IAD sustained the IAD Complaint.

216.    Attorney Hatton did not terminate Rose or recommend that Rose be terminated after IAD sustained the IAD Complaint.

217.    Attorney Hatton did not order or recommend any disciplinary measures against Rose after IAD sustained the IAD Complaint.

218.    Attorney Hatton did not refer the case to the Legal Advisor's Office or Hearing Officer after IAD sustained the IAD Complaint.

219.    Attorney Hatton did not conduct a review of the Hearing Officer's findings.

220.    Attorney Hatton did not document a final disposition on the Hearing Officer's findings, the sustained IAD Complaint, or Rose's misconduct.

221.    On or about October 18, 1996, Commander Dunford was notified that BPD IAD sustained the IAD Complaint.

222.    Commander Dunford conducted no further investigation after IAD sustained the IAD Complaint.

223.    Commander Dunford did not terminate Rose or recommend that Rose be terminated after IAD sustained the IAD Complaint.

224.    Commander Dunford did not order or recommend any disciplinary measures against Rose after IAD sustained the IAD Complaint.

225.    Commander Dunford did not refer the case to the Legal Advisor's Office or Hearing Officer after IAD sustained the IAD Complaint.

226.    Commander Dunford did not conduct a review of the Hearing Officer's findings.

227.    Commander Dunford did not document a final disposition on the Hearing Officer's findings, the sustained IAD Complaint, or Rose's misconduct.

228.    BPD Defendants made no final disposition on the sustained IAD Complaint.

229.    BPD Defendants did not sanction, discipline, recommend termination, or terminate Rose after the IAD sustained the Complaint.

## BPPA Demands BPD Reinstate Rose

230.    On or about May 6, 1997, Attorney Thomas Drechsler, counsel for Rose and BPPA, sent a letter to IAD attaching an affidavit from John Doe and an affidavit from Frances Rose denying any allegations of sexual misconduct by Rose ("Affidavits").

231.    BPPA and the BPPA Defendants never interviewed John Doe.

232.    BPPA and the BPPA Defendants never interviewed Jane Doe.

233.    BPPA and the BPPA Defendants never interviewed Frances Rose.

234.    BPPA and the BPPA Defendants never interviewed Rose.

235.    BPD Defendants did not reinterview John Doe after receipt of the Affidavits.

236.    On or about May 6, 1997, Attorney Drechsler, counsel for Rose and BPPA, sent a letter to IAD requesting Rose be put back on full duty and stated the union's intention to challenge Rose's assignment to administrative duty and that any attempt on the part of the BPD to impose discipline on Rose would be unsuccessful.

237.    On or about October 20, 1997, Attorney Alan Shapiro, counsel for Rose and BPPA, sent a letter to Commissioner Evans informing him that the BPPA was considering filing a grievance concerning Rose's continued restriction to administrative duty.

238.    On or about October 31, 1997, BPPA filed a grievance on behalf of Rose against the BPD contending that the BPD had placed Rose on administrative duty without just cause.

239.    On or about December 29, 1997, Commander Dunford reported that on May 10, 1996, he requested Rose be returned to full duty.

240.    On or about January 30, 1998, the City's Office of Labor Relations denied the BPPA's grievance.

241.    In or about March 1998, the City's Office of Labor Relations reported that Rose was ordered by the court to get counseling and that he would not authorize release of his medical records, had not provided documentation regarding fitness to return to duty, and was not cooperating.

242.    On or about May 4, 1998, the City's Office of Labor Relations reported that it denied the grievance and that BPD appropriately placed Rose on administrative duties.

### Evans Reinstates Rose Despite IAD's Sustained Complaint

243.    Sometime after May 4, 1998, Commissioner Evans reinstated Rose to full duty, despite the IAD's sustained complaint and the City's Office of Labor Relations' denial of the BPPA's grievance.

244.    In 2014, BPPA elected Rose as President of BPPA.

245.    From 2014 to 2018, Rose served as President of BPPA.

246.    Rose remained on the force until his retirement in 2018.

247.    During the 23 years between the 1995 Complaint and his 2018 retirement, Rose abused John Doe, Jane Doe, and the four Child Victims.

248.    In 2021, Evans and Doherty continued their campaign to chill John Doe and Jane Doe's substantive and procedural due process rights under the Fourteenth Amendment by falsely representing to the public that "they did a complete and thorough investigation" and that "their hands were tied."

### 2020 Criminal Complaint Against Rose

249.    In 2020, John Doe again reported to BPD that Rose sexually abused him.

250.    In 2020, John Doe reported to BPD that Rose sexually abused Child Victims 1 and 4.

251.    On or about August 12, 2020, Rose was arrested and charged with 33 counts of sexual abuse of John Doe, Jane Doe, and four of the Child Victims.

252.    On November 20, 2020, the Grand Jury for Suffolk County returned a thirty-three count indictment against Rose. The indictment charges five counts of Aggravated Rape of a Child (in violation of G.L. c. 265, § 23A), eleven counts of Rape of a Child (in violation of G.L. c. 265, § 23), thirteen counts of Indecent Assault and Battery on a Child Under 14 (in violation of G.L. c. 265, § 13B), one count of Dissemination of a Matter Harmful to a Minor (in violation of G.L. c. 272, § 28), one count of Open and Gross Lewdness (in violation of G.L. c. 272, § 16) and two counts of Enticement (in violation of G.L. c. 265, § 26C).

253.    On or about December 10, 2020, the Commonwealth filed a criminal case against Rose captioned, *Commonwealth of Massachusetts v. Patrick Rose, Sr.*, No. 2084CR00324 in Suffolk County Superior Court alleging Rose sexually assaulted six children ages seven to sixteen from 1993 to 2020.

254.    On or about April 25, 2022, Rose pleaded guilty to 21 counts of child rape and sexual

assault and was sentenced to prison.

255.    At the Sentencing Hearing, John Doe stated that Rose continued to sexually abuse him and that the sexual abuse escalated in and after 1995 because the City did nothing when John Doe reported the abuse.

256.    As a result of the City and BPD Defendants' failure to respond to the 1995 sexual abuse complaint, Rose was not removed from his position as a Boston police officer and continued to sexually abuse John Doe and Jane Doe.

257.    As a result of the City and BPD Defendants' failures, the City and BPD Defendants allowed Rose to use his position as a police officer to perpetrate the sexual abuse of John Doe and Jane Doe.

258.    As a result of DCF Defendants' failure to respond to the 1992 and 1995 sexual abuse complaints, John Doe and Jane Doe were not removed from the home and continued to be sexually abused by Rose.

259.    As a result of the City, BPD Defendants, and DCF Defendants' failures, John Doe, Jane Doe, and the Child Victims lived in a state of daily, perpetual danger by Rose, resulting in years of sexual abuse.

260.    At all times relevant herein, the Defendants had the time and opportunity to deliberate and make unhurried judgments but instead acted with deliberate indifference and chose to ignore the danger to John Doe and Jane Doe.

### BPD's Custom and Practice of Covering Up Police Officer's Criminal Acts

261.    It was widely known that, under Commissioner Paul Evans' tenure, and those of his predecessors, BPD routinely covered up the criminal acts of Boston Police officers in the late 1980s through the 1990s to ensure that they would avoid criminal or employment consequences.

262.    To address the widespread issues within the BPD and the IAD, in 1991, Boston Mayor Raymond Flynn requested that James St. Clair conduct an independent investigation of the management and supervision systems and practices of the BPD to ensure that BPD's practices were consistent with the accepted standards of a modern, urban police department.

263.    On January 4, 1992, the St. Clair Commission Report ("St. Clair Report") stated that the BPD's handling of citizen complaints of police misconduct was "troubling."

264.    The study "revealed an investigative and hearing process characterized by shoddy, half-hearted investigations, lengthy delays, and inadequate documentation and record keeping" and showed the Internal Affairs process was "unfairly skewed against those bringing a complaint." St. Clair stated that "[g]iven the [IAD's] failure to routinely provide thorough and timely investigations of alleged misconduct, and the fact that the BPD sustains less than 6 [percent] of complaints against officers, it is no surprise that the overwhelming majority of community

residents we spoke to have little confidence in the BPD's ability or willingness to police itself. The IAD reports to the Commissioner and its shortcomings adversely reflect on his performance."

265.    The BPD and BPD Defendants continued the custom and practices identified in the St. Clair Commission Report to ensure that Rose would not face any criminal or employment repercussions.

266.    Only through the concentrated efforts of the BPD and BPD Defendants to continue their custom and practice of not policing their own officers was Rose able to escape any responsibility for nearly three decades.

## CAUSES OF ACTION

### Count 1
### Violation of the Fourteenth Amendment, 42 U.S.C. § 1983 – Policies/Customs
### (City of Boston, BPD Defendants)

267.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

268.    The City adopted under the color of state law rules, policies, procedures, customs, and practices to be followed by BPD and its police officers, including the BPD Defendants.

269.    At all relevant times, BPD Defendants were employed as agents, servants, or employees of the City, and acted "under color of state law" within the meaning of 42 U.S.C. § 1983 and acted in accordance with a policy or custom of the City.

270.    The City and BPD Defendants intentionally and with deliberate indifference to the consequences, failed to adopt and/or wrongfully implemented policies and procedures, as set forth herein.

