```
 1                   UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3    JOHN DOE, ET AL.,                    )
                                           )
 4                        Plaintiffs       )
                                           )  No. 1:23-cv-11294-FDS
 5    vs.                                   )
                                           )
 6    CITY OF BOSTON, ET AL.,               )
                                           )
 7                        Defendants.       )
                                           )
 8                                          )
                                           )
 9

10

11           BEFORE THE HONORABLE F. DENNIS SAYLOR, IV
                   UNITED STATES DISTRICT JUDGE
12                       MOTION HEARING

13

14

15
              John Joseph Moakley United States Courthouse
16                       Courtroom No. 4
                        One Courthouse Way
17                   Boston, Massachusetts 02210

18
                         January 29, 2024
19                          11:00 a.m.

20

21
                    Kristin M. Kelley, RPR, CRR
22                      Official Court Reporter
              John Joseph Moakley United States Courthouse
23                 One Courthouse Way, Room 3209
                     Boston, Massachusetts 02210
24                   E-mail: kmob929@gmail.com

25          Mechanical Steno - Computer-Aided Transcript
```

```
1    APPEARANCES:

2

3            Christopher William Upperman
             Janine D. Kutylo
4            Patrick Driscoll
             Boyle Shaughnessy Law PC
5            695 Atlantic Ave
             Boston, MA 02111
6            617-428-9632
             cupperman@boyleshaughnessy.com
7            for the Plaintiffs.

8

9            Edward F. Whitesell, Jr.
             Adam D. Johnson
10           City of Boston
             Law Department
11           1 City Hall Square
             Room 615
12           Boston, MA 02201
             617-635-4097
13           adam.johnson@boston.gov
             for Defendants.

14

15

             Thomas R Donohue
16           Brody, Hardoon, Perkins & Kesten, LLP
             265 Franklin Street
17           Ste 12th Floor
             Boston, MA 02110
18           617-880-7100
             tdonohue@bhpklaw.com
19           for the defendants.

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2          THE CLERK:  Court is now in session in Doe et al.
 3    versus City of Boston, et al., Civil Action 23-11294.
 4          As a reminder to all participants, any photography,
 5    recording or rebroadcasting of this court proceeding is
 6    prohibited and doing so may result in sanctions as deemed
 7    appropriate or necessary by the Court.
 8          Would counsel please introduce themselves for the
 9    record, starting with the plaintiff.
11:01 10        MR. DRISCOLL:  Good morning, your Honor.  Patrick
11    Driscoll on behalf of the plaintiffs, John Doe, James Doe and
12    Jane Doe.
13          THE COURT:  Good morning.
14          MS. KUTYLO:  Good morning, your Honor.  Janine Kutylo
15    on behalf of the plaintiffs.
16          THE COURT:  Good morning.
17          MR. UPPERMAN:  Good morning, your Honor.  Christopher
18    Upperman on behalf of the plaintiffs.
19          THE COURT:  Good morning.
11:01 20        MR. JOHNSON:  Good morning, your Honor.  Adam Johnson
21    on behalf of the City of Boston and the police departments.
22          THE COURT:  Good morning.
23          MR. WHITESELL:  Good morning, your Honor.  Edward
24    Whitesell, also on behalf of the City of Boston and the Boston
25    Police defendants.
```

```
 1              THE COURT:  Good morning.
 2              MR. KULEVICH:  Good morning, your Honor.  John
 3    Kulevich on behalf of defendant Frances Rose.
 4              THE COURT:  Good morning.
 5              MR. DONOHUE:  Good morning, your Honor.  Tom Donohue
 6    on behalf of the Boston Police Patrolman's Association and its
 7    former president Thomas Nee.
 8              THE COURT:  Good morning.  Is Mr. Keefe?
 9              MR. JOHNSON:  Your Honor, I actually spoke with
11:02 10  Mr. Keefe this morning.  He filed an answer so he's not part of
11    this proceeding.
12              THE COURT:  Okay.
13              MS. KUTYLO:  Your Honor, the plaintiffs are also
14    participating in the call.  Their screens are off and they're
15    listed here as John Doe and Doe, respectively.  If you'd like
16    them to take their mutes off and introduce themselves, I'm sure
17    they're happy to do so.
18              THE COURT:  No.  This is a legal hearing.  They're
19    doing the effective thing of sitting in the back of courtroom
11:02 20  and just doing it by Zoom.
21              All right.  This is a hearing on various motions to
22    dismiss.  Mr. Johnson, are you taking the lead here?
23              MR. JOHNSON:  Yes, your Honor.
24              THE COURT:  Go ahead.
25              MR. JOHNSON:  Your Honor, I guess the most appropriate
```

1  place to start would be the statute of limitation arguments in

2  my motion to dismiss on behalf of all my clients, as well as in

3  the reply briefs.

4        I think we're all in agreement that the plaintiffs are

5  pursuing the clause pursuant to Mass. General Law Chapter 260

6  Section 4C1/2, which creates a 35-year statute of limitations

7  for certain acts, supervisory acts, for sexual assault cases.