271.    The City and BPD Defendants failed to adopt and/or wrongfully implemented policies and procedures on the timing, thoroughness, and independence of investigations by BPD, IAD, and BII.

272.    The City and BPD Defendants failed to adopt and/or wrongfully implemented policies and procedures relating to investigations of police misconduct.

273.    The City and BPD Defendants failed to adopt and/or wrongfully implemented policies and procedures relating to allegations of sexual abuse by a police officer.

274.    The City and BPD Defendants failed to adopt and/or wrongfully implemented policies and procedures for the process following the filing of a criminal complaint against a police officer.

275.     The City and BPD Defendants failed to adopt and/or wrongfully implemented policies and procedures for the process following the filing of a criminal complaint for sexual assault against a police officer.

276.     The City and BPD Defendants failed to adopt and/or wrongfully implemented policies and procedures for the process following a finding of evidence by DCF of sexual assault by a police officer.

277.     The City and BPD Defendants failed to adopt and/or wrongfully implemented policies and procedures for the process following the sustaining of an IAD Complaint.

278.     The City and BPD Defendants failed to adopt and/or wrongfully implemented policies and procedures for the process following the sustaining of an IAD Complaint alleging sexual abuse by a police officer.

279.     The City and BPD Defendants failed to adopt and/or wrongfully implemented policies and procedures relating to the discipline and termination of police officers following an accusation of sexual abuse, the filing of criminal charges, the finding of misconduct by DCF, and/or a sustained finding of misconduct by IAD.

280.     The City and BPD Defendants failed to adopt and/or wrongfully implemented policies and procedures relating to enforcement of, or compliance with, disciplinary actions against a police officer including, but not limited to, restraining orders and orders for therapy, treatment, or rehabilitation.

281.     The City and BPD Defendants failed to adopt and/or wrongfully implemented policies and procedures relating to record keeping and documentation of BPD, IAD, or BII investigations.

282.     The City and BPD Defendants failed to adopt and/or wrongfully implemented policies and procedures for independent oversight of the IAD.

283.     The City and BPD Defendants failed to adopt and/or wrongfully implemented policies and procedures pursuant to the St. Clair Report.

284.     The City and BPD Defendants intentionally and with deliberate indifference to the consequences, followed official policy, widespread and well-settled custom and practices, and standard operating procedure, as set forth herein.

285.     The City and BPD Defendants' official policy, widespread and well-settled custom and practice, and standard operating procedure was to inadequately investigate, respond, report, document, and discipline misconduct of police officers.

286.     The City and BPD Defendants' official policy and custom was condoned, sanctioned, coerced, or encouraged by Commissioner Evans, or was so widespread that Evans should have

known about it, and Evans did nothing to end the practice.

287.    The City and BPD Defendants' official policy, widespread and well-settled custom and practice, and standard operating procedure was to tolerate misconduct and violations of departmental rules, including, but not limited to, those within the Boston Police Department Rules and Procedures.

288.    The City and BPD Defendants' official policy, widespread and well-settled custom and practice, and standard operating procedure was to allow inappropriate and unchecked disciplinary determinations.

289.    The City and BPD Defendants' failure to adopt and implement policies and procedures, their official policies, and their widespread and well-settled customs and practices set forth herein, resulted in an inadequate investigation, response, reporting, and disciplining of Rose's misconduct, which allowed Rose to continue working as a police officer; avoid criminal charges, incarceration, restraining orders, therapy or rehabilitation, and child custody restrictions; and continue sexually abusing minors, including John Doe and Jane Doe.

290.    The City and BPD Defendants knew or reasonably should have known that their conduct would result in a violation of Plaintiffs' rights.

291.    Through the acts and omissions described herein, the City and BPD Defendants deprived Plaintiffs of their clearly established rights under the Fourteenth Amendment to the United States Constitution and enforceable through the Due Process Clause of the Fourteenth Amendment to bodily integrity and to be free from deprivation of liberty without due process of law in violation of 42 U.S.C. § 1983.

292.    The City and BPD Defendants' conduct was reprehensible, shocking to the conscience, and offensive to all standards of common decency, which clearly rises to the threshold level of callous disregard of Plaintiff's substantive due process rights.

293.    The City and BPD Defendants acted with sufficient malice, evil motive or intent, involved reckless, callous indifference, and conscious disregard of Plaintiffs' federally protected constitutional rights for punitive damages to issue under 42 U.S.C. §§ 1983 and 1988.

294.    As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

**Count 2**
**Violation of the Fourteenth Amendment, 42 U.S.C. § 1983 –**
**Failure to Screen/Train/Supervise**
**(City of Boston, BPD Defendants)**

295.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

296.    At all relevant times, BPD Defendants were employed as agents, servants, or employees of the City, and acted "under color of state law" within the meaning of 42 U.S.C. § 1983 and acted in accordance with a policy or custom of the City.

297.    The City and BPD Defendants intentionally and with deliberate indifference to the consequences, failed to adequately screen, train, and supervise police officers, as set forth herein.

298.    The City and BPD Defendants failed to screen police officers for prior misconduct including prior allegations of neglect, abuse, and sexual assault.

299.    The City and BPD Defendants failed to train police officers on how to appropriately investigate complaints of misconduct against police officers.

300.    The City and BPD Defendants failed to train police officers on how to appropriately investigate complaints of sexual assault by police officers.

301.    The City and BPD Defendants failed to train police officers on how to appropriately investigate and follow up on DCF findings and complaints against police officers.

302.    The City and BPD Defendants failed to train police officers on how to appropriately investigate and follow up on criminal charges and complaints against police officers.

303.    The City and BPD Defendants failed to train police officers on how to appropriately investigate and follow up on IAD complaints and findings against police officers.

304.    The City and BPD Defendants failed to train police officers on how to appropriately document and report on their investigations and findings.

305.    The City and BPD Defendants failed to train police officers on how to appropriately discipline misconduct.

306.    The City and BPD Defendants failed to train officers regarding departmental rules, including, but not limited to, those within the Boston Police Department Rules and Procedures.

307.    The City and BPD Defendants failed to supervise police officers responsible for investigating complaints of misconduct against police officers.

308.    The City and BPD Defendants failed to supervise police officers responsible for documenting and reporting on their investigations and findings.

309.    The City and BPD Defendants failed to supervise police officers responsible for implementing and ensuring compliance with disciplinary measures against police officers.

310.    The City and BPD Defendants failed to supervise police officers responsible for implementing and ensuring compliance with BPD rules, policies, and procedures.

311.    The City and BPD Defendants acted intentionally and with deliberate indifference in their screening, training, and supervision of police officers.

312.    The City and BPD Defendants failed to screen, train, and supervise police officers consistent with, and in direct conflict with and with utter disregard for the findings and directives in the St. Clair Report.

313.    The City and BPD Defendants disregarded the known or obvious consequence that BPD's deficient training in investigating and disciplining police misconduct would and did cause Rose to violate Plaintiffs' constitutional rights.

314.    The City and BPD Defendants knew or reasonably should have known that their conduct and the conduct of their subordinate officers would result in a violation of Plaintiffs' rights.

315.    The City and BPD Defendants knew or reasonably should have known that Rose was engaging in the sexual abuse of minors and that Rose's conduct would result in a violation of Plaintiffs' rights.

316.    The City and BPD Defendants' actions or inactions were done intentionally and with deliberate indifference to the consequences and that conduct was so closely related to the deprivation of the Plaintiffs' rights that it caused Plaintiffs' injury.

317.    The City and BPD Defendants knew or should have known that their screening, training, and supervision were not adequate and that more training was needed to avoid likely constitutional violations.

318.    The City and BPD Defendants' failure to adequately screen, train, and supervise their police officers resulted in the violation of the constitutional rights of their citizens and the rights of Plaintiffs, in particular.

319.    The City and BPD Defendants' failure to adequately screen, train, and supervise their police officers as set forth herein resulted in the hiring of a sexual predator; police officers untrained in detecting sexual abuse; police officers untrained in investigating sexual abuse claims; supervisors who failed to adequately discipline; and supervisors who failed to implement corrective measures including, but not limited to, criminal charges, incarceration, restraining order, and therapy or rehabilitation.

320.    The City and BPD Defendants' failures to adequately screen, train, and supervise their police officers as set forth herein, resulted in an inadequate investigation, response, reporting, and disciplining of Rose's misconduct, which allowed Rose to continue working as a police officer; avoid criminal charges, incarceration, restraining orders, therapy or rehabilitation, and child custody restrictions; and continue sexually abusing minors, including John Doe and Jane

Doe.

321.   Through the acts and omissions described herein, the City and BPD Defendants deprived Plaintiffs of their clearly established rights under the Fourteenth Amendment to the United States Constitution and enforceable through the Due Process Clause of the Fourteenth Amendment to bodily integrity and to be free from deprivation of liberty without due process of law in violation of 42 U.S.C. § 1983.

322.   The City and BPD Defendants' conduct was reprehensible, shocking to the conscience, and offensive to all standards of common decency, which clearly rises to the threshold level of callous disregard of Plaintiffs' substantive due process rights.

323.   The City and BPD Defendants acted with sufficient malice, evil motive or intent, involved reckless, callous indifference, and conscious disregard of Plaintiffs' federally protected constitutional rights for punitive damages to issue under 42 U.S.C. §§ 1983 and 1988.