8        Unfortunately, in this case, that still does not

9  permit the plaintiffs to file a suit.  That statute would

11:03 10  already have expired.  If you look in the enacting statute, the

11  enacting language of this particular statute, which is the acts

12  of 2014, section, or Chapter 145, it creates two separate

13  categories:  First 35 years for the acts to allege to have

14  caused the injury or seven years of the time that the victims

15  discovered or reasonably should have discovered the injury.

16  Section 8 of this enabling act only permits the first section,

17  the 35-year statute of limitations, to apply for acts that

18  occurred after the effective date of that act, which was June

19  26 of 2014.

11:04 20        Along that same argument, I believe the plaintiffs in

21  their sur-reply argued that the discovery rule, Subsection 2,

22  would apply.  Unfortunately, again, I think the case law is

23  relatively clear that all of the facts are not necessary.  It's

24  not required that you have all of the acts for the discovery

25  rule to apply.  The discovery exception -- let me rephrase

        1   that.  The discovery exception doesn't apply because the
        2   plaintiffs knew about the injury, the plaintiffs knew about the
        3   abuse, the plaintiffs knew that the defendant, Patrick Rose,
        4   was not terminated from his employment.  Those are the only two
        5   factual allegations that I think are relevant here and,
        6   respectfully, I believe that the plaintiffs have missed the
        7   statute of limitations.

        8        I'm more than happy to go into any other arguments
        9   that the Court wants to hear or I can proceed to the second
11:05  10   most appropriate argument, which is color of law.

       11        THE COURT:  Yes.  Why don't you hit all the arguments
       12   from your client's perspective.  Go ahead.

       13        MR. JOHNSON:  So, with regards to color of law, the
       14   plaintiffs have filed suit alleging that some form of
       15   supervisory liability is at issue here.  The allegations that
       16   Mr. Rose was abusing his children did not happen through his
       17   position as a police officer.  The Boston Police Department,
       18   the Boston Police defendants, are being sued for Section 1983
       19   violations, various types of supervisory liability, but my
11:06  20   clients had no ability or no legal right to supervise Mr. Rose
       21   outside the scope of his employment.

       22        I know that there was a lot of back and forth in the
       23   pleadings about the fact that my clients, were my clients
       24   acting under color of law, is that where the line is drawn.
       25   No.  I don't think there's any question that my clients were

1   acting as Boston Police officers or as the command staff of the

2   Boston Police Department in their supervision of Mr. Rose, in

3   their investigation into these crimes, in their arrest of

4   Mr. Rose or sending this case to the District Attorney's Office

5   for prosecution, but my clients are not liable under these

6   various theories of supervisory liability when Mr. Rose's acts

7   were taking place outside the scope of his duties as a Boston

8   Police officer.  I think the arguments that the Boston Police

9   defendants were acting under color of law -- Mr. Rose,

11:07 10   unfortunately, performed these acts outside the scope of his

11   employment.  My clients are not, they're not liable for

12   anything that he did outside of his employment.

13           Give me one second.

14           There are also claims for Section 1985, 42 U.S.C.

15   Section 1985, capital 11.  Unfortunately, I think the case law

16   is very clear that a violation of this section requires some

17   type of class-based or race-based animus, which is just not

18   pled in the plaintiffs' complaint.

19           Claim Count 4, the violation of the 14th Amendment for

11:08 20   42 U.S.C. Section 1983, state created danger.  Similarly, the

21   plaintiffs don't allege acts that would constitute a

22   state-created danger.  I believe the case law states that

23   failure to provide protection from private dangers does not

24   constitute they created danger.

25           Moving on to Count 16 against my clients.  City of

1   Boston is not a person or entity for purposes of the

2   Massachusetts Civil Rights Act.  My understanding is that the

3   plaintiffs are withdrawing that claim, so I won't focus on

4   that.

5        With regards to the individual Boston Police officer

6   defendants, the plaintiffs have made no allegations that there

7   were threats or coercion, which are required for the

8   Massachusetts Civil Rights Act violation.

9        With regards to Count 23, negligence against the City

11:09 10  of Boston and the BPD defendants, I think we have arguments.

11  First of all, there was no presentment, and while the statute

12  of limitations' argument does get complex with the various

13  different statutes of limitations that apply, the presentment

14  law is not.  Presentment is much more narrow, and no

15  presentment was made within the time alleged for a tort claim

16  under Chapter 258, which is what a negligence claim would be.

17       With regards to the individual Boston Police

18  defendants, I think case law is also clear that individual city

19  employees, municipal employees, are not liable.  That would

11:10 20  only be brought against the City itself.

21       Same would apply to 26 and 28.  Along those same lines

22  there are the exceptions to Chapter 258, 10(j) and 10(h), which

23  are the original cause, 10(h) being the original cause that

24  Mr. Rose's actions were the original cause of the injuries, not

25  any alleged acts by the Boston Police Department.  With regard

1    to 10(j), any claim based on an act or failure to act to

2    diminish the harmful consequences of a situation, again, that

3    grants the City and the City's employees immunity.