324.   As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

### Count 3
### Violation of the Fourteenth Amendment, 42 U.S.C. § 1983 –
### Supervisory Liability
### (BPD Defendants)

325.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

326.   At all relevant times, BPD Defendants were employed by the City and acted "under color of state law" within the meaning of 42 U.S.C. § 1983.

327.   BPD Defendants failed to supervise the officers under their command and authorized or cooperated in the subordinate officers' acts or inactions.

328.   BPD Defendants failed to supervise officers under their command and authorized or cooperated in the subordinate officers' investigation, response, reporting, documenting, and disciplining of misconduct of police officers.

329.   BPD Defendants failed to supervise officers under their command and authorized or cooperated in the subordinate officers' failure to ensure Rose's compliance with therapy, treatment, or rehabilitation.

330.   BPD Defendants failed to supervise officers under their command and authorized or cooperated in the subordinate officers' failure to ensure Rose's compliance with a Restraining

Order preventing Rose's contact with Plaintiffs.

331.    BPD Defendants failed to supervise officers under their command and authorized or cooperated in the subordinate officers' failure to interview the BPPA agents involved in obtaining the Affidavits of John Doe and Frances Rose.

332.    BPD Defendants failed to supervise officers under their command and authorized or cooperated in the subordinate officers' failure to interview John Doe or Frances Rose after receiving the Affidavits of John Doe and Frances Rose.

333.    BPD Defendants failed to supervise officers under their command and authorized or cooperated in the subordinate officers' failure to appropriately record and report on its investigations and findings.

334.    BPD Defendants failed to supervise officers under their command and authorized or cooperated in the subordinate officers' failure to suspend or dismiss or recommend the dismissal of Rose from the BPD.

335.    BPD Defendants failed to supervise officers under their command and authorized or cooperated in the subordinate officers' acquiescence to Rose's conduct through their action and inaction.

336.    BPD Defendants failed to properly sanction or discipline police officers for the violation of the constitutional rights of citizens, thereby causing police officers, including Rose, to engage in the unlawful conduct described herein.

337.    BPD Defendants disregarded the known or obvious consequence that BPD's deficient training in investigating and disciplining police misconduct would and did cause Rose to violate Plaintiffs' constitutional rights.

338.    BPD Defendants' failure to supervise resulted in an inadequate investigation, response, reporting, and disciplining of Rose's misconduct, which directly led to Rose continuing to work as a police officer; avoiding criminal charges, incarceration, restraining orders, therapy or rehabilitation, and child custody restrictions; and sexually abusing minors, including John Doe and Jane Doe.

339.    BPD Defendants knew or reasonably should have known that their conduct and the conduct of their subordinate officers would result in a violation of Plaintiffs' rights.

340.    BPD Defendants knew or reasonably should have known that Rose was engaging in the sexual abuse of minors and that Rose's conduct would result in a violation of Plaintiffs' rights.

341.    BPD Defendants' actions or inactions were done intentionally and with deliberate indifference to the consequences and that conduct was so closely related to the deprivation of the Plaintiffs' rights that it caused Plaintiffs' injury.

342.   Through the acts and omissions described herein, BPD Defendants deprived Plaintiffs of their clearly established rights under the Fourteenth Amendment to the United States Constitution and enforceable through the Due Process Clause of the Fourteenth Amendment to bodily integrity and to be free from deprivation of liberty without due process of law in violation of 42 U.S.C. § 1983.

343.   BPD Defendants' conduct was reprehensible, shocking to the conscience, and offensive to all standards of common decency, which clearly rises to the threshold level of callous disregard of Plaintiff's substantive due process rights.

344.   BPD Defendants acted with sufficient malice, evil motive or intent, involved reckless, callous indifference, and conscious disregard of Plaintiffs' federally protected constitutional rights for punitive damages to issue under 42 U.S.C. §§ 1983 and 1988.

345.   As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

### Count 4
### Violation of the Fourteenth Amendment, 42 U.S.C. § 1983 –
### State-Created Danger
### (City of Boston, BPD Defendants)

346.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

347.   At all relevant times, the BPD Defendants were employed by the Commonwealth of Massachusetts and acted "under color of state law" within the meaning of 42 U.S.C. § 1983.

348.   The City and BPD Defendants knew that Rose was engaging in sexual abuse of one or more minors, as described herein, and that Plaintiffs were in danger.

349.   The City and BPD Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by interviewing Plaintiff, John Doe, in the presence of Rose and Frances Rose.

350.   The City and BPD Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by conducting an inadequate interview of John Doe.

351.   The City and BPD Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by conducting an inadequate investigation of the alleged recant of John Doe.

352.    The City and BPD Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by allowing noncompliance and tacitly agreeing to the vacating of the Restraining Order against Rose.

353.    The City and BPD Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by allowing Rose's noncompliance with the Court Order for therapy.

354.    The City and BPD Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by deciding not to discipline or terminate Rose.

355.    The City and BPD Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by deciding not to interview Rose until more than six months after the City and BPD Defendants learned that he was sexually abusing John Doe.

356.    The City and BPD Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by conducting investigations that were inadequate and incomplete and by inadequately documenting any findings.

357.    The City and BPD Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by withholding facts they knew regarding Rose's pattern of improper behavior and conduct including, but not limited to, the reported prior sexual abuse of Child Victim 3.

358.    The City and BPD Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by allowing Rose to have custody of and unsupervised contact with John Doe and Jane Doe after learning that Rose was a threat to Plaintiffs.

359.    The City and BPD Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by assigning the investigation of Rose's sexual misconduct to the IAD without independent oversight.

360.    The City and BPD Defendants' actions as set forth herein created and enhanced a dangerous and unsafe situation to Plaintiffs and caused them to be sexually assaulted.

361.    The City and BPD Defendants' actions as set forth herein resulted in an inadequate investigation, response, and reporting of Rose's sexual abuse, which directly led to Rose continuing to work as a police officer; avoiding criminal charges, incarceration, restraining orders, therapy or rehabilitation, and child custody restrictions; and sexually abusing minors, including John Doe and Jane Doe.

362.    The City and BPD Defendants' conduct was reprehensible, shocking to the conscience, and offensive to all standards of common decency, which clearly rises to the threshold level of

deliberate indifference of Plaintiffs' substantive due process rights.

363.   The City and BPD Defendants performed multiple acts of indifference to a rising risk of acute and severe danger.

364.   The City and BPD Defendants knew that Plaintiffs were in danger and at a substantial risk of serious harm, because they knew that Rose was engaging in the sexual abuse of John Doe, that Rose was the subject of at least two complaints of sexual abuse of one or more minors, that Rose had custody and unsupervised contact with John Doe and Jane Doe, that Rose had a propensity for violence, and that Rose was in a position of authority with a police badge and gun.

365.   The City and BPD Defendants knew that Rose was unfit to perform the work of a police officer.

366.   The City and BPD Defendants knew that Rose was unfit to supervise or have unsupervised contact with Plaintiffs.

367.   As a direct result of the City and BPD Defendants' actions ensuring that Rose would not be held accountable for his crimes, John Doe and Jane Doe were made more vulnerable to be molested by Rose.

368.   The City and BPD Defendants' conduct made it foreseeable that Rose would continue to molest minors, including John Doe and Jane Doe.

369.   Through the acts described herein, the City and BPD Defendants deprived Plaintiffs of their clearly established rights under the Fourteenth Amendment to the United States Constitution and enforceable through the Due Process Clause of the Fourteenth Amendment to bodily integrity and to be free from deprivation of liberty without due process of law, in violation of 42 U.S.C. § 1983.

370.   The City and BPD Defendants acted with sufficient malice, evil motive or intent, involved reckless, deliberate indifference, and conscious disregard of Plaintiffs' federally protected constitutional rights for punitive damages to issue under 42 U.S.C. §§ 1983 and 1988.

371.   As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 5
### Violation of the Fourteenth Amendment – 42 U.S.C. § 1983
### (Patrick Rose, Sr.)

372.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth

herein, as if set forth fully below.

373.    At all relevant times, Rose was employed by the City and acted "under color of state law" within the meaning of 42 U.S.C. § 1983.

374.    At all relevant times, Rose was clothed with the authority of the state, exercised power possessed by virtue of state law, and misused power possessed by virtue of state law, which was made possible only because Rose was clothed with the authority of state law.

375.    Rose's coercion of John Doe's alleged recant resulted in an inadequate investigation, response, reporting, and disciplining of Rose's misconduct, which directly led to Rose continuing to work as a police officer; avoiding criminal charges, incarceration, restraining orders, therapy or rehabilitation, and child custody restrictions; and sexually abusing minors, including John Doe and Jane Doe.

376.    Rose knew or reasonably should have known that his conduct would result in a violation of Plaintiffs' rights.

377.    Rose's actions or inactions with regard to the coercion of John Doe's alleged recant were done intentionally and with deliberate indifference to the consequences and that conduct was so closely related to the deprivation of the Plaintiffs' rights that it caused Plaintiffs' injury.

378.    Rose's actions or inactions with regard to the coercion of John Doe's alleged recant would not have occurred but for Rose being clothed with the authority of the state in his position as a police officer. The coercion of John Doe's alleged recant was sanctioned, condoned, or encouraged by the BPD Defendants.