4         Count 31, intentional infliction of emotional distress

5    I believe was withdrawn as to the City by the plaintiff, but as

6    far as the individual defendants, the conduct alleged in the

7    complaint doesn't rise to the level of what I believe the Court

8    could consider extreme and outrageous.  They were performing

9    their duties as police officers.  The plaintiffs' complaint

11:11 10   itself notes that the officers arrested Mr. Rose.  They placed

11   him on administrative duty.  They transferred the case to the

12   district attorney's case for prosecution.  These are not

13   extreme and outrageous acts.  These are acts that are performed

14   every day in the course of a police officer's employment.

15        Count 36, which is the negligent infliction of

16   emotional distress, again, we make the same arguments as far as

17   presentment and the sovereign immunity sections under 10(j) and

18   10(h).

19        As for the individually named defendants, again, those

11:12 20   defendants would be immune based on Chapter 258.

21        I believe that Counts 41 and 43 were dismissed by the

22   plaintiff.  There was a little confusion about that in footnote

23   1 in the plaintiff's opposition.  I believe they note that

24   those are dismissed.  If I make a mistake about that, I'm more

25   than happy to correct that and make whatever arguments need to

1    be made.

2           With regard to all of these arguments that followed, I

3    don't think we need to consider any of those because the

4    statute of limitations' argument takes precedence.  This case

5    missed the statute of limitations by decades.  The plaintiff

6    hasn't alleged any facts that would allow them to pass the

7    three-year statute of limitations or the seven-year discovery

8    exception that they're alleging in their sur-reply.

9           So, respectfully, based on those arguments, your

11:13 10   Honor, I would ask that the counts against the City of Boston

11   and the Boston Police defendants be dismissed.

12          THE COURT:  All right.  Thank you.

13          Before I hear plaintiffs' response, why don't I take

14   each of the other counsel and see if they have anything they

15   want to add to that.  Mr. Donohue, I guess I'll start with you.

16          MR. DONOHUE:  Thank you, your Honor.  On behalf of the

17   BPD PA or the union, the Boston Patrolman's Association and its

18   former president Thomas Nee, I'd like to focus just briefly on

19   the lack of factual allegations against either of them.  There

11:14 20   are no factual allegations to infer any wrongdoing against

21   Thomas Nee or the BPD PA.  In fact, there are no factual

22   allegations of wrongdoing against Nee at all.  The specific

23   allegations against the union are very few.

24          They are, very briefly, in 1995, Attorney Drechsler

25   represented Rose at an arraignment in which the Court chose to

1    enact pretrial probation, but there's no factual allegations or

2    any allegations at all related to that that there was any

3    wrongdoing by Nee or the union or Drechsler.

4         In 1996, the plaintiffs allege that Attorney Drechsler

5    represented Rose at an Internal Affairs interview, at which

6    point Rose asserted his Fifth Amendment privilege, but, again,

7    there's no allegations that Drechsler or the Union or Thomas

8    Nee did anything wrong.

9         In 1997, the allegations are Attorney Drechsler sent a

11:15 10   letter to Boston Police requesting Rose's return to duty.  With

11    that letter there were attached affidavits from John Doe and

12    Frances Rose denying allegations of misconduct by Rose.  The

13    allegations related to that are that only BPPA defendants did

14    not interview John Doe, Jane Doe or Frances Rose, but from

15    those allegations it cannot reasonably infer that either Thomas

16    Nee or any union members did anything wrong.  In other words,

17    these alleged facts do not link either the union or Thomas Nee

18    to any wrongdoing.

19         The only two remaining allegations related to the

11:15 20   union are that, in October of 1997, Attorney Shapiro, on behalf

21    of the union, sent a letter to the Boston Police that the union

22    would file a grievance about Rose being on administrative duty.

23    Then about ten days or so later, the union actually filed a

24    grievance, but that grievance was denied.  So none of the

25    allegations in the complaint -- from none of those allegations

1    can it reasonably be inferred that Thomas Nee or the union did

2    anything wrong to support any of the claims.

3         For these reasons and, additionally, the reasons

4    stated in our paupers, I ask the Court to dismiss all claims

5    against Thomas Nee and the BPPA.

6         THE COURT:  All right.  Thank you.

7         Mr. Kulevich.

8         MR. KULEVICH:  Thank you, your Honor.  John Kulevich

9    for Frances Rose.

11:16 10        We're asking that the complaint be dismissed on all

11   counts against Frances on statute of limitations' grounds and

12   also based on the factual pleading requirements.

13        I'm going to try not to retread some of the stuff

14   that's been discussed, but in terms of the statute of

15   limitations' grounds, we are arguing also that 4C1/2,

16   Subsection 2 is the applicable statute of limitations, seven

17   years from when the victim should have discovered the injury

18   was because of the defendant.  Right in the section laws it

19   says that section is to be applied prospectively and not

11:17 20   retroactively.