379.    Through the acts and omissions described herein, Rose deprived Plaintiffs of their clearly established rights under the Fourteenth Amendment to the United States Constitution and enforceable through the Due Process Clause of the Fourteenth Amendment to bodily integrity and to be free from deprivation of liberty without due process of law in violation of 42 U.S.C. § 1983.

380.    Rose's conduct with regard to the coercion of John Doe's alleged recant was reprehensible, shocking to the conscience, and offensive to all standards of common decency, which clearly rises to the threshold level of callous disregard of Plaintiffs' substantive due process rights.

381.    Rose acted with sufficient malice, evil motive or intent, involved reckless, callous indifference, and conscious disregard of Plaintiffs' federally protected constitutional rights for punitive damages to issue under 42 U.S.C. §§ 1983 and 1988.

382.    As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future

medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 6
## Violation of the Fourteenth Amendment – 42 U.S.C. § 1983
### (Frances Rose)

383.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

384.    At all relevant times, Frances Rose was a willful participant in the joint activities with Rose, the City, and the BPD Defendants with regard to the coercion of John Doe's alleged recant and thus acted "under color of state law" within the meaning of 42 U.S.C. § 1983.

385.    Upon information and belief, Rose encouraged Frances Rose to participate in John Doe's alleged recant.

Frances Rose's actions or inactions with regard to the coercion of John Doe's alleged recant would not have occurred but for Rose being clothed with the authority of the state in his position as a police officer. The coercion of John Doe's alleged recant was sanctioned, condoned, or encouraged by the BPD Defendants.

386.    Frances Rose's coercion of John Doe's alleged recant resulted in an inadequate investigation, response, reporting, and disciplining of Rose's misconduct, which directly led to Rose continuing to work as a police officer; avoiding criminal charges, incarceration, restraining orders, therapy or rehabilitation, and child custody restrictions; and sexually abusing minors, including John Doe and Jane Doe.

387.    Frances Rose knew or reasonably should have known that her conduct would result in a violation of Plaintiffs' rights.

388.    Frances Rose's actions or inactions with regard to the coercion of John Doe's alleged recant were done intentionally and with deliberate indifference to the consequences and that conduct was so closely related to the deprivation of the Plaintiffs' rights that it caused Plaintiffs' injury.

389.    Through the acts and omissions described herein, Frances Rose deprived Plaintiffs of their clearly established rights under the Fourteenth Amendment to the United States Constitution and enforceable through the Due Process Clause of the Fourteenth Amendment to bodily integrity and to be free from deprivation of liberty without due process of law in violation of 42 U.S.C. § 1983.

390.    Frances Rose's conduct with regard to the coercion of John Doe's alleged recant was reprehensible, shocking to the conscience, and offensive to all standards of common decency, which clearly rises to the threshold level of callous disregard of Plaintiffs' substantive due process rights.

391.   Frances Rose acted with sufficient malice, evil motive or intent, involved reckless, callous indifference, and conscious disregard of Plaintiffs' federally protected constitutional rights for punitive damages to issue under 42 U.S.C. §§ 1983 and 1988.

392.   As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 7
### Violation of the Fourteenth Amendment – 42 U.S.C. § 1983
### Policies/Customs
### (DCF Defendants)

393.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

394.   DCF adopted under the color of state law rules, policies, procedures, customs, and practices to be followed by DCF and its employees and agents, including the DCF Defendants.

395.   At all relevant times, DCF Defendants were employed as agents, servants, or employees of the Commonwealth of Massachusetts and acted "under color of state law" within the meaning of 42 U.S.C. § 1983 and acted in accordance with a policy or custom of the state.

396.   At all relevant times, Plaintiffs enjoyed a "special relationship" with the state, as they were the subject victims in complaints to DCF, in 51A reports to DCF, and in DCF and DCF Defendants' investigations and responses to those complaints and reports.

397.   DCF Defendants intentionally and with deliberate indifference to the consequences, failed to adopt and/or wrongfully implemented policies and procedures to protect children and in particular, Plaintiffs, from abuse and neglect.

398.   DCF Defendants failed to adopt and/or wrongfully implemented policies and procedures on the timing, thoroughness, and independence of investigations by DCF.

399.   DCF Defendants failed to adopt and/or wrongfully implemented policies and procedures for the process following the filing of a criminal complaint or an IAD complaint, or the sustaining of an IAD complaint against the subject of a DCF investigation.

400.   DCF Defendants failed to adopt and/or wrongfully implemented policies and procedures for the process following a finding of evidence of sexual assault by DCF.

401.   DCF Defendants failed to adopt and/or wrongfully implemented policies and procedures

relative to maintenance of restraining orders.

402.     DCF Defendants failed to adopt and/or wrongfully implemented policies and procedures for providing Plaintiffs with a safe environment.

403.     DCF Defendants' widespread and well-settled custom and practice, and standard operating procedure was to inadequately investigate, respond, report, and document its investigations and findings.

404.     DCF Defendants' decisions substantially departed from accepted professional judgment, practice, and standards.

405.     DCF Defendants' failure to adopt and implement policies and procedures, their official policies, and their widespread and well-settled customs and practices as set forth herein resulted in an inadequate investigation, response, and reporting of Rose's sexual abuse, which directly led to Rose continuing to work as a police officer; avoiding criminal charges, incarceration, restraining orders, therapy or rehabilitation, and child custody restrictions; and sexually abusing minors, including John Doe and Jane Doe.

406.     DCF Defendants knew or reasonably should have known that their conduct would result in a violation of Plaintiffs' rights.

407.     Through the acts and omissions described herein, DCF Defendants deprived Plaintiffs of their clearly established rights under the Fourteenth Amendment to the United States Constitution and enforceable through the Due Process Clause of the Fourteenth Amendment to bodily integrity and to be free from deprivation of liberty without due process of law, in violation of 42 U.S.C. § 1983.

408.     DCF Defendants intentionally and with deliberate indifference to the consequences, followed official policy, widespread and well-settled custom and practices, and standard operating procedure, as set forth herein.

409.     DCF Defendants' conduct was reprehensible, shocking to the conscience, and offensive to all standards of common decency, which clearly rises to the threshold level of callous disregard of Plaintiffs' substantive due process rights.

410.     DCF Defendants acted with sufficient malice, evil motive or intent, involved reckless, callous indifference, and conscious disregard of Plaintiffs' federally protected constitutional rights for punitive damages to issue under 42 U.S.C. §§ 1983 and 1988.

411.     As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

**Count 8**
**Violation of the Fourteenth Amendment, 42 U.S.C. § 1983 –**
**Failure to Screen/Train/Supervise**
**(DCF Defendants)**

412.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

413.    At all relevant times, DCF Defendants were employed as agents, servants, or employees of the City, and acted "under color of state law" within the meaning of 42 U.S.C. § 1983 and acted in accordance with a policy or custom of the state.

414.    DCF Defendants intentionally and with deliberate indifference to the consequences, failed to adequately screen, train, and supervise its agents and employees, as set forth herein.

415.    DCF Defendants failed to train their agents and employees on how to appropriately investigate complaints of misconduct against police officers.

416.    DCF Defendants failed to train their agents and employees on how to appropriately investigate complaints of sexual assault.

417.    DCF Defendants failed to train their agents and employees on how to appropriately process and follow up on DCF findings, criminal charges and complaints, and IAD complaints and findings.

418.    DCF Defendants failed to train their agents and employees on how to appropriately document and report on their investigations and findings.

419.    DCF Defendants failed to supervise their agents and employees responsible for investigating complaints of misconduct against police officers.

420.    DCF Defendants failed to supervise their agents and employees responsible for investigating complaints of sexual abuse.

421.    DCF Defendants failed to supervise their agents and officers responsible for documenting and reporting on their investigations and findings.

422.    DCF Defendants failed to supervise their agents and employees responsible for implementing and ensuring compliance with DCF rules, policies, and procedures.

423.    DCF Defendants acted intentionally and with deliberate indifference in their screening, training, and supervision of their agents and employees.

424.    DCF Defendants disregarded the known or obvious consequence that DCF's deficient training in investigating and disciplining police misconduct would and did cause Rose to violate

Plaintiffs' constitutional rights.

425.    DCF Defendants knew or reasonably should have known that their conduct and the conduct of their subordinate officers would result in a violation of Plaintiffs' rights.

426.    DCF Defendants knew or reasonably should have known that Rose was engaging in the sexual abuse of minors and that Rose's conduct would result in a violation of Plaintiffs' rights.

427.    DCF Defendants' actions or inactions were done intentionally and with deliberate indifference to the consequences and that conduct was so closely related to the deprivation of the Plaintiffs' rights that it caused Plaintiffs' injury.

428.    DCF Defendants knew or should have known that their screening, training, and supervision was not adequate and that more training was needed to avoid likely constitutional violations.

429.    DCF Defendants' failure to adequately screen, train, and supervise their agents and employees resulted in the violation of the constitutional rights of their citizens and the rights of Plaintiffs, in particular.

430.    DCF Defendants' failure to adequately screen, train, and supervise their agents and employees as set forth herein resulted in employees untrained in detecting and investigating sexual abuse and supervisors who failed to implement corrective measures including, but not limited to, recommending criminal charges, restraining orders, and therapy or rehabilitation.

431.    DCF Defendants' failures to adequately screen, train, and supervise their agents and employees as set forth herein, resulted in an inadequate investigation, response, and reporting of Rose's misconduct, which allowed Rose to continue working as a police officer; avoid criminal charges, incarceration, restraining orders, therapy or rehabilitation, and child custody restrictions; and continue sexually abusing minors, including John Doe and Jane Doe.