21        If we look to the facts alleged that sketch these sort

22   of factual predicate to place the plaintiffs' claims within the

23   seven years or within a longer time if the claim didn't accrue

24   at the time that the defendants' actions injured the

25   plaintiffs, the claims fall far short of the limitations'

1   period or the limitations' period exceeds the claim.  So if we
2   take a look at the state law claim, these are claims that
3   resolve, involve only Frances, so 2022, 3035, 40 and 45.
4   There's nothing in the allegations that suggest that, upon
5   reaching the age of majority and then seven years later, the
6   plaintiffs did not know about the abuse or know about their
7   injuries.  If there are repressed memory issues, those things
8   must be pled, and they weren't.

9          This is the same -- the same goes for the federal
11:19 10  counts, the 1983 and 85 claims.  In their opposition, the
11  plaintiffs claim that there are certain things that were not
12  known until 2022.  None of these really apply to Frances but,
13  also, none of this was alleged in the complaint.  And because,
14  on its face, the pleadings against Frances do not allege facts
15  that place the plaintiffs' claim within the statute of
16  limitations, all of the counts against her should be dismissed.

17          Then, just aside from the statute of limitation
18  ground, I would like to suggest that the plaintiffs' claims
19  against Frances are factually insufficient, even under our
11:19 20  notice pleading standards.  So if we start again with the state
21  law claims, most of these claims, actually, all of these
22  claims, are just legal conclusions that should be disregarded
23  by the Court in the motion to dismiss stage.  There are no
24  factual allegations against her, against Frances, that support
25  these claims, things like did the plaintiffs ever speak to

1    Frances about the abuse, did Frances ever see the abuse
2    happening, did Frances see any of the impact or effects of the
3    abuse.  None of this has been alleged.  It's just conclusory,
4    sort of legal conclusions that are alleged.
5         Then if we turn to the 1983 and 1985 claims, the 1983
6    claim requires state action.  Again, we have no facts to
7    suggest that Frances Rose should be pulled as a private party
8    into the grasp of Section 1983.  The plaintiffs claim that
9    Frances aligned herself not with Patrick Rose but actually with
11:20 10   the Boston Police, and its that connection that allows, that
11   essentially makes Frances a joint participant.  Again, there
12   are no facts that suggest this.  The plaintiffs similarly
13   parrot back the requirement that Frances be a willful
14   participant with the Boston Police Department.  Again, those
15   are legal conclusions that should be disregarded.
16        I will note that my motion focused, to the extent it
17   needed to, on Frances's relationship with Patrick as perhaps an
18   argument that could support the plaintiffs' claim that there
19   was no state action, but even that claim there's no allegations
11:21 20   that Patrick was a state actor when he engaged in the alleged
21   abuse of his children.  Again, it's just -- the complaint is
22   basically void of factual allegations in terms of the 1983
23   claim.
24        The 1985 claim, again, the factual allegations are
25   just really nowhere to be found.  There are no allegations as

1   to which protected class the plaintiffs were members of, nor

2   that Frances discriminated against the plaintiffs because of

3   that relationship.  We just have conclusory allegations about a

4   conspiracy.  These are insufficient to defeat a motion to

5   dismiss.

6          With that, even under the notice pleading standards,

7   the plaintiffs -- the claims against Frances do not allege

8   sufficient facts to state a claim.  Although our pleading

9   requirements are fairly liberal, they do have boundaries.  For

11:22 10  these reasons in my oral argument and on my papers, I am

11  requesting that the Court dismiss the plaintiffs' claims

12  against Frances Rose.

13          THE COURT:  All right.  Thank you.

14          Who is going to take the lead for plaintiff?

15  Mr. Driscoll, is that you?

16          MR. DRISCOLL:  Yes, your Honor.  Ms. Kutylo will take

17  any questions regarding the nominal standard on the city.

18  Mr. Whitesell will address Frances Rose's opposition.

19          I will take the lead to direct the Court to see what

11:23 20  the primary dispute is regarding the statute of limitations.

21  There are two things I'd like to direct the Court that we did

22  in our papers, your Honor, which is:  One, in the original

23  motion that was filed by the City and the individual BPD

24  defendants, there was absolutely no reference to 260 4C1/2

25  and/or the discovery rule.  Your Honor, in our view, that was

1    intentional because the plain reading of 260 4C1/2 extends the
2    statute of limitation by 35 years from the date that Jane Doe
3    and John Doe would have reached majority, which would
4    comfortably put us within the statute of limitations.
5    Notwithstanding that, your Honor, even setting the half aside,
6    the Court does not need to make a determination on the
7    discovery rule under which would permit us to file under these
8    circumstances.

9         What I did not hear from the defendants during their
11:23 10   presentation is:  First, the discovery rule does apply to
11    incestuous sexual assault cases.  We know that from *Finn v.*
12    *Morgan.*  That's black letter law in Massachusetts that we've
13    cited into our case law; two, it's a fact-based inquiry,
14    meaning that there is no prejudice to any defendant here today,
15    your Honor, if the Court were to deny this and say it
16    evaluated this on a more robust record; three, my brother's
17    never once made reference that this is -- primarily the claims,
18    your Honor, are 1938 claims against individual BPD defendants
19    that were involved in the coverup of Officer Rose's sex crimes
11:24 20   in and around 1995 and 1996, that it would be impossible for
21    our client, James Doe and John Doe, to have possibly put
22    together the allegation that we have in this complaint but for
23    the release of the 2022 Internal Affairs Department file by
24    Mayor Wu.