432.    Through the acts and omissions described herein, DCF Defendants deprived Plaintiffs of their clearly established rights under the Fourteenth Amendment to the United States Constitution and enforceable through the Due Process Clause of the Fourteenth Amendment to bodily integrity and to be free from deprivation of liberty without due process of law in violation of 42 U.S.C. § 1983.

433.    DCF Defendants' conduct was reprehensible, shocking to the conscience, and offensive to all standards of common decency, which clearly rises to the threshold level of callous disregard of Plaintiffs' substantive due process rights.

434.    DCF Defendants acted with sufficient malice, evil motive or intent, involved reckless, callous indifference, and conscious disregard of Plaintiffs' federally protected constitutional rights for punitive damages to issue under 42 U.S.C. §§ 1983 and 1988.

435.    As a direct and proximate result of these violations, Plaintiffs suffered and will continue to

suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

### Count 9
### Violation of the Fourteenth Amendment, 42 U.S.C. § 1983 –
### Supervisory Liability
### (DCF Defendants)

436.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

437.    At all relevant times, DCF Defendants were employed by the Commonwealth of Massachusetts and acted "under color of state law" within the meaning of 42 U.S.C. § 1983.

438.    DCF Defendants failed to supervise the agents and employees under their command and authorized or cooperated in the subordinates' actions or inactions.

439.    DCF Defendants failed to supervise agents and employees under their command and authorized or cooperated in the subordinates' investigation, response, reporting, and documenting of the Rose matter.

440.    DCF Defendants failed to supervise agents and employees under their command and authorized or cooperated in the subordinates' failure to ensure Rose's compliance with the Court Ordered Restraining Order preventing Rose's contact with Plaintiffs.

441.    DCF Defendants failed to supervise agents and employees under their command and authorized or cooperated in the subordinates' failure to interview the BPPA agents involved in obtaining the Affidavits of John Doe and Frances Rose.

442.    DCF Defendants failed to supervise agents and employees under their command and authorized or cooperated in the failure to interview John Doe or Frances Rose after receiving the Affidavits of John Doe and Frances Rose.

443.    DCF Defendants failed to supervise agents and employees under their command and authorized or cooperated in the subordinates' failure to appropriately record and report on its investigations and findings.

444.    DCF Defendants' failure to supervise resulted in an inadequate investigation, response, reporting, and disciplining of Rose's misconduct, which directly led to Rose continuing to work as a police officer; avoiding criminal charges, incarceration, restraining orders, therapy or rehabilitation, and child custody restrictions; and sexually abusing minors, including John Doe and Jane Doe.

445.   DCF Defendants knew or reasonably should have known that their conduct and the conduct of their subordinates would result in a violation of Plaintiffs' rights.

446.   DCF Defendants knew or reasonably should have known that Rose was engaging in the sexual abuse of minors and that Rose's conduct would result in a violation of Plaintiffs' rights.

447.   DCF Defendants' actions or inactions were done intentionally and with deliberate indifference to the consequences and that conduct was so closely related to the deprivation of the Plaintiffs' rights that it caused Plaintiffs' injury.

448.   Through the acts and omissions described herein, DCF Defendants deprived Plaintiffs of their clearly established rights under the Fourteenth Amendment to the United States Constitution and enforceable through the Due Process Clause of the Fourteenth Amendment to bodily integrity and to be free from deprivation of liberty without due process of law in violation of 42 U.S.C. § 1983.

449.   DCF Defendants' conduct was reprehensible, shocking to the conscience, and offensive to all standards of common decency, which clearly rises to the threshold level of callous disregard of Plaintiff's substantive due process rights.

450.   DCF Defendants acted with sufficient malice, evil motive or intent, involved reckless, callous indifference, and conscious disregard of Plaintiffs' federally protected constitutional rights for punitive damages to issue under 42 U.S.C. §§ 1983 and 1988.

451.   As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 10
### Violation of the Fourteenth Amendment – 42 U.S.C. § 1983
### Affirmative Conduct/State-Created Danger
### (DCF Defendants)

452.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

453.   At all relevant times, DCF Defendants were employed by the Commonwealth of Massachusetts and acted "under color of state law" within the meaning of 42 U.S.C. § 1983.

454.   DCF Defendants knew that Rose was engaging in sexual abuse of one or more minors, as described herein and that Plaintiffs were in danger.

455.   DCF Defendants engaged in affirmative conduct that placed Plaintiffs in danger of

physical, sexual, and emotional abuse by inadequately interviewing Plaintiff, Jane Doe, including conducting the interview in front of Frances Rose and one or more of the Child Victims.

456. DCF Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by conducting an inadequate interview of John Doe.

457. DCF Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by inadequately interviewing one or more of the Child Victims including conducting the interview in front of Frances Rose.

458. DCF Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by conducting an inadequate interview of Frances Rose.

459. DCF Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by deciding not to conduct an interview of Rose.

460. DCF Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by conducting no interview of the BPD and BPPA officers and BPPA Defendants involved in the investigation, complaints, and arrest of Rose.

461. DCF Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by agreeing to vacate the Court Restraining Order against Rose.

462. DCF Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by deciding not to remove Plaintiffs from the care and custody of Rose even though they knew or should have known that Plaintiffs were being abused.

463. DCF Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by conducting investigations that were inadequate and incomplete and by inadequately documenting any findings.

464. DCF Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by withholding facts it knew regarding Rose's pattern of improper behavior and conduct including, but not limited to, the reported prior sexual abuse of Child Victim 3.

465. DCF Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by allowing Rose to have custody and unsupervised contact with John Doe and Jane Doe after learning in or about 1991 or 1992 and again in 1995 that Rose was a potential threat to minors.

466. DCF Defendants engaged in affirmative conduct that placed Plaintiffs in danger of physical, sexual, and emotional abuse by adopting, maintaining, and following policies and procedures that were ineffective at protecting Plaintiffs from abuse.

467.   DCF Defendants' actions as set forth herein created and enhanced a dangerous and unsafe situation to Plaintiffs and caused them to be sexually assaulted.

468.   DCF Defendants' actions as set forth herein resulted in an inadequate investigation, response, and reporting of Rose's sexual abuse, which directly led to Rose continuing to work as a police officer; avoiding criminal charges, incarceration, restraining orders, therapy or rehabilitation, and child custody restrictions; and sexually abusing minors, including John Doe and Jane Doe.

469.   DCF Defendants' conduct was reprehensible, shocking to the conscience, and offensive to all standards of common decency, which clearly rises to the threshold level of deliberate indifference of Plaintiffs' substantive due process rights.

470.   DCF Defendants performed multiple acts of indifference to a rising risk of acute and severe danger.

471.   DCF Defendants knew that Plaintiffs were in danger and at a substantial risk of serious harm, because it knew that Rose was engaging in the sexual abuse of John Doe, that Rose was the subject of at least two complaints of sexual abuse of one or more minors, that Rose had custody and unsupervised contact with John Doe and Jane Doe, that Rose had a propensity for violence, and that Rose was in a position of authority with a police badge and gun.

472.   As a direct result of the DCF Defendants' actions ensuring that Rose would not be held accountable for his crimes, John Doe and Jane Doe were made more vulnerable to be molested by Rose.

473.   DCF Defendants' conduct made it foreseeable that Rose would continue to molest minors, including John Doe and Jane Doe.

474.   Through the acts described herein, DCF Defendants deprived Plaintiffs of their clearly established rights under the Fourteenth Amendment to the United States Constitution and enforceable through the Due Process Clause of the Fourteenth Amendment to bodily integrity and to be free from deprivation of liberty without due process of law, in violation of 42 U.S.C. § 1983.

475.   DCF Defendants acted with sufficient malice, evil motive or intent, involved reckless, deliberate indifference, and conscious disregard of Plaintiffs' federally protected constitutional rights for punitive damages to issue under 42 U.S.C. §§ 1983 and 1988.

476.   As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 11
### Conspiracy to Interfere with Civil Rights Act – 42 U.S.C. § 1985
### (City of Boston, BPD Defendants)

477.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

478.    The City and BPD Defendants conspired to deprive Plaintiffs, by force, intimidation, or threat, of their fundamental right to be free from deprivation of liberty and right to bodily integrity without due process of law.

479.    The City and BPD Defendants conspired to deter Plaintiffs, by force, intimidation, or threat, from testifying freely, fully, and truthfully about Rose's sexual abuse.

480.    By the acts and omissions described herein, the City and BPD Defendants deprived Plaintiffs of their clearly established right to bodily integrity and to be free from deprivation of liberty as guaranteed under federal and state law in violation of the Civil Rights Act, 42 U.S.C. § 1985.

481.    As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 12
### Conspiracy to Interfere with Civil Rights Act – 42 U.S.C. § 1985
### (DCF Defendants)

482.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

483.    DCF Defendants' conspired to deprive Plaintiffs, by force, intimidation, or threat of their fundamental right to be free from deprivation of liberty and right to bodily integrity without due process of law.

484.    DCF Defendants conspired to deter Plaintiffs, by force, intimidation, or threat, from testifying freely, fully, and truthfully about Rose's sexual abuse.