25         Your Honor, specifically one thing the City did not

1    address is that there was a great reluctance.  Even after

2    Officer Rose was arrested in 2020, the BPD and the Boston

3    Police Department and the City of Boston refused to release

4    Officer Rose's Internal Affairs investigation file, even though

5    there was requests by the public to do so.  It was not until

6    June of 2022 when Mayor Wu, under political pressure, finally

7    relinquished and released a very limited portion of the

8    Internal Affairs file.

9            Your Honor, what should have been hundreds of pages of

11:25 10   documents regarding a 27-year career by Officer Rose in the

11   Boston Police was boiled down to redactions of a less than 25

12   pages, Notwithstanding the only reasonable conclusion was that,

13   back in '95, '96 and '97, the BPD defendants, along with the

14   City of Boston, engaged in a conspiracy to cover up these

15   crimes.  Your Honor, the idea that these allegations by each of

16   the individual defendants here and their counsel's

17   representation we have not pled facts, your Honor, in a word,

18   it's disingenuous.

19           The other thing, your Honor, that I did not hear,

11:26 20   which is important, I believe, for the Court, is that I did not

21   hear a single reference to the St. Clair report, which is

22   referenced several times in the complaint and is referenced

23   throughout the plaintiffs' oppositions to defendants' various

24   motions to dismiss.  The same St. Clair report occurred in 1992

25   where an independent investigation was done to explain why, why

1    so many Boston Police officers were not held at all

2    accountable, even with employment discipline or criminal

3    discipline for actually committing crimes against members of

4    the public.

5          In this action, your Honor, we have made specific

6    allegations with regards to the '95, '96 and '97 investigation

7    that was conducted by the individually named defendants, that

8    they employed the exact same customs and practices that the

9    St. Clair commission report concluded was unconstitutional,

11:27 10   inadvisable and, in a word, your Honor, disgraceful.

11          In regards to Mr. Donohue saying there's absolutely no

12   allegations against the union, the St. Clair report stated that

13   the practice of using a union lawyer in criminal proceedings

14   must come to an end.  In this case, we specifically allege that

15   the union, through its attorney, Attorney Thomas Drechsler,

16   specifically used practices to delay and frustrate the

17   investigation into the claims against Officer Rose.  They did

18   that by failing to interview Officer Rose for more than seven

19   months after the initial allegations were made by a 12-year-old

11:27 20   John Doe to two Boston Police officers that his father was

21   molesting him.

22          Furthermore, your Honor, despite Officer Rose

23   asserting the Fifth Amendment privilege criminal defense, your

24   Honor, and I've been asked by the Court to evaluate a witness

25   or a client of whether or not they have a Fifth Amendment

privilege, you have to know whether or not the person truly
does have a Fifth Amendment privilege for them to assert it.
You can't just make one up conveniently.  Notwithstanding that,
when asked by the Internal Affairs department seven months
after the allegations about whether or not Officer Rose was
molesting a 12-year-old boy in his custody, he was instructed
by his union attorney, Attorney Drechsler, to assert the Fifth
Amendment privilege.

Several months later, after the sustained complaint
and after he faced absolutely no discipline or there were no
written findings of facts as to how the Internal Affairs
concluded that he, in fact, the complaint that he was molesting
a 12-year-old boy in custody was sustained, he didn't face any
criminal or employment consequence.  The allegations are that
the individual defendants worked in concert to make sure he
never received any sort of consequence as a result of sexually
molesting the children in his care and custody and control.

In fact, the BPD defendants, the allegations as set
forth in the complaint, show that they took affirmative steps
to ensure that Officer Rose's victims would never be heard.
They never interviewed John Doe after the initial complaint.
They vacated the restraining order, which was the only thing
that was preventing Officer Rose from having children in his
care.  They waited seven months to even interview Officer Rose
even though he was seated outside in the precinct every day at

1   a desk available to be questioned.  They also, your Honor, made

2   sure, allowed him to get to pretrial probation that did not

3   impact his record and allowed him to continue serving as a

4   Boston Police officer cloaking him with immunity.

5        Your Honor, in regards to the statute of limitations'

6   argument by the defendants in this case, it's a fact-based

7   inquiry.  The Court, they have not directed, collectively, all

8   these lawyers a single instance where a court has taken the

9   Draconian measure of dismissing a 1983 action or a

11:30 10  nonconsensual assault action such as this one on a 12(b)6

11  record.  And none of them made reference to the St. Clair

12  commission report, to the release of the IAD file in 2022 or

13  the elements in this offense, which should tell you what actual

14  strength this statute of limitations defense is.

15        Your Honor, moving on, in regards to my brother

16  because he raised it, the acting of color under state law, your

17  Honor, the inquiry is not whether or not Officer Rose was

18  acting under the color of law when he was raping children.  The

19  question was whether the individually-named defendants were

11:31 20  acting under the color of law when they committed their shoddy

21  investigation that was aimed towards ensuring that Officer Rose

22  would not be held responsible for his crimes against children.