485.    By the acts and omissions described herein, the DCF Defendants deprived Plaintiffs of their clearly established right to bodily integrity and to be free from deprivation of liberty as guaranteed under federal and state law in violation of the Civil Rights Act, 42 U.S.C. § 1985.

486.    As a direct and proximate result of these violations, Plaintiffs suffered and will continue to

suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

**Count 13**
**Conspiracy to Interfere with Civil Rights Act – 42 U.S.C. § 1985**
**(BPPA, BPPA Defendants)**

487.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

488.    BPPA and BPPA Defendants conspired to deprive Plaintiffs, by force, intimidation, or threat of their fundamental right to be free from deprivation of liberty and right to bodily integrity without due process of law.

489.    BPPA and BPPA Defendants conspired to deter Plaintiffs, by force, intimidation, or threat, from testifying freely, fully, and truthfully about Rose's sexual abuse.

490.    By the acts and omissions described herein, BPPA and BPPA Defendants deprived Plaintiffs of their clearly established right to bodily integrity and to be free from deprivation of liberty as guaranteed under federal and state law in violation of the Civil Rights Act, 42 U.S.C. § 1985.

491.    As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

**Count 14**
**Conspiracy to Interfere with Civil Rights Act – 42 U.S.C. § 1985**
**(Patrick Rose, Sr.)**

492.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

493.    Rose conspired to deprive Plaintiffs, by force, intimidation, or threat of their fundamental right to be free from deprivation of liberty and right to bodily integrity without due process of law.

494.    Rose conspired to deter Plaintiffs, by force, intimidation, or threat, from testifying freely, fully, and truthfully as to Rose's sexual abuse.

495.    By the acts and omissions described herein, Rose deprived Plaintiffs of their clearly established right to bodily integrity and to be free from deprivation of liberty as guaranteed under federal and state law in violation of the Civil Rights Act, 42 U.S.C. § 1985.

496.    As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

### Count 15
### Conspiracy to Interfere with Civil Rights Act – 42 U.S.C. § 1985
### (Frances Rose)

497.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

498.    Frances Rose conspired to deprive Plaintiffs, by force, intimidation, or threat of their fundamental right to be free from deprivation of liberty and right to bodily integrity without due process of law.

499.    Frances Rose conspired to deter Plaintiffs, by force, intimidation, or threat, from testifying freely, fully, and truthfully as to Rose's sexual abuse.

500.    By the acts and omissions described herein, Frances Rose deprived Plaintiffs of their clearly established right to bodily integrity and to be free from deprivation of liberty as guaranteed under federal and state law in violation of the Civil Rights Act, 42 U.S.C. § 1985.

501.    As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

### Count 16
### Violation of Massachusetts Civil Rights Act – M.G.L. c. 12 §11H & §11I
### (City of Boston, BPD Defendants)

502.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

503.    The City and BPD Defendants' threat, intimidation, and coercion interfered with Plaintiffs' fundamental right to be free from deprivation of liberty and right to bodily integrity without due process of law.

504.    By the acts and omissions described herein, the City and BPD Defendants deprived Plaintiffs of their clearly established right to bodily integrity and to be free from deprivation of liberty as guaranteed under federal and state law in violation of the Massachusetts Civil Rights Act, M.G.L. c. 12 §11H & §11I.

505.    As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 17
### Violation of Massachusetts Civil Rights Act - M.G.L. c. 12 §11H & §11I
### (DCF Defendants)

506.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

507.    DCF Defendants' threat, intimidation, and coercion interfered with Plaintiffs' fundamental right to be free from deprivation of liberty and right to bodily integrity without due process of law.

508.    By the acts and omissions described herein, DCF Defendants deprived Plaintiffs of their clearly established right to bodily integrity and to be free from deprivation of liberty as guaranteed under federal and state law in violation of the Massachusetts Civil Rights Act, M.G.L. c. 12 §11H & §11I.

509.    As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 18
### Violation of Massachusetts Civil Rights Act - M.G.L. c. 12 §11H & §11I
### (BPPA, BPPA Defendants)

510.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

511.    BPPA and BPPA Defendants' threat, intimidation, and coercion interfered with Plaintiffs' fundamental right to be free from deprivation of liberty and right to bodily integrity without due process of law.

512.   By the acts and omissions described herein, BPPA and BPPA Defendants deprived Plaintiffs of their clearly established right to bodily integrity and to be free from deprivation of liberty as guaranteed under federal and state law in violation of the Massachusetts Civil Rights Act, M.G.L. c. 12 §11H & §11I.

513.   As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 19
### Violation of Massachusetts Civil Rights Act - M.G.L. c. 12 §11H & §11I
### (Patrick Rose, Sr.)

514.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

515.   Rose's threat, intimidation, and coercion interfered with Plaintiffs' fundamental right to be free from deprivation of liberty and right to bodily integrity without due process of law.

516.   By the acts and omissions described herein, Rose deprived Plaintiffs of their clearly established right to be free from deprivation of liberty without due process of law and right to bodily integrity as guaranteed under federal and state law in violation of the Massachusetts Civil Rights Act, M.G.L. c. 12 §11H & §11I.

517.   As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 20
### Violation of Massachusetts Civil Rights Act - M.G.L. c. 12 §11H & §11I
### (Frances Rose)

518.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

519.   Frances Rose's threat, intimidation, and coercion interfered with Plaintiffs' fundamental right to be free from deprivation of liberty and right to bodily integrity without due process of law.

520.     By the acts and omissions described herein, Frances Rose deprived Plaintiffs of their clearly established right to bodily integrity and to be free from deprivation of liberty as guaranteed under federal and state law in violation of the Massachusetts Civil Rights Act, M.G.L. c. 12 §11H & §11I.

521.     As a direct and proximate result of these violations, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

**Count 21**
**Sexual Assault and Battery of a Minor**
**(Patrick Rose, Sr.)**

522.     Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

523.     From at least 1990 through at least 1999, Rose repeatedly and on numerous occasions, engaged in unpermitted, harmful, and offensive sexual acts upon the minor person of Plaintiffs, thereby committing an assault and battery.

524.     As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

**Count 22**
**Negligence, Neglect and Abuse**
**(Frances Rose)**

525.     Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

526.     Frances Rose owed Plaintiffs a duty to exercise ordinary and reasonable care in the care and supervision of Plaintiffs.

527.     These duties included, but were not limited to, taking all reasonable precautions to provide Plaintiffs with basic physical, medical, and emotional needs; keeping Plaintiffs safe; providing Plaintiffs with appropriate supervision; protecting Plaintiffs from physical, emotional, and sexual abuse; seeking medical care for Plaintiffs; preventing contact with Rose who Frances Rose knew or should have known was abusing Plaintiffs; and properly reporting Rose's abuse of Plaintiffs and the Child Victims to the appropriate government authorities.

528.   Based upon Frances Rose's actions and inactions including, but not limited to, her neglect and abuse of Plaintiffs as set forth herein, including failing to provide a safe and supervised environment for Plaintiffs thereby allowing the sexual abuse of Plaintiffs, Frances Rose failed to exercise the duty of care owed to Plaintiffs.

529.   Frances Rose knew or should have known that Rose was sexually abusing Plaintiffs.

530.   As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

**Count 23**
**Negligence**
**(City of Boston, BPD Defendants)**

531.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

532.   The City and BPD Defendants owed Plaintiffs a duty to exercise ordinary and reasonable care.

533.   These duties included, but were not limited to taking all reasonable precautions to provide a safe environment for Plaintiffs; protect Plaintiffs from physical, emotional and sexual abuse; properly investigate and report the abuse of Plaintiffs to the appropriate government authorities; prevent the conduct complained of herein; and effectively discipline and terminate an employee found to have engaged in inappropriate conduct with a minor.

534.   The City and BPD Defendants knew or reasonably should have known that Rose was engaging in sexual abuse of one or more minors, as described herein.

535.   The City and BPD Defendants knew or reasonably should have known that Rose was unfit to perform the work of a police officer.

536.   The City and BPD Defendants knew or reasonably should have known that Rose was unfit to supervise or have unsupervised contact with Plaintiffs.

537.   The City and BPD Defendants knew or reasonably should have known that John Doe and Jane Doe were in danger.

538.   The City and BPD Defendants failed to take appropriate action after learning in 1995 that Rose was a potential threat to minors, including but not limited to, Plaintiffs.

539.    The City and BPD Defendants failed to adequately investigate the complaints and take protective action concerning Plaintiffs.

540.    The City and BPD Defendants failed to take sufficient steps to discipline or terminate Rose based on the IAD's sustained finding of misconduct.

541.    The City and BPD Defendants allowed Rose to remain in his role as a Boston Police officer when they knew or reasonably should have known that Rose was engaging in sexual abuse of one or more minors, as described herein.

542.    The City and BPD Defendants failed to provide independent oversight of the IAD to identify and address these missteps.

543.    The City and BPD Defendants failed to establish, maintain, and follow clear policies and procedures to protect citizens of Boston who they knew or reasonably should have known were in danger, including but not limited to Plaintiffs.

544.    The City and BPD Defendants failed to establish, maintain, and follow clear policies and procedures to ensure a thorough and independent investigation and response by the BPD upon notice of a complaint.

545.    Based on their actions as set forth herein, the City and BPD Defendants failed to exercise their duty of care owed to Plaintiffs.