23  We have done that in spades.

24        Again, your Honor, my brother Mr. Johnson raised that

25  not every BPD defendant is a, quote unquote, supervisor.  For

1    purposes of Section 1983, a supervisor is defined loosely to

2    encompass a wide range of officials who are themselves removed

3    from the perpetration of the rights of the behaved behavior.

4    That's *Camilla v. Roberts* on page 63.  In this instance,

5    there's no dispute that each one of the individually named

6    Boston Police defendants actually engaged in the Internal

7    Affairs and/or investigation into the sex crimes by Officer

8    Rose.

9           In regards to the state-created danger, essentially

11:32 10   what the argument is for Mr. Johnson is that there is a failure

11   to plead deliberate indifference.  Your Honor, I'd ask you to

12   look at *Doe v. Boston Public Schools*.  It's a memorandum of law

13   by Judge Burroughs back in 2018.  We've cited it.  In that

14   case, your Honor, the Court had to grapple with the essential

15   facts that a minor, who was a student, was molesting other

16   students in a Boston Public School.  The allegations in the

17   complaint were that the school administration had discouraged

18   the parents of prior victims from pursuing a 51A investigation

19   through DCF.

11:32 20          Judge Burroughs was then faced with a motion to

21   dismiss in which she asked, well, what is the standard for a

22   deliberate indifference of a state official in failing to

23   prevent sex abuse of minors.  And this is what she wrote.  "In

24   JV v. Gloria in its 595923 FDP 73, the First Circuit considered

25   whether social workers, by failing to prevent the minor

1    plaintiffs from reporting sexual abuse in their foster homes,

2    acted with deliberate indifference that amounted to conscious

3    shocking conduct and used the following tests:  State officials

4    must have been at least aware or known or likely injuries or

5    abuse and have chosen to ignore the danger to the child".

6         Your Honor, in this case, we've alleged not only did

7    the Boston Police know of an allegation that 12-year-old John

8    Doe admitted in front of his perpetrator and Frances Rose's

9    mother that his father was raping him, in addition to that, the

11:33 10   Boston Police defendants all individually knew that Officer

11   Rose was under investigation for sexually assaulting another

12   minor in his care in 1992 by DCF.  They also all knew, the

13   individual defendants knew that Officer Rose asserted his Fifth

14   Amendment privilege during his employment hearing.  They also

15   knew, your Honor, that there was four minor boys who all stated

16   that 12-year-old John Doe corroborated the allegations that he

17   stated to the Boston Police detectives in November of 1995,

18   that specifically John Doe had told them at Foley Field that

19   his father was forcing him to touch him inappropriately.

11:34 20        Your Honor, in this instance, the fact that the Boston

21   Police, the actions of the individual defendants under the

22   framework used by Judge Burroughs as articulated by the First

23   Circuit in the *JV v. Gloria* case it is shocking and the Court

24   cannot dismiss on a 12(b)6 standard under the allegations that

25   have been brought forth.

         1              Your Honor, I'm trying to move because I understand
         2      you've been generous with your time so far and I do want to get
         3      Miss Kutylo to talk about municipal negligence.
         4              In regards to the 1985 allegations, your Honor, the
         5      Circuits -- specifically, your Honor, I'm referring to *Perez*
         6      *Sanchez vs. Public Building Authority*.  It's 531 FD 140, a
         7      First Circuit case 2018.  The elements of the case are a
         8      conspiracy to deprive the plaintiff of equal protection of the
         9      law, an overt act in furtherance of the conspiracy, and a
11:35   10      resulting injury as a result of that conspiracy.  We have
        11      alleged, your Honor, in our complaint that there was a
        12      conspiracy amongst Frances Rose and the individually named BPD
        13      defendants to ensure that a shoddy investigation was done so
        14      that Officer Rose would not face any consequences as a result
        15      of his crimes.
        16              We've also specifically, your Honor, alleged that
        17      there was an internal coverup by Boston Police that was done in
        18      furtherance of the customs and practices that were outlined in
        19      the St. Clair report that is referenced in our complaint.  Your
11:36   20      Honor, in this case, we believe that we have.  We have a small
        21      class that is available.  Though it's not a racial animus
        22      class, our class would be victims of Boston Police Department's
        23      internal coverup of violent crimes done at the hands of Boston
        24      Police officers in the 1990s.  This would be an extremely small
        25      class and likely would not flood the First Circuit or this

1   court with new cases.

2          Your Honor, just in finishing up in regard to the MCRA

3   claim, threats, coercion, intimidation.  Your Honor, you may

4   recall we had an extensive case regarding two pear trees and

5   two neighbors that could just not get along.  It's a low

6   standard.  Threats, intimidation and coercion, your Honor, if

7   the Court has any concern about whether they had been alleged,

8   I would look at the jury instruction as threats, coercion,

9   intimidation can be anything as little that would stop you from

11:37 10  exercising any constitutional right.