546.    The City and BPD Defendants' deficient response created and perpetuated an unsafe situation.

547.    The City and BPD Defendant's deficient response caused and contributed to Plaintiffs' harm.

548.    The City and BPD Defendants acted in bad faith, with malice and corruption.

549.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including but not limited to stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

### Count 24
### Negligence
### (DCF Defendants)

550.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

551.    DCF Defendants owed Plaintiffs a duty to exercise ordinary and reasonable care.

552.    These duties included, but were not limited to taking all reasonable precautions to provide a properly supervised and safe environment for Plaintiffs; protect Plaintiffs from physical, emotional and sexual abuse; properly investigate and report the abuse of Plaintiffs and one or more of the Child Victims to the appropriate government authorities; prevent the conduct complained of herein; and effectively discipline and terminate an employee found to have engaged in inappropriate conduct with one or more minors.

553.    DCF Defendants knew or reasonably should have known that Rose was engaging in sexual abuse of one or more minors, as described herein.

554.    DCF Defendants knew or reasonably should have known that Rose was unfit to supervise or have unsupervised contact with Plaintiffs.

555.    DCF Defendants knew or reasonably should have known that Plaintiffs were in danger.

556.    DCF Defendants failed to take appropriate action after learning in or about 1991 or 1992 and again in 1995 that Rose was a potential threat to minors, including but not limited to, Plaintiffs.

557.    DCF Defendants failed to adequately investigate the complaints and take protective action concerning Plaintiffs.

558.    DCF Defendants failed to disclose facts it knew regarding Rose's pattern of improper behavior and conduct including but not limited to the reported prior sexual abuse of one of the Child Victims.

559.    DCF Defendants failed to establish, maintain, and follow clear policies and procedures to protect minors including Plaintiffs from abuse.

560.    DCF Defendants failed to establish, maintain, and follow clear policies and procedures to ensure a thorough and independent investigation and response upon notice of a complaint of abuse.

561.    Based on their actions as set forth herein, DCF Defendants failed to exercise their duty of care owed to Plaintiffs.

562.    DCF Defendants' deficient response created and perpetuated a risk and an unsafe situation to Plaintiffs.

563.    DCF Defendants' deficient response caused and contributed to Plaintiffs' harm.

564.    DCF Defendants acted in bad faith, with malice and corruption.

565.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including but not limited to stress, anxiety, panic attacks, fear, loss of sleep, depression,

suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

**Count 25**
**Negligence**
**(BPPA, BPPA Defendants)**

566.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

567.    BPPA and BPPA Defendants owed Plaintiffs a duty to exercise ordinary and reasonable care.

568.    These duties included, but are not limited to, taking all reasonable precautions to protect Plaintiffs from sexual abuse; properly investigate and report the abuse of Plaintiffs to the appropriate government authorities; prevent the conduct complained of herein; and immediately terminate membership of a member found to have engaged in inappropriate conduct with a minor.

569.    BPPA and BPPA Defendants knew or reasonably should have known that Rose was engaging in sexual abuse of one or more minors, as described herein.

570.    BPPA and BPPA Defendants knew or reasonably should have known that Rose was unfit to perform the work of a police officer.

571.    The City and BPD Defendants knew or reasonably should have known that Rose was unfit to supervise or have unsupervised contact with Plaintiffs.

572.    The City and BPD Defendants knew or reasonably should have known that Plaintiffs were in danger.

573.    BPPA and BPPA Defendants failed to adequately investigate the complaints of abuse against Rose.

574.    BPPA and BPPA Defendants failed to take appropriate action after learning that Rose was a potential threat to minors, including, but not limited to, Plaintiffs.

575.    BPPA and BPPA Defendants allowed Rose to maintain his BPPA membership and to serve as President of BPPA when they knew or reasonably should have known that Rose was engaging in sexual abuse of one or more minors, as described herein.

576.    Upon information and belief, BPPA and BPPA Defendants prepared or assisted in the preparation of an Affidavit of the victim and a minor, John Doe, when they represented the accused Rose.

577.    Based on their actions as set forth above, BPPA and BPPA Defendants failed to exercise

their duty of care owed to Plaintiffs.

578.    BPPA and BPPA Defendants' deficient response created and perpetuated an unsafe situation.

579.    BPPA and BPPA Defendants' deficient response caused and contributed to Plaintiffs' harm.

580.    BPPA and BPPA Defendants' deficient response made it foreseeable that Rose would continue to molest minors, including John Doe and Jane Doe.

581.    BPPA and BPPA Defendants acted with conscious and/or deliberate indifference that Rose would continue to sexually assault minors, including John Doe and Jane Doe, as a result of their failure to hold him accountable for his acts.

582.    BPPA and BPPA Defendants knew that John Doe and Jane Doe were particularly at risk for harm when they failed to hold Rose accountable, given their relationship to Rose and the reports of other sex abuse by Rose against multiple minor victims.

583.    As a direct result of the BPPA and BPPA Defendants' collective actions, John Doe and Jane Doe were made more vulnerable to be molested by Rose after they ensured that Rose would never be held responsible for his crimes.

584.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

**Count 26**
**Negligent Hiring, Training, Supervision, and Retention**
**(City of Boston, BPD Defendants)**

585.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

586.    The City and BPD Defendants owed Plaintiffs a duty to exercise ordinary and reasonable care.

587.    These duties included, but were not limited to, taking all reasonable precautions to ensure that police officers, supervisors, and staff members have the appropriate education, training, experience, skills, character, and background to work in their capacity as a police officer, supervisor, and staff member of the City and BPD; ensure that police officers, supervisors, and staff members have the appropriate education, training, experience, skills, character, and background to properly handle complaints of sexual abuse or inappropriate conduct with a minor; provide training

to police officers, supervisors, and staff members on sexual abuse and inappropriate conduct with a minor; provide the necessary training to ensure that police officers, supervisors, and staff members are able to identify sexual abuse or inappropriate conduct with a minor, identify victims of sexual abuse or inappropriate conduct with a minor, and identify perpetrators of sexual abuse or inappropriate conduct with a minor; provide the necessary training to ensure that police officers, supervisors, and staff members are able to appropriately handle complaints and investigations of sexual abuse and inappropriate conduct with a minor; supervise police officers, supervisors, and staff members to ensure that they properly effectuate and enforce the City and BPD policies, procedures, and regulations; supervise the actions of police officers, supervisors, and staff members to ensure that their actions are appropriate and in conformity with applicable laws, policies, and regulations; and immediately terminate any employee found to have engaged in sexual abuse or inappropriate conduct with a minor.

588.    Based on their actions as set forth herein, the City and BPD Defendants breached their duties of care in hiring, training, supervising, and retaining police officers and employees, including, but not limited to, Rose.

589.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

### Count 27
### Negligent Hiring, Training, Supervision, and Retention
### (DCF Defendants)

590.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

591.    DCF Defendants owed Plaintiffs a duty to exercise ordinary and reasonable care.

592.    These duties included, but were not limited to, taking all reasonable precautions to ensure that DCF employees and staff members have the appropriate education, training, experience, skills, character, and background to properly handle complaints of sexual abuse or inappropriate conduct with a minor; provide training to DCF employees and staff members on sexual abuse and inappropriate conduct with a minor; provide the necessary training to ensure that DCF employees and staff members are able to identify sexual abuse or inappropriate conduct with a minor, identify victims of sexual abuse or inappropriate conduct with a minor, and identify perpetrators of sexual abuse or inappropriate conduct with a minor; provide the necessary training to ensure that DCF employees and staff members are able to appropriately handle complaints and investigations of sexual abuse and inappropriate conduct with a minor; supervise DCF employees and staff members to ensure that they properly effectuate and enforce DCF policies, procedures, and regulations; and supervise the actions of DCF employees and staff members to ensure that their actions are appropriate and in conformity with applicable laws, policies, and regulations.

593.     Based on their actions as set forth herein, DCF Defendants breached their duties of care in hiring, training, supervising, and retaining DCF employees and staff members.

594.     As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

**Count 28**
**Gross Negligence**
**(City of Boston, BPD Defendants)**

595.     Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

596.     The City and BPD Defendants owed Plaintiffs a duty to exercise ordinary and reasonable care.

597.     Based upon the willful, wanton, and grossly negligent acts and omissions as set forth herein, and the reckless disregard for the safety of others, the City and BPD Defendants breached their duties of care to Plaintiffs.

598.     As a direct and proximate result of the gross negligence and wrongdoing as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including but not limited to stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

**Count 29**
**Gross Negligence**
**(DCF Defendants)**

599.     Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

600.     DCF Defendants owed Plaintiffs a duty to exercise ordinary and reasonable care.

601.     Based upon the willful, wanton, and grossly negligent acts and omissions as set forth herein, and the reckless disregard for the safety of others, DCF Defendants breached their duties of care to Plaintiffs.

602.     As a direct and proximate result of the gross negligence and wrongdoing as detailed herein,

Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including but not limited to stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

**Count 30**
**Gross Negligence**
**(Frances Rose)**

603.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

604.   Frances Rose owed Plaintiffs a duty to exercise ordinary and reasonable care.

605.   Based upon the willful, wanton, and grossly negligent acts and omissions as set forth herein, Frances Rose breached her duties of care to Plaintiffs.