11          Here, the course of conduct that I've already

12  discussed pretty much sent a chilling message to John and Jane

13  Doe, that regardless of what a monster Officer Rose was,

14  because he was a Boston cop, they shouldn't be coming to them

15  looking for help.  That's how I would address the Mass. Civil

16  Rights Act.

17          I'm going now, your Honor, to just pass it on to

18  Ms. Kutylo.  She can clean up anything with regards to the

19  municipal negligence standard if needed, Mr. Upperman with

11:37 20  regard to Mr. Rose's opposition.  Thank you for your time,

21  Judge.

22          THE COURT:  All right.  Thank you.

23          MS. KUTYLO:  Good morning, Judge.  I actually think

24  Mr. Driscoll may have addressed some of the issues.

25          Just briefly, the deliberate indifference standard

1  under 1983, as well as the shocking and conscious standards

2  requirement under state-created danger, should be the basis of

3  those claims that are in the Complaint.

4       I'd like to direct the Court in its review of

5  plaintiffs' opposition at docket 64, pages 6 and 7, which

6  delineate extensive instances where conduct, on the part of the

7  city and the BPD defendants, show and establish and demonstrate

8  deliberate indifference and shocking and conscious behavior.

9  Specifically, it outlines the actions of the police department

11:39 10  and how they also are inconsistent with the St. Clair report

11  findings.

12       As my colleague has addressed, the St. Clair

13  commission report addressed widespread abuses in the Boston

14  Police Department with respect to police officers' misconduct,

15  specifically relating to constitutional violations.  It's

16  directly on point to this case because it outlines the very

17  acts that the Boston Police Department and its officers did in

18  this case.

19       For example, the St. Clair commission addresses the

11:39 20  widespread practices of not investigating inappropriate and

21  inadequate IAD investigations, the widespread practices of not

22  documenting findings, the widespread practices of not

23  submitting the IAD processes, investigations and findings to

24  the legal office and the hearing officers, the widespread

25  practices of not passing up the IAD findings to the hearing

1   officer for a hearing.  These are the things that are

2   specifically addressed by the City of Boston in the St. Clair

3   commission report where it was found that these are

4   deficiencies in the BPD with the BPD defendants that were then

5   repeated again in 1995, '96 and '97 ad nauseam with respect to

6   Officer Rose.

7        Again, I'll direct the Court and my colleagues to

8   pages 6, 7 and 8 of our opposition -- document 64, that address

9   these specifically and cite to the paragraphs within the

11:40 10  complaint where we plead and allege these specific facts.

11        Some of them, in short, are that the Boston Police

12   Department defendants did not interview John Doe after the IAD

13   findings, they did not interview defendant Patrick Rose after

14   the IAD findings, they did not document the IAD findings in any

15   paper, they did not pass the IAD findings up to a Boston Police

16   officer.  These are things required.  They're all rules within

17   the Boston Police Department that were required to be followed

18   that were not followed.

19        So not only were policies and procedures not met,

11:41 20  customs and practices are also -- we also established that the

21   custom and practices of the Boston Police Department prong of

22   the Monell standard has been met.

23        Furthermore, another way to show policies and

24   procedures violations, is through a failure to screen, train,

25   and supervise allegation which has also been pled in our

1  complaint.  Again, the failures to supervise and screen and --

2  sorry -- screen, supervise and train are also addressed, in

3  fact, in two full chapters in the St. Clair commission.

4       Again, the police department was on notice.  They knew

5  that these were widespread practices that needed to be

6  addressed.  They were addressed in the St. Clair Commission and

7  yet they were violated again in the case with Patrick Rose.

8  The City of Boston delayed its investigation and buried the

9  report, failed to interview, failed to take disciplinary

11:42 10  measures and didn't document its findings.

11       This pattern of similar constitutional violations of

12  police misconduct establishes deliberate indifference and it

13  also establishes the shocking conscious requirements of

14  state-created danger.  Certainly, the City of Boston knew.  The

15  Boston Police Department knew the risk of substantial harm

16  existed.  I think Mr. Driscoll addressed that aptly.

17       We had a 12-year-old victim who came forward to the

18  police department.  Two Boston Police officers interviewed him.

19  He admitted -- he made allegations of sexual abuse against an

11:43 20  officer.  These sexual abuse allegations were sustained and

21  then nothing happened.  No further action -- the City chose not

22  to take any further action.

23       I'd also like to address one other issue that the City

24  discussed, which is the Tort Claims Act allegations with regard

25  to the presentment.  M.G.L. Chapter 258, 4C1/2, specifically

addresses that, and no presentment letter is required for civil

actions against public employers which relate to the sexual

abuse of a minor.  With respect to 10(j) that bars claims

against a municipality for torts for third parties that was

originally caused by the public employer, our allegations in

this case are specifically that, that the wrongdoing was

originally caused -- the wrongdoing that we are alleging was

caused by the City and its employees, the BPD individual

defendants named in the complaint.  The complaint addresses

specifically the affirmative acts by those individuals as the

original cause, what they did, not what Officer Rose did, but

what they did in choosing not to investigate, not to respond

appropriately to the allegations of misconduct that were

sustained.

I'm looking at my notes.  I don't want to be redundant

with Mr. Driscoll.  I think everything's been addressed with

regard to the claims by the BPD defendants, city, and BPPA.