606.   As a direct and proximate result of the gross negligence and wrongdoing as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

**Count 31**
**Intentional Infliction of Emotional Distress**
**(City of Boston, BPD Defendants)**

607.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

608.   The City and BPD Defendants had knowledge or a reasonable basis to know that Rose abused, or posed a threat to Plaintiffs, yet failed to take action to protect Plaintiffs and permitted Rose to engage in inappropriate behavior without consequences.

609.   The actions and inactions were extreme or outrageous, beyond the bounds of decency, and utterly intolerable in a civilized community.

610.   As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 32
### Intentional Infliction of Emotional Distress
### (DCF Defendants)

611.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

612.    DCF Defendants had knowledge or a reasonable basis to know that Rose abused, or posed a threat to Plaintiffs, yet failed to take action to protect Plaintiffs and permitted Rose to engage in inappropriate behavior without consequences.

613.    The actions and inactions were extreme or outrageous, beyond the bounds of decency, and utterly intolerable in a civilized community.

614.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 33
### Intentional Infliction of Emotional Distress
### (BPPA, BPPA Defendants)

615.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

616.    BPPA and BPPA Defendants had knowledge or a reasonable basis to know that Rose abused, or posed a threat to Plaintiffs, yet failed to take action to protect Plaintiffs and permitted Rose to engage in inappropriate behavior without consequences.

617.    The actions and inactions were extreme or outrageous, beyond the bounds of decency and utterly intolerable in a civilized community.

618.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 34
### Intentional Infliction of Emotional Distress
### (Patrick Rose, Sr.)

619.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

620.   Based upon the acts set forth above, Rose engaged in conduct intended to inflict emotional distress, or which he knew or should have known that emotional distress was the likely result of said conduct.

621.   Rose's actions were extreme or outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.

622.   As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 35
## Intentional Infliction of Emotional Distress
## (Frances Rose)

623.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

624.   Based upon the acts set forth above, Frances Rose engaged in conduct intended to inflict emotional distress, or which she knew or should have known that emotional distress was the likely result of said conduct.

625.   Frances Rose's actions or inactions were extreme or outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

626.   As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 36
## Negligent Infliction of Emotional Distress
## (City of Boston, BPD Defendants)

627.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

628.   The City and BPD Defendants owed Plaintiffs a duty to exercise ordinary and reasonable

care.

629.   Based on their actions as set forth herein, the City and BPD Defendants failed to exercise their duty of care owed to Plaintiffs.

630.   The City and BPD Defendants had knowledge or a reasonable basis to know that Rose posed a threat to Plaintiffs, yet failed to take action to protect Plaintiffs.

631.   As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer emotional distress, manifested by physical symptomology, which a reasonable person would have suffered under the circumstances.

632.   As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including but not limited to stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 37
## Negligent Infliction of Emotional Distress
## (DCF Defendants)

633.   Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

634.   DCF Defendants owed Plaintiffs a duty to exercise ordinary and reasonable care.

635.   Based on their actions as set forth herein, DCF Defendants failed to exercise the duty of care owed to Plaintiffs.

636.   DCF Defendants had knowledge or a reasonable basis to know that Rose posed a threat to Plaintiffs, yet failed to take action to protect Plaintiffs.

637.   As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer emotional distress, manifested by physical symptomology, which a reasonable person would have suffered under the circumstances.

638.   As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including but not limited to stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 38

## Negligent Infliction of Emotional Distress
### (BPPA, BPPA Defendants)

639.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

640.    BPPA and BPPA Defendants owed Plaintiffs a duty to exercise ordinary and reasonable care.

641.    Based on their actions as set forth herein, BPPA and BPPA Defendants failed to exercise their duty of care owed to Plaintiffs.

642.    BPPA and BPPA Defendants had knowledge or a reasonable basis to know that Rose posed a threat to Plaintiffs yet failed to take action to protect Plaintiffs.

643.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer emotional distress, manifested by physical symptomology, which a reasonable person would have suffered under the circumstances.

644.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including but not limited to stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 39
## Negligent Infliction of Emotional Distress
### (Patrick Rose, Sr.)

645.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

646.    Rose owed Plaintiffs a duty to exercise ordinary and reasonable care in the care and supervision of Plaintiffs.

647.    Based on his actions as set forth herein, Rose failed to exercise his duty of care owed to Plaintiffs.

648.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer emotional distress, manifested by physical symptomology, which a reasonable person would have suffered under the circumstances.

649.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep,

depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 40
### Negligent Infliction of Emotional Distress
### (Frances Rose)

650.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

651.    Frances Rose owed Plaintiffs a duty to exercise ordinary and reasonable care in the care and supervision of Plaintiffs.

652.    Based on her actions as set forth herein, Frances Rose failed to exercise her duty of care owed to Plaintiffs.

653.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer emotional distress, manifested by physical symptomology, which a reasonable person would have suffered under the circumstances.

654.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 41
### Violation of M.G.L. c. 119 § 51A
### (City of Boston, BPD Defendants)

655.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

656.    The City and BPD Defendants have a duty and are obligated to comply with M.G.L. c. 119 § 51A.

657.    The City and BPD Defendants knew or had reasonable cause to believe that Rose was engaging in inappropriate acts or abuse of a minor yet failed to properly report this abuse to appropriate government authorities in violation of Mass. Gen. Laws c.119 § 51A and other applicable laws and regulations.

658.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep,

depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 42
## Civil Conspiracy
## (BPPA, BPPA Defendants)

659.    Plaintiffs repeat, reallege, and incorporate by reference each and every allegation set forth herein, as if set forth fully below.

660.    Through BPPA and the BPPA Defendants' actions and omissions set forth herein, BPPA and the BPPA Defendants engaged in tortious conduct in which they acted in concert with others to accomplish an unlawful purpose by means of coercion.

661.    As a direct and proximate result of these acts and omissions, and as detailed herein, Plaintiffs suffered and will continue to suffer pain and suffering, mental anguish and emotional distress, including, but not limited to, stress, anxiety, panic attacks, fear, loss of sleep, depression, suicidal thoughts, loss of interest in doing things, loss of enjoyment of life, loss of earnings and earning capacity, past and future medical expenses, past and future psychological treatment and therapy, and other general and compensatory damages.

## Count 43
## Loss of Consortium
## (All Defendants)

662.    Plaintiff, James Doe, repeats, realleges, and incorporates by reference each and every allegation set forth herein, as if set forth fully below.

663.    Plaintiff, James Doe is married to Plaintiff, Jane Doe, and is and has been entitled to society, services, affection, consortium, and companionship of Plaintiff, Jane Doe.

664.    As a direct and proximate result of the acts and omissions as detailed herein, Plaintiff, James Doe suffered and will continue to suffer loss of society, services, affection, consortium, and companionship of Plaintiff, Jane Doe.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor and for the following:

1.    Award compensatory damages against Defendants in an amount to be determined at trial, together with interest, costs, and reasonable attorney's fees;

2.    Award punitive damages against Defendants in an amount to be determined at trial, together with interest, costs, and reasonable attorney's fees;

3.      Award Plaintiffs' attorneys' fees, costs, and interest as permitted by law including pursuant to 42 U.S.C. §§ 1983 and 1988;

4.      Issue a writ of attachment, *ex parte*, on the real estate currently held in the name of Patrick Rose, Sr. located at 46 Potomac Street, West Roxbury, Suffolk County Massachusetts, pursuant to Mass Gen. Laws. Ch.109A § 8(a)(2), and against all real property standing in the name of Defendant Rose in the amount of One Million Dollars ($1,000,000.00) as security for the judgement the Plaintiffs expect to recover;

5.      Issue a preliminary injunction, *ex parte*, immediately and a permanent injunction restraining and enjoining the Defendant, Patrick Rose, Sr. and Frances Rose, and their agents and attorneys from transferring, conveying encumbering, assigning, pledging, or otherwise disposing of or wasting, all or part of any revenues or assets in any way, with the exception of satisfying the Defendant's current ordinary and reasonable living expenses;

6.      Appropriate injunctive relief, including the implementation of City, BPD, and DCF training protocols to prevent and effectively discipline the conduct complained of herein;

7.      Issue an Order of Impoundment relative to all pleadings, discovery, motions, memoranda, orders of the Court, any and all pretrial or trial materials and/or exhibits;

8.      Issue a Protective Order against all parties in this action and their counsel prohibiting the disclosure of any information relevant to this matter to any third party, excluding communications with counsel and counsel's employees and /or agents, law enforcement personnel assisting with the investigation of the criminal and civil matter, physicians, therapists; and

9.      Order further monetary, injunctive, and declaratory relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury as to all issues in this case.

PLAINTIFFS, JOHN DOE, JANE DOE, AND JAMES DOE,

*/s/ Janine D. Kutylo*

DATE: March 19, 2024

Patrick Driscoll, BBO# 669560
pdriscoll@boyleshaughnessy.com
Janine D. Kutylo, Esq. (BBO# 647662)
jkutylo@boyleshaughnessy.com
Boyle | Shaughnessy Law, P.C.
695 Atlantic Avenue, 11th Floor
Boston, MA  02111
T: 617-451-2000 | F: 617-451-5775

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants, as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those identified as non-registered participants on this 19th day of March, 2024.

*/s/ Janine D. Kutylo, Esq.*

_____

Patrick Driscoll, BBO# 669560
Janine D. Kutylo, BBO# 647662
Christopher W. Upperman, BBO# 711713