I'll turn it over to Mr. Upperman with respect to Frances Rose.

THE COURT:  All right.  Mr. Upperman.

MR. UPPERMAN:  Thank you, your Honor.

So just to address the arguments as to Frances Rose,

statute of limitations' arguments are fairly similar to the

arguments raised as to the other defendants.  However,

specially the crux of the argument for the statute of

limitations for Frances Rose is that the plaintiffs in the

1   nineties should have known they were abused and had facts

2   essential to commencement of a suit.

3          However, when you look at the claims under 1983

4   against Frances Rose, the facts known to the plaintiffs in the

5   90s and the time they reached majority would have absolutely no

6   way to bring those claims.  The IAD files were released in

7   2022.  They had no knowledge of Frances Rose's specific

8   involvement in the coverup and all of the actions taken by her

9   in concert with the BPD, City and the BPPA.  So where the

11:46 10   plaintiffs didn't become aware of those acts until 2022, we

11   believe that the general discovery rule should apply, the three

12   year period should apply, and thus the claims are timely.

13          As to the color of law argument, similarly, again, it

14   is not whether Frances Rose aligned herself with Patrick Rose.

15   It's that she aligned herself with the City and BPD.  The

16   question for a private actor is whether they have aligned

17   themselves so closely with state action that it pulls them into

18   the grasp of 1983.

19          Here, Frances Rose didn't just allow the abuse to

11:46 20   continue.  She actively participated in a coverup, which is

21   specifically alleged throughout the complaint.  She knowingly

22   submitted a false affidavit.  She knowingly allowed the City

23   and the BPD defendants to inadequately investigate, even though

24   she told them about her prior knowledge of the abuse and

25   knowledge of parent abuse.  She stood there and monitored the

1    interviews of John Doe.  She allowed Patrick Rose to violate
2    the terms of the restraining order, which would either infer
3    that she knew he was violating it or that she didn't report it,
4    which would again refer that she's working in concert with BPD.

5         I won't rehash the 1985 argument.  I think that
6    applies across the board to as to everybody.

7         As to the Massachusetts Civil Rights Claims, again, as
8    Attorney Driscoll mentioned, the bar for threat, coercion and
9    intimidation is rather low.  Here we have specific allegations
11:47 10  of threatening and intimidating and coercive conduct by Frances
11   Rose when she intimidated John Doe, standing by him as he was
12   interviewed about sexual abuse by her husband.  She threatened
13   John Doe when the restraining order was continued because she
14   allowed it to be violated, which again resulted in the
15   continued molestation of her own children.  She further
16   intimidated the plaintiffs when she submitted an affidavit
17   claiming that the abuse never happened, claiming that John Doe
18   recanted, when none of those facts were true.  And the purpose
19   of those actions were to intervene with John Doe's rights and
11:48 20  to intimidate him from testifying truthfully about these
21   heinous acts.

22        As to the state law claims, there are significant
23   factual allegations as to Frances Rose's direct conduct.  All
24   of the allegations that we have already discussed, again, she
25   allowed this serial abuser into her home, did nothing to

1    protect her children and actually took active steps to allow it

2    to continue.  She protected her husband at the expense of her

3    children to whom she had a heightened duty to protect as their

4    parent.

5           So to say that there were no factual allegations to

6    support the state law claims I don't think is fair when there

7    are significant specific allegations of her wrongdoing and her

8    actions that contributed to the continued molestation of her

9    children at the hands of her husband.

11:49 10           I believe the same statute of limitations' arguments

11   that would apply to the 1983 claims apply to the state law

12   claims.  Again, to the extent the plaintiffs were aware they

13   were being abused, I don't believe that's a relevant inquiry.

14   They didn't have any knowledge of the specific facts and

15   allegations regarding Frances Rose's conduct.  They did not

16   know about the affidavits.  They didn't know about the

17   restraining order.  They didn't know about the entire criminal

18   investigation and how she participated in it.

19           To that end, I would say that the same statute of

11:49 20   limitations' discovery arguments would apply to the state law

21   claims and the motion to dismiss should be denied on those

22   grounds.

23           Thank you.

24           THE COURT:  All right.  Thank you.  I think what I'm

25   going to do is pause it there.  There's obviously quite a bit

1    going on here, a lot of allegations, a lot of defendants, a lot

2    of defenses.  I think I need to obviously short through all

3    that as best I can.  I think in terms of oral argument I think

4    I've heard enough.  I think I understand the issues.  I'll take

5    it all under advisement.  Thank you.  It was well argued.

6                   (Adjourned, 11:50 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3

 4   UNITED STATES DISTRICT COURT )

 5   DISTRICT OF MASSACHUSETTS    )

 6

 7

 8          I, Kristin M. Kelley, certify that the foregoing is a

 9   correct transcript from the record of proceedings taken

10   January 29, 2024 in the above-entitled matter to the best of my

11   skill and ability.

12

13

14       /s/ Kristin M. Kelley            July 22, 2024

15       Kristin M. Kelley, RPR, CRR              Date
         Official Court Reporter
16

17

18

19

20

21

22

23

24

25
